UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:14-cv-00217-BO

| | |
|---|---|
| VARIETY STORES, INC., | |
| Plaintiff, | **WAL-MART STORES, INC.'S OPPOSITION TO VARIETY STORES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| WAL-MART STORES, INC., | |
| Defendant. | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF FACTS ........................................................................ 2

    A. Third Party Uses Of "Backyard" .................................................... 2

    B. Walmart's Adoption Of Its Backyard Grill + Design Mark ............... 3

    C. No Evidence That The Parties' Customers Were Ever Confused ......... 3

    D. Surveys Show No Confusion ............................................................ 3

III. VARIETY IS NOT ENTITLED TO SUMMARY JUDGMENT ON ANY OF ITS CLAIMS ........................................................................ 3

    A. Variety Has Not Proven That Its Unregistered Marks Are Valid And Protectable ........... 4

        1. THE BACKYARD Is Presumed Valid Only In Connection With Retail Services ........................................................................ 4

        2. Variety's Unregistered Marks Are Not Inherently Distinctive And Have No Established Secondary Meaning ....................... 6

            a. "The Backyard BBQ" And "Backyard BBQ" Are Generic And Thus Not Entitled To Trademark Protection ............... 7

            b. At Best, Variety's Marks Are Descriptive and Not Entitled to Trademark Protection Because There Is No Evidence Of Secondary Meaning ................................................ 8

    B. Variety Has failed To Establish A Likelihood Of Confusion Between Walmart's Backyard Grill + Design Mark And Any Of Variety's Marks ........................................... 10

        1. "Forward Confusion" and "Reverse Confusion" Defined .......... 10

        2. The Test for Likelihood of Confusion ................................... 10

        3. The Importance of Survey Evidence for Forward and Reverse Confusion ......... 11

        4. Here, There is No Actual Confusion and No Survey Evidence ........................... 12

        5. Even When All Likelihood Of Confusion Factors Are Considered, Summary Judgment on Forward Confusion Is Appropriate ................................. 14

a.    There Is No Evidence Of Actual Confusion ............................................ 14

b.    Variety's "Backyard" Marks Are Weak ................................................. 16

    (1)    Variety's Marks Are Conceptually Weak.................................. 16

    (2)    Variety's Marks Are Commercially Weak ............................... 17

c.    The Marks are Dissimilar ....................................................................... 19

d.    There is Only Minimal Overlap Between the Parties' Respective Goods ..................................................................................................... 23

e.    The Parties' Respective "Facilities," aka, Channels of Trade, Differ...................................................................................................... 23

f.    The Parties' Advertising Differs ............................................................. 24

g.    Variety Cannot Show An Intent To Cause Confusion ............................ 25

h.    The Sophistication of Grill Purchasers Is Neutral ................................. 27

6.    Variety Has Not Demonstrated Infringement Under A Theory Of Reverse Confusion .................................................................................................. 28

IV.    CONCLUSION.................................................................................................................. 30

Cases                                                                                                                      Page(s)

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*
    237 F.3d 198 (3d Cir. 2000) ............................................................................................. 10, 28, 29

*A&H Sportswear Co. v. Victoria's Secret Stores, Inc.*
    57 F. Supp. 2d 155 (E.D. Pa. 1999) .................................................................................................. 29

*American Cyanamid Corp. v. Connaught Lab., Inc.*
    800 F.2d 306 (2d Cir. 1986) ............................................................................................................. 20

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ........................................................................................................................ 13

*Barrios v. American Thermal Instruments, Inc.*
    712 F. Supp. 611 (S.D. Ohio 1988) ................................................................................................... 8

*Brockmeyer v. Hearst Corp.*
    248 F. Supp. 2d 281 (S.D.N.Y. 2003) .............................................................................................. 27

*Cairns v. Franklin Mint Co.*
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) .............................................................................................. 12

*CareFirst of Maryland, Inc. v. First Care, P.C.*
    434 F.3d 263 (4th Cir. 2006) .............................................. 11, 14, 15, 16, 17, 19, 22, 23, 24, 25, 26, 30

*Celotex Corp.v. Catrett*
    477 U.S. 317 (1986) ........................................................................................................................ 13

*Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.*
    269 F.3d 270 (3d Cir. 2001) ............................................................................................................. 27

*Co-Rect Prods. v. Marvyl Adver. Photography, Inc.*
    780 F.2d 1324 (8th Cir. 1985) .......................................................................................................... 11

*Daimler-Benz Aktiengellschaft v. Chrysler Corp.*
    169 USPQ 686 (T.T.A.B. 1971) ....................................................................................................... 21

*Dranoff-Perlstein Assoc. v. Sklar*
    967 F.2d 852 (3d Cir. 1992) ............................................................................................................... 9

*Duffy v. Charles Schwab & Co., Inc.*
    97 F. Supp. 2d 592 (D. N.J. 2000) ..................................................................................................... 6

*Duluth News-Tribune v. Mesabi Publ. Co.*
    84 F.3d 1093 (8th Cir. 1996) ............................................................................................................ 20

*Eagle Snacks, Inc. v. Nabisco Brands, Inc.*
    625 F. Supp. 571 (D.N.J. 1985) ....................................................................................................... 12

Cases                                                                    Page(s)

*Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*
    954 F.2d 713 (Fed. Cir. 1992) ................................................................................ 27

*Fisons Horticulture, Inc. v. Vigoro Indus.*
    30 F.3d 466 (3d Cir. 1994) .................................................................................. 10

*Freedom Card, Inc. v. JPMorgan Chase & Co.*
    432 F.3d 463 (3d. Cir. 2005) .......................................................................... 6, 28

*Fuel Clothing Co., Inc. v. Nike, Inc.*
    7 F. Supp. 3d 594 (D.S.C. 2014) .................................... 17, 18, 22, 24, 25, 27, 29

*General Foods Corp. v. Ito Yokado Co.*
    219 USPQ 882 (TTAB 1983) ................................................................................ 21

*George & Co,. LLC v. Imagination Entm't Ltd.*
    575 F.3d 383 (4th Cir. 2009) ........................................ 4, 8, 9, 14, 15, 16, 17, 19, 22, 25

*Glover v. Ampak, Inc.*
    74 F.3d 57 (4th Cir. 1996) ..................................................................................... 7

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*
    No. 12-CIV-7992 KBF, 2014 WL 185222 (S.D.N.Y. Jan. 16, 2014) ................................. 11

*Hearthware, Inc. v. E. Mishan & Sons, Inc.*
    104 USPQ.2d 1207, 2012 WL 3309634 (N.D. Ill. 2012) ...................................... 22

*IDV N.A., Inc. v. S & M Brands, Inc.*
    26 F. Supp. 2d 815 (E.D. Va. 1998) ...................................................................... 15

*InterState Net Bank v. NetB@nk, Inc.*
    221 F. Supp. 2d 513 (D.N.J. 2002) ......................................................................... 5

*InterState Net Bank v. NetB@nk, Inc.*
    348 F. Supp. 2d 340 (D.N.J. 2004) ......................................................................... 5

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*
    No. SACV 11–1309–DOC(ANx), 2013 WL 655314 (C.D. Cal. Feb. 21, 2013) ................................. 12

*Kate Spade LLC v. Saturdays Surf LLC*
    950 F. Supp. 2d 639 (S.D.N.Y. 2013) .................................................................... 11

*Larsen v. Terk Techs. Corp.*
    151 F.3d 140 (4th Cir. 1998) ............................................................................ 6, 9

*Levi Strauss & Co. v. Blue Bell, Inc.*
    778 F.2d 1352 (9th Cir. 1985) ............................................................................ 5, 9

*In re Loew's Theatres, Inc.*
    769 F.2d 764 (Fed. Cir. 1985) ................................................................................ 5

Cases                                                                                                                        Page(s)

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*
    43 F.3d 922 (4th Cir. 1995) ................................................................................................ 14

*Lovely Skin, Inc. v. Ishtar Skin Care Products*
    No. 8:10CV87, 2012 WL 4711917 (D. Neb. Oct. 3, 2012) ................................................ 12

*Lucent Info. Mgmt. v. Lucent Techs., Inc.*
    186 F.3d 311 (3d Cir. Del. 1999) ....................................................................................... 10

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*
    243 F.3d 789 (4th Cir. 2001) .............................................................................................. 14

*Merriam-Webster, Inc. v. Random House, Inc.*
    35 F.3d 65 (2d Cir. 1994) .................................................................................................... 12

*In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*
    828 F.2d 1567 (Fed. Cir. 1987) ............................................................................................ 7

*Microsoft Corp. v. Computer Service & Repair, Inc.*
    312 F. Supp. 2d 779 (E.D.N.C. 2004) .................................................................................. 4

*Mil-Mar Shoe Co., Inc. v. Shonac Corp.*
    75 F.3d 1153 (7th Cir. 1996) ............................................................................................... 7

*Miller Brewing Co. v. G. Heileman Brewing Co.*
    561 F.2d 75 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025 (1978) ...................................... 5

*Nartron Corp. v. STMicroelectronics, Inc.*
    305 F.3d 397 (6th Cir. 2002) ............................................................................................... 7

*Nikon, Inc. v. Ikon Corp.*
    803 F. Supp. 910 (S.D.N.Y. 1992) ..................................................................................... 12

*Nola Spice Designs, LLC v. Haydel Enters. Inc.*
    969 F. Supp. 2d 688 (E.D. La. 2013) ................................................................................. 12

*Ocean Spray Cranberries, Inc. v. Ocean Garden Products, Inc.*
    223 USPQ 1027 (TTAB 1984) ............................................................................................ 20

*Official Airline Guides, Inc. v. Goss*
    6 F.3d 1385 (9th Cir. 1993) .................................................................................................. 7

*Packard Press, Inc. v. Hewlett-Packard Co.*
    227 F.3d 1352 (Fed. Cir. 2000) .......................................................................................... 20

*Paco Sport, Ltd. v. Paco Rabanne Parfums*
    86 F. Supp. 2d 305 (S.D. N.Y. 2000), *aff'd without opinion*, 234 F.3d 1262 (2d Cir. 2000) ................ 5

*Pampered Chef, Ltd. v. Magic Kitchen, Inc.*
    12 F. Supp. 2d 785 (N.D.Ill. 1998) ..................................................................................... 13

**Cases**                                                                        **Page(s)**

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*
718 F.2d 327 (9th Cir. 1983), *rev'd on other grounds*, 469 U.S. 189 (1985) ................................... 6, 7

*Petro Stopping Cen. v. James River Petroleum*
130 F.3d 88 (4th Cir. 1997) ................................................................................ 16, 22, 23

*Pizzeria Uno Corp. v. Temple*
747 F.2d 1522 (4th Cir. 1984) ......................................................................... 6, 8, 16, 25

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*
55 F. Supp. 2d 1070 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999) ....................................... 11

*Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*
No. 2:13CV53, 2014 WL 2601747 (E.D. Va. June 10, 2014) .......................................... 25

*Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*
227 Fed. App'x 239 (4th Cir. 2007) ................................................................................ 27

*Retail Servs. Inc. v. Freebies Publ'g*
364 F.3d 535 (4th Cir. 2004) ................................................................................ 8

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*
134 F.3d 749 (6th Cir. 1998) ................................................................................ 19

*Rosetta Stone Ltd. v. Google, Inc.*
676 F.3d 144 (4th Cir. 2012) ................................................................................ 11, 23

*Sabinsa Corp. v. Creative Compounds, LLC*
No. 04–4239 (DMC), 2011 WL 3236096 (N.J. July 27, 2011) .......................................... 12

*Sara Lee Corp. v. Kayser–Roth Corp.*
81 F.3d 455 (4th Cir. 1996) ................................................................................ 8

*In re Save Venice New York, Inc.*
259 F.3d 1346 (Fed. Cir. 2001) ................................................................................ 5

*Schering Corp. v. Pfizer, Inc.*
189 F.3d 218 (2d Cir. 1999) ................................................................................ 11

*Sir Speedy, Inc. v. Speedy Printing Ctrs., Inc.*
746 F.2d 1479 (6th Cir. 1984) ................................................................................ 8

*Smith v. Tobacco By-Products and Chemical Corp.*
243 F.2d 188 (C.C.P.A. 1957) ................................................................................ 20

*Star Indus., Inc. v. Bacardi & Co.*
412 F.3d 373 (2d Cir. 2005) ................................................................................ 11, 27

*Sterling Acceptance Corp. v. Tommark, Inc.*
227 F. Supp. 2d 454 (D. Md. 2002) ................................................................................ 25

Cases                                                                      Page(s)

*In re Steury Corp.*
    189 USPQ 353 (TTAB 1975) ................................................................................ 21

*Stonefire Grill, Inc. v. FGF Brands*
    987 F. Supp. 2d 1023 (C.D. Cal. 2013) ............................................................ 11

*Swatch AG v. Beehive Wholesale, LLC*
    739 F.3d 150 (4th Cir. 2014) ............................................................ 14, 15, 22, 24

*Synergistic Int'l, LLC v. Korman*
    470 F.3d 162 (4th Cir. 2006) ........................................................................... 5, 6

*Teal Bay Alliances, LLC v. Southbound One, Inc.*
    2015 WL 401251 (D. Md. Jan. 26, 2015) ........................................................ 28

*The Coryn Group II v. O.C. Seacrets*
    868 F. Supp. 2d 468 (D. Md. 2012) ................................................................. 29

*Tone Bros., Inc. v. Sysco Corp.*
    28 F.3d 1192 (Fed. Cir. 1994) ......................................................................... 11

*Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*
    87 F.3d 654 (4th Cir. 1996) ............................................................................. 13

*U.S. Conf. Of Catholic Bishops v. Media Res. Ctr.*
    432 F. Supp. 2d 616 (E.D. Va. 2006) ............................................................... 26

*U.S. Search, LLC v. U.S. Search.com Inc.*
    300 F.3d 517 (4th Cir. 2002) ............................................................................. 6

*Union Carbide Corp. v. Ever-Ready, Inc.*
    531 F.2d 366 (7th Cir. 1976) ............................................................................. 9

*Wag'N Enters., LLC v. United Animal Nations*
    2012 WL 1633410 (E.D. Va. May 9, 2012) ................................................ 13, 15

*Water Pik, Inc. v. Med-Systems, Inc.*
    726 F.3d 1136 (10th Cir. 2013) ....................................................................... 30

*Woodsmith Pub. Co. v. Meredith Corp.*
    904 F.2d 1244, 1249 (8th Cir. 1990) ............................................................... 13


Statutes                                                                   Page(s)

15 U.S.C. § 1114(a) .............................................................................................. 4

15 U.S.C. § 1125(a) .............................................................................................. 4

15 U.S.C.A. § 1052(e)(1) ...................................................................................... 6

Statutes                                                                              Page(s)

15 U.S.C.A. § 1115(b) ........................................................................................... 4

N.C. Gen. Stat. § 75-1.1 ....................................................................................... 4


Other Authorities                                                                     Page(s)

Fed. R. Civ. P. 56(a) ............................................................................................ 13

J. Thomas McCarthy, Trademarks and Unfair Competition § 23:10 (4th Ed.)............................................ 10

J. Thomas McCarthy, Trademarks and Unfair Competition § 7:38.50 (4th Ed.)....................................... 19

J. Thomas McCarthy, Trademarks and Unfair Competition § 23:48 (4th Ed.)............................................ 20

J. Thomas McCarthy, Trademarks and Unfair Competition § 23:25 (4th Ed.)............................................ 21

Defendant, Wal-Mart Stores, Inc. ("Walmart"), through its undersigned counsel and pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7.1, hereby files this opposition to the Motion for Partial Summary Judgment (Dkt. 43) filed by Plaintiff Variety Stores, Inc. ("Variety").

## I.    INTRODUCTION

Variety's motion for partial summary judgment should be denied for two key reasons.

First, Variety has not met its burden to prove that its claimed marks are valid. Validity requires secondary meaning. Secondary meaning exists when a substantial portion of consumers recognize a word or symbol as distinctive such that they denote products with that word or symbol as emanating from a single source. Variety claims it has secondary meaning because it has an "incontestable" trademark registration for THE BACKYARD. Although an incontestable registration prevents an alleged infringer from challenging the validity of a mark on the grounds that the mark lacks secondary meaning, this rule precludes challenges to validity only in connection with the particular goods or services for which the mark is registered. Variety's registration is limited to ***retail services*** only. Variety has ***no*** registration for its use of the mark on ***products***. It is undisputed that Walmart is not using its "Backyard Grill" + Design mark in connection with retail services. Variety's registration is therefore irrelevant here and does not provide secondary meaning in connection with use on products. Variety must prove secondary meaning not only because its registration is inapplicable, but also because, at best, "The Backyard" and "The Backyard BBQ" are merely descriptive. Descriptive marks require proof of secondary meaning. All of the goods sold by Variety under the marks are lawn and garden products. "Backyard" merely describes the primary place where these lawn and garden products are used—in the backyard. Variety has proffered no survey or other evidence to support any claim that any consumers perceive "The Backyard" and "The Backyard BBQ" to function as a trademark denoting a single source of goods. Variety has not met its burden on summary judgment to show that its marks are valid and protectable.

Second, Variety has not met its burden to prove trademark infringement, which is determined by likelihood of confusion. In this case there is no evidence that any customers were confused into believing

that the source of either party's products was the other party, or that one party's products were affiliated with or sponsored by the other party. In fact, the opposite is true in this case. Two separate scientific surveys conducted by experts show that customers are not confused about the source, sponsorship or affiliation between the two parties' products. ***The "forward confusion" survey, in which respondents were shown the Walmart product, showed zero confusion***. ***The "reverse confusion" survey, in which respondents were shown the Variety product, showed a 1.7% level of confusion, which is de minimis and not actionable***. In cases like this, with essentially no evidence of confusion, summary judgment should be granted in favor of the defendant, Walmart, and Variety's Motion should be denied.

## II.     STATEMENT OF FACTS[1]

### A.     Third Party Uses Of "Backyard"

Walmart's Summary Judgment Brief includes the results of a trademark search conducted by Walmart's counsel for registered and pending federal and state marks incorporating the word "backyard," as well as common law uses of such marks. (Dkt. 50, pp. 5-6.) Walmart has since obtained a report from a third party trademark search firm, Thompson Compumark, showing that there are:

- 195 federal marks incorporating the word "backyard" (or variations thereof) for goods and/or services related to retail store services featuring lawn and garden accessories, gardening tools, outdoor furniture, barbecue grills;

- 68 state marks incorporating the word "backyard" (or variations thereof) for goods and/or services related to retail store services featuring lawn and garden accessories, gardening tools, outdoor furniture, barbecue grills;

- 34 web, common law marks incorporating the word "backyard" (or variations thereof) for goods and/or services related to retail store services featuring lawn and garden accessories, gardening tools, outdoor furniture, barbecue grills;

- 117 business names incorporating the word "backyard" (or variations thereof) for goods and/or services related to retail store services featuring lawn and garden accessories, gardening tools, outdoor furniture, barbecue grills; and

---

[1] Walmart incorporates by reference the statement of facts in its Brief in support of its Motion for Summary Judgment ("Walmart's Summary Judgment Brief" or "Walmart's SJ Brief"). (*See* Dkt. 50, pp. 2-7; Dkt. 51 (Affidavit of K. Angell ("Angell Aff.")); Dkt. 60 (Declaration of R. Puglisi ("Puglisi Decl.")); Dkt. 61 (Affidavit of J. Morton ("Morton Decl.")); & Dkt. 62 (Declaration of K. Dineen ("Dineen Decl.)).)

- 157 top level domain names incorporating the word "backyard."

(Declaration of Matthew S. DeAntonio ("DeAntonio Decl."), ¶ 6 & Ex. B at 7–17, 399–402, 474–75, 515–22, 565–73.)

**B.**    <u>Walmart's Adoption Of Its Backyard Grill + Design Mark</u>

Walmart adopted "Backyard Grill" + Design for use on grills and grilling accessories. (Walmart's SJ Brief (Dkt. 50), p. 4.)  Before Walmart adopted this mark, it was aware of Variety's trademark registration, which is limited to retail services.  Walmart was not aware of any of Variety's claimed "common law" uses of its marks on products until after Variety filed an opposition to Walmart's trademark application.  (Supplemental Declaration of Karen Dineen ("Supp. Dineen Decl."), ¶ 3.) Variety does not use "Backyard" online or sell products online.

**C.**    <u>No Evidence That The Parties' Customers Were Ever Confused</u>

It is undisputed that there is no evidence that any customer of Walmart or Variety is confused as to source, sponsorship or affiliation.  (Walmart's SJ Brief (Dkt. 50), p. 8.)

**D.**    <u>Surveys Show No Confusion</u>

The results of a scientific survey show no "forward confusion."  (*Id*., p. 5.)  This means that survey respondents who were shown Walmart products were not confused by thinking that the products were sourced by, sponsored by or affiliated with Variety.

The results of a scientific survey on "reverse confusion" show a 1.7% level of "reverse confusion," which is *de minimis* and does not show confusion.  (DeAntonio Decl., ¶ 5 & Ex. A at 10–12.) This means that survey respondents shown Variety products were not confused by thinking that the products were sourced by, sponsored by, or affiliated with Walmart.

**III.**    <u>VARIETY IS NOT ENTITLED TO SUMMARY JUDGMENT ON ANY OF ITS CLAIMS</u>

"To establish trademark infringement, a plaintiff must prove that it owns a valid and protectable mark, and that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that

mark creates a likelihood of confusion." *George & Co,. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (citing 15 U.S.C. § 1114(a)).[2]

Variety has failed to prove that its unregistered "The Backyard" and/or "The Backyard BBQ" marks are valid and protectable. "The Backyard BBQ" is generic and therefore not entitled to any trademark protection. "The Backyard," as used in connection with lawn and garden products, is a descriptive mark for which Variety admits it lacks evidence of secondary meaning; thus, it is not entitled to trademark protection. Variety has failed to establish a claim for trademark infringement with respect to any of its unregistered "Backyard" marks. Moreover, Variety has failed to establish the existence of a likelihood of confusion between Walmart's Backyard Grill + Design mark and any of Variety's BACKYARD marks under a theory of forward or reverse confusion.

A.      <u>**Variety Has Not Proven That Its Unregistered Marks Are Valid And Protectable**</u>

              1.      <u>THE BACKYARD Is Presumed Valid Only In Connection With Retail Services</u>

Variety seeks to satisfy its burden of showing that it owns a valid and protectable mark by relying on the incontestable status of THE BACKYARD, registered in class 41 for retail store services related to lawn and garden equipment. Variety's claims its registration rights extend beyond its literal registered mark to include "Backyard" and Backyard BBQ," as well as other lawn and garden products sold in connection with these marks. ("Variety's Summary Judgment Brief" or "Variety's SJ Brief" (Dkt. 44), pp. 9-10.) Variety's argument lacks legal merit.

In litigation involving an incontestable registration, it is conclusively presumed that the registered mark is valid—i.e., that it is either inherently distinctive or has acquired secondary meaning. *See* 15 U.S.C.A. § 1115(b) ("To the extent that the right to use the registered mark has become incontestable … , the registration shall be conclusive evidence of the validity of the registered mark and of the registration

---

[2] The elements for unfair competition under 15 U.S.C. § 1125(a), a violation of the North Carolina Unfair and Deceptive Trade Practices Act under N.C. Gen. Stat. § 75-1.1, and North Carolina common law trademark infringement and unfair competition are substantially identical. *See Microsoft Corp. v. Computer Service & Repair, Inc.*, 312 F. Supp. 2d 779, 784-86 (E.D.N.C. 2004) (discussing similarity of claims). Since the elements for each of the claims are the same, the claims stand or fall together.

of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."). ***However, "[a] registered mark is incontestable only in the form registered and for the goods or services claimed**.*" *In re Save Venice New York, Inc.*, 259 F.3d 1346, 1353 (Fed. Cir. 2001) (emphasis added).

The presumption of validity afforded to incontestable registrations does not extend to other forms of the registered mark or other goods/services used with the mark. *See Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025 (1978) (registration for beer with no available carbohydrates is not prima facie evidence of rights when used by registrant on beer with available carbohydrates); *InterState Net Bank v. NetB@nk, Inc.*, 221 F. Supp. 2d 513, 519 (D.N.J. 2002), *later proceedings*, 348 F. Supp. 2d 340 (D.N.J. 2004) (registration of mark for online bill payment services does not create a presumption of validity for use of mark for online banking services).

The law is clear that a registered mark used on goods or services ***other*** than those previously registered carries ***no presumption of distinctiveness***. *See Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 305, 312 (S.D. N.Y. 2000), *aff'd without opinion*, 234 F.3d 1262 (2d Cir. 2000) (incontestable status applies only to the mark as registered and to the goods listed in the registration, and a registration for fragrances cannot create a presumption that the mark is distinctive when used on clothing.); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985) (a registrant cannot rely on a registration for pants as prima facie evidence of secondary meaning in the shirt market); *In re Loew's Theatres, Inc.*, 769 F.2d 764 (Fed. Cir. 1985) (incontestable mark DURANGO for cigars is insufficient to establish distinctiveness of DURANGO for chewing tobacco).

Variety has a single registration for the word mark THE BACKYARD in class 41 in connection with ***retail services*** for lawn and garden equipment. The mark is ***not*** registered in connection with any lawn and garden ***products***. Variety has not registered any variations of the mark. Thus, the presumption of validity, including the presumption that a mark is inherently distinctive or has acquired secondary meaning, ***does not extend*** beyond Variety's registered word mark THE BACKYARD for retail services.

Variety claims that the Fourth Circuit's decision in *Synergistic Int'l, LLC v. Korman*, 470 F.3d

162 (4th Cir. 2006) extends the presumption of distinctiveness afforded to incontestable registrations to other, unregistered forms of the "Backyard" marks. (Variety's Motion, pp. 9-10.) Variety is mistaken. In *Synergistic*, the court analyzed the likelihood of confusion between the marks at issue, not whether the registered mark was valid and protectable. *Id*. at 170-71. The court did not address whether the presumption of distinctiveness afforded to incontestable registrations extends to other forms of the mark or other goods or services used with the mark. Thus, *Synergistic* is irrelevant to the determination of whether Variety has satisfied its burden of proving that its unregistered marks are valid and protectable.

2.     <u>Variety's Unregistered Marks Are Not Inherently Distinctive And Have No Established Secondary Meaning</u>

An unregistered mark is valid and legally protectable only in the geographical market in which it is used and only if it is inherently distinctive or has otherwise developed secondary meaning. *See Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 598 (D. N.J. 2000). Marks are evaluated within a range of distinctiveness, from nondistinctive to inherently distinctive: 1) generic (e.g., DIET CHOCOLATE FUDGE SODA); (2) descriptive (e.g., SECURITY CENTER); (3) suggestive (e.g., COPPERTONE); and (4) arbitrary or fanciful (e.g., APPLE which is arbitrary or KODAK which is fanciful). *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 472 (3d. Cir. 2005). "The distinctiveness of a mark cannot be determined in the abstract, but only by reference to the goods or services upon which the mark is used." *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002).

A term that is generic for particular goods and services is not entitled to any trademark protection. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 329 (9th Cir. 1983), *rev'd on other grounds*, 469 U.S. 189 (1985). Descriptive marks are not inherently distinctive and the Lanham Act "accord[s] protection only if they have acquired a 'secondary meaning.'" *Larsen v. Terk Techs. Corp.*, 151 F.3d 140, 148 (4th Cir. 1998); *see also* 15 U.S.C.A. § 1052(e)(1). In contrast, suggestive marks are inherently distinctive and, like arbitrary or fanciful marks, qualify for registration without any showing of "secondary meaning." *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984).

*"The Backyard BBQ" And "Backyard BBQ" Are Generic Marks That Are Not Entitled To Trademark Protection*

Generic words describe the product or service itself as a category; they do not distinguish between competing versions of the product or service. *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996); *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993) (characterizing a product name as generic if it answers the question "what are you?" rather than "who are you?" or "where do you come from?"). A term that is generic for particular goods and services is so weak that it is by law not entitled to any trademark protection. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d at 329. Genericness can be demonstrated "from any competent source." *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1570 (Fed. Cir. 1987). Such sources may include a plaintiff's generic use, competitors' uses, third-party use in trademark registrations, and other publications. *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 406-07 (6th Cir. 2002).

Here, "backyard" is a common word that Merriam-Webster.com defines as: "an area in back of a house; *especially*: an area of grass behind someone's house" and " the general area near and around someone's home." *See* http://www.merriam-webster.com/dictionary/backyard. "BBQ" is an abbreviation of the word "barbecue." *See* http://www.merriam-webster.com/dictionary/bbq. Barbeque is defined as "a meal cooked out of doors over an open fire," "an outdoor party or picnic at which barbecued food is served," or "a grill or fireplace used in barbecuing." *See* http://www.collinsdictionary.com/dictionary/english/barbecue  (*See* Angell Aff., ¶¶ 4 & 5 and Exs. N and O.)

When used on barbeque grills sold in retail stores, the words "The Backyard BBQ" answers the question of "what am I" by telling consumers that the product is a residential backyard barbeque grill. The words do not provide any basis for distinguishing between competing versions of barbecue grills. Thus, "The Backyard BBQ" and "Backyard BBQ" are generic and not protectable as trademarks.[3]

Further, no amount of secondary meaning may resurrect generic marks, and no party may be

---

[3] Because Variety's "The Backyard BBQ" and "Backyard BBQ" marks are not registered, Variety has the burden of establishing that the marks are not generic. *See Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996). Variety has failed to present any such evidence.

found to infringe them.  *See Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 547 (4th Cir. 2004)

("Evidence establishing a likelihood of confusion simply 'do[es] not bear upon the question of whether

[a] trademark . . . [is] generic.'").  Thus, a court need not even reach the issue of the likelihood of

confusion.  *Barrios v. American Thermal Instruments, Inc.*, 712 F. Supp. 611, 614 (S.D. Ohio 1988)

(*quoting Sir Speedy, Inc. v. Speedy Printing Ctrs., Inc.*, 746 F.2d 1479 (6th Cir. 1984)).

> b.     *At Best, Variety's Marks Are Descriptive and Not Entitled to Trademark*
> *Protection Because There Is No Evidence Of Secondary Meaning*

A descriptive mark is weak and requires proof of secondary meaning before it can convey any

trademark protection.  A descriptive mark "define[s] a particular characteristic of the product in a way

that does not require any exercise of the imagination."  *George & Co.*, 575 F.3d at 394.  Descriptive

marks "describe a function, use, characteristic, size, or intended purpose of the product."  For example,

AFTER TAN for after sun-bathing lotion and 5 MINUTE GLUE for glue that sets in five minutes are

descriptive marks.  *Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 464 (4th Cir. 1996).

Suggestive marks, on the other hand, do not require a showing of secondary meaning and "do not

describe a product's features but merely suggests them."  *George & Co.*, 575 F.3d at 394.  A mark is

suggestive if it "connote[s], without describing, some quality, ingredient, or characteristic of the product."

For example, "Coppertone®, Orange Crush®, and Playboy®" are examples of suggestive marks.  *See*

*Sara Lee*, 81 F.3d at 464.  *See Pizzeria Uno*, 747 F.2d at 1528 (holding that "'if the mark imparts

information directly, it is descriptive,'" but "'[i]f it stands for an idea which requires some operation of

the imagination to connect it with the goods, it is suggestive.'") (internal citations omitted).

Variety's BACKYARD marks, as used in connection with lawn and garden products, are at best

descriptive terms.  Variety uses the term "backyard" to describe a ***category or genus of products*** that are

***used or put in the backyard***, e.g. lawn and garden products, grills, and grill accessories.  The "*primary*

significance" of "backyard" is the "indication of the nature or class" of Variety's outdoor products and

grills, "rather than an indication of source."  The words do not suggest anything and do not stand for an

idea that requires some operation of the imagination to connect the words to lawn and garden products.

Variety argues that its "Backyard" mark is arbitrary for the goods at issue and, therefore, is inherently distinctive. (Dkt. 44, p. 13.) Variety makes the implausible claim that "[n]othing about the BACKYARD trademark describes or even suggests any aspect or characteristic of grills and other lawn and garden products." (*Id*.) Variety ignores the definition of "backyard" as referring to "an area in back of a house; especially: an area of grass behind someone's house" (Angell Aff., ¶ 14 & Ex. N), ***which is where Variety's lawn and garden products are used***. The term "backyard," used in connection with lawn and garden products, "define[s] a particular characteristic of the product in a way that does not require any exercise of the imagination." *George & Co.*, 575 F.3d at 394. Thus, there is simply no basis to claim that Variety's "Backyard" marks are anything more than descriptive.

Because its marks are descriptive, Variety must provide evidence of secondary meaning for the marks to be entitled to trademark protection. *Larsen*, 151 F.3d at 148 (holding that descriptive marks are not inherently distinctive and the Lanham Act "accord[s] protection only if they have acquired a 'secondary meaning'"). Secondary meaning is the notion that if a word is used long enough and enough money is spent promoting the mark, the consuming public will come to associate the word with the product and, thereby, the word will attain trademark status. *Levi Strauss*, 778 F.2d at 1354. The "secondary" meaning attained by a word is that it functions not only as a word but also as a source indicator. *Dranoff-Perlstein Assoc. v. Sklar*, 967 F.2d 852, 858 (3d Cir. 1992); *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 380 (7th Cir. 1976).

Variety admits it has no evidence of secondary meaning in its use of "backyard." (Angell Aff., ¶ 10 & Ex. J, Variety's Response to RFA No. 7.) Variety also admits that it is not aware of any studies or surveys conducted regarding recognition of marks. (Angell Aff., ¶ 3 & Ex. C, Blackburn Dep. at 57:18-24; ¶ 7 & Ex. G, Variety's Response Rog. No. 17.) Thus, Variety's common law uses of "Backyard" are not entitled to trademark protection.

Variety has failed to meet its burden of establishing that its common law "Backyard" marks are valid and protectable and, therefore, it cannot satisfy the first element of a claim for trademark infringement. Thus, the Court must deny Variety's summary judgment motion as to these claims.

**B.** **Variety Has failed To Establish A Likelihood Of Confusion Between Walmart's Backyard Grill + Design Mark And Any Of Variety's Marks**

"A likelihood of confusion exists if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *George & Co.*, 575 F.3d at 393 (internal quotations and citation omitted). Variety argues that Walmart has infringed its trademark rights under both a forward confusion theory and a reverse confusion theory. (Dkt. 44, p. 19.)

### 1. "Forward Confusion" and "Reverse Confusion" Defined

Forward confusion is the paradigm of trademark infringement. It occurs when a newcomer enters a market with a mark so similar to an established competitor's mark that potential purchasers are likely to be confused or misled into believing that the new product is the competitor's established product, is from the established competitor, or is somehow endorsed, sponsored or approved by the established competitor. *See* J. Thomas McCarthy, Trademarks and Unfair Competition § 23:10 (4th Ed.).

Reverse confusion occurs when the subsequent user's promotion of the mark so overwhelms the use by the prior user that purchasers are likely to believe that the goods sold by the prior user are actually those of the subsequent user. *Lucent Info. Mgmt. v. Lucent Techs., Inc.*, 186 F.3d 311 (3d Cir. Del. 1999). In reverse confusion cases, the market gets saturated and overwhelmed by the amount of advertising and promotion undertaken by the junior user, who typically is better funded. Thus, reverse confusion requires a substantial or significant advertising campaign. *See Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 479 (3d Cir. 1994) ("[i]n reverse confusion, the junior user is typically a wealthier, more powerful company who can overwhelm the market with advertising…"); *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.* 237 F.3d 198 (3d Cir. 2000) (Victoria's Secret had saturated the market with $13 million in The Miracle Bra advertising and a "meaningful portion" of its advertising went toward promoting The Miracle Bra swimwear).

### 2. The Test for Likelihood of Confusion

To assess the likelihood of confusion, the Fourth Circuit considers the following factors: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of

the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders (i.e. channels of trade); (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; and (8) the sophistication of the consuming public. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 153 (4th Cir. 2012). These factors are not "exhaustive or mandatory . . .[,] are not always weighted equally, and not all factors are relevant in every case." *Id.* at 154. (Internal citations omitted.) When assessing these factors, it is important to "look to how the two parties actually use their marks in the marketplace" rather than "indulge in a prolonged and minute comparison of the conflicting marks in the peace and quiet of judicial chambers." *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006).

       3.     The Importance of Survey Evidence for Forward and Reverse Confusion

Courts have described surveys as the most direct form of evidence that can be offered on key Lanham Act issues, including secondary meaning and likelihood of confusion. *See, e.g., Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192,1204(Fed. Cir. 1994) (*quoting Co-Rect Prods. v. Marvyl Adver. Photography, Inc.*, 780 F.2d 1324, 1333 n. 9 (8th Cir. 1985)) ("Consumer surveys are recognized by several circuits as the most direct and persuasive evidence of secondary meaning."); *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 225 (2d Cir. 1999) ("Surveys are, for example, routinely admitted in trademark … cases to show actual confusion, genericness of a name or secondary meaning."); *Kate Spade LLC v. Saturdays Surf LLC*, 950 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) (surveys "routine in Lanham Act cases").

In cases in which trademark owners have failed to proffer survey evidence, courts have drawn the inference that survey results would have been unfavorable to the trademark owner. *See Guthrie Healthcare Sys. v. ContextMedia, Inc.*, No. 12 CIV. 7992 KBF, 2014 WL 185222, at *7 (S.D.N.Y. Jan. 16, 2014) (*quoting Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005) (A 'failure to presents [sic] [a] consumer survey weighs against a finding of consumer confusion."); *Stonefire Grill, Inc. v. FGF Brands*, 987 F. Supp. 2d 1023, 1054 (C.D. Cal. 2013) (noting that the Plaintiff's failure to provide a consumer survey showing a likelihood of confusion 'warrants a presumption that the results would have been unfavorable') (*citing Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 55

F. Supp. 2d 1070, 1084 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999)); *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. SACV 11–1309–DOC(ANx), 2013 WL 655314, *9 (C.D. Cal. Feb. 21, 2013) ("Plaintiff failed to provide a consumer survey showing a likelihood of confusion, which 'warrants a presumption that the results would have been unfavorable.'"); *Nola Spice Designs, LLC v. Haydel Enters. Inc.*, 969 F. Supp. 2d 688, 699 (E.D. La. 2013) ("the Court finds it unlikely, without the assurance of consumer surveys and other conclusive proof, that consumers in the New Orleans market would view the BEAD DOG DESIGN and automatically associate it with Haydel"); *Lovely Skin, Inc. v. Ishtar Skin Care Products*, No. 8:10CV87, 2012 WL 4711917, *11 (D. Neb. Oct. 3, 2012) ('Failure of a trademark owner to run a survey to support its claims of brand significance and/or likelihood of confusion, where it has the financial means of doing so, may give rise to the inference that the contents of the survey would be unfavorable, and may result in the court denying relief.'); *Sabinsa Corp. v. Creative Compounds, LLC*, No. 04–4239 (DMC), 2011 WL 3236096, *4 at n.9 (N.J. July 27, 2011) (citing *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 583 (D.N.J. 1985) ('Failure of a trademark owner to run a survey to support its claim[] of . . . likelihood of confusion, where it has the financial means of doing so, may give rise to the inference that the contents of the survey would be unfavorable, and may result in the court denying relief.'); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998) ("Survey evidence is not required to establish likelihood of confusion, but it is often the most persuasive evidence. Consequently, a plaintiff's failure to conduct a consumer survey, assuming it has the financial resources to do so, may lead to an inference that the results of such a survey would be unfavorable."); *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994) ("The lack of survey evidence counts against finding actual confusion.") (internal citations omitted); *Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 922 (S.D.N.Y. 1992) (stating that plaintiff's "failure to undertake a consumer survey to demonstrate actual confusion" favored defendant).

> 4.    Here, There is No Actual Confusion and No Survey Evidence

The Fourth Circuit has not yet decided whether a presumption should be drawn from the lack of survey evidence, but has determined that "'surveys are not required to prove likelihood of confusion'"

when there is "abundant" other evidence of confusion. *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654, 661 (4th Cir. 1996) (*quoting Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1249 (8th Cir. 1990)). In *Tools USA*, the infringer sought to overturn a jury verdict because the trade dress owner did not present a survey demonstrating confusion. The Court affirmed the jury verdict, reasoning that "[a]lthough [the trademark owner] presented no survey evidence of consumer confusion, it did provide abundant evidence of incidents of actual confusion." *Id*. at 661.

Unlike *Tools USA*, Variety has not produced survey evidence ***and*** there is ***no*** evidence of actual confusion. These two factors weigh heavily against a finding of infringement. *See Wag'N Enters., LLC v. United Animal Nations*, 2012 WL 1633410, at *8 (E.D. Va. May 9, 2012) ("[P]laintiff's failure to produce either evidence of actual confusion or a survey weighs heavily against a finding of infringement."); *Pampered Chef, Ltd. v. Magic Kitchen, Inc.*, 12 F. Supp. 2d 785, 795 (N.D.Ill. 1998) ("Pampered Chef has had the better part of a year to come up with some such evidence and in its conspicuous absence we are forced to conclude that such evidence is probably not forthcoming. Without such evidence it will be impossible for plaintiffs to prevail on the merits of their trade dress infringement claim and extremely difficult for it to survive defendant's motion for summary judgment.").

Without evidence of actual confusion or survey evidence, Variety cannot make a showing sufficient to establish a likelihood of confusion, which is an essential element to Variety's infringement claims. Its claim of likelihood of confusion is mere speculation. Thus, Variety's Motion should be denied and summary judgment in favor of Walmart should be granted. *See* Fed. R. Civ. P. 56(a) (summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Celotex Corp.v. Catrett*, 477 U.S. 317, 322 (1986) (holding that genuine issues of material fact do not exist if, "after adequate time for discovery and upon motion, [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence

in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.")

     5.     <u>Even When All Likelihood Of Confusion Factors Are Considered, Summary Judgment on Forward Confusion Is Appropriate</u>

Variety has failed to identify any basis for finding a likelihood of confusion. There is no evidence of actual confusion. The marks are weak. The only similarities between the marks involve terms that are common and descriptive. And there is no predatory intent. In cases like this, the Fourth Circuit routinely finds no likelihood of confusion and grants summary judgment in favor of the accused infringer. *See, e.g., CareFirst*, 434 F.3d at 274 (affirming summary judgment based on finding of no liability where there was no evidence of actual confusion, the plaintiff's mark was weak, and the only similarities between the parties' marks involved terms that were common and descriptive); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014) (holding that the lower court properly found "that despite the fame of SWATCH and the similarity of the goods, the 'lack of similarity between the marks, lack of predatory intent, lack of similar advertising and only minimal similarity in facilities,' in combination with 'the most significant factor, actual confusion,' resulted in no likelihood of confusion between SWATCH and SWAP.") *See also George & Co.*, 575 F.3d at 400 (the Fourth Circuit has stated it was not aware of any case "where a court has allowed a trademark infringement action to proceed beyond summary judgment where two weak marks were dissimilar, there was no showing of a predatory intent, and the evidence of actual confusion was *de minimis*.")

     *a.     There Is No Evidence Of Actual Confusion*

Variety tries to play down the lack of evidence of actual confusion by arguing that such evidence is not necessary to show a likelihood of confusion. (Dkt. 44, pp. 18-19.) In doing so, Variety ignores Fourth Circuit authority holding that "evidence of actual confusion is '***often paramount***' in the likelihood of confusion analysis." *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (citing *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001))(emphasis added). *See also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, Inc., 43 F.3d 922, 937 (4th Cir. 1995)

(noting that the actual confusion factor is "entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion.").

Evidence of actual confusion is critical to finding likelihood of confusion. "Without evidence of a single confused consumer, plaintiff's claim of likely confusion is largely supposition." *Wag'N Enters., LLC v. United Animal Nations*, No. 1:11cv955, 2012 WL 1633410, at *7 (E.D. Va. May 9, 2012); *see also CareFirst*, 434 F.3d at 269 (the "absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion."); *Swatch AG*, 739 F.3d at 162 (lack of a single instance of actual confusion even though allegedly infringing mark had been used for a long period of time weighed against finding of likelihood of confusion). There must be more than a few confused customers to support a finding of likelihood of confusion. *George & Co.*, 575 F.3d at 399 (evidence of a few anecdotal instances of actual confusion was "*de minimis*" in light of plaintiff's significant sales volume, weighing "heavily against a finding of a likelihood of confusion.")

Variety concedes that it is not aware of any instances of actual confusion even though both Variety and Walmart have continuously sold millions of dollars of products in connection with their respective marks since late 2011. (Angell Aff., ¶ 7 & Ex. G, Responses to Rog. 12; ¶ 5 & Ex. E, Burgess Depo. at 58:3-7; ¶ 3 & Ex. C, Blackburn Depo. at 69:2-4.) Further, Walmart's expert Hal Poret designed and conducted a survey to determine the extent to which, if at all, Walmart's use of the Backyard Grill + Design mark creates any confusion. (Angell Aff., ¶ 11 & Ex. K.) Out of 209 qualified respondents, no one was confused—there were ***zero instances of confusion***. (*Id.*)

In contrast, Variety failed to provide any survey evidence. In cases like this in which the evidence shows that there is no actual confusion, Courts routinely find that there is no likelihood of confusion. For example, in *CareFirst*, 434 F.3d at 268, the court held that no confusion was likely because there was a survey showing only a 2% level of confusion among 130 persons surveyed, stating that this was "hardly a sufficient showing of actual confusion." Similarly, in *IDV N.A., Inc. v. S & M Brands, Inc.*, 26 F. Supp. 2d 815, 831–832 (E.D. Va. 1998), the court held that a survey showing a 2.4% level of confusion proves "the absence, rather than the presence, of likely confusion of source or

sponsorship between Bailey's cigarettes and BAILEY's liqueurs."  In *Wag'N Enters.*, 2012 WL 1633410, at *8, the court stated that "[P]laintiff's failure to produce either evidence of actual confusion or a survey weighs heavily against a finding of infringement."  These cases are squarely on point.

b.      *Variety's "Backyard" Marks Are Weak*

The strength of a mark is "the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *CareFirst*, 434 F.3d at 269. "[T]he stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark." *George & Co.*, 575 F.3d at 393.  "The 'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength." *CareFirst*, 434 F.3d at 269 (internal citations omitted).

(1)      Variety's Marks Are Conceptually Weak

Variety attempts to rely on the incontestable status of its registered mark THE BACKYARD to show conceptual strength.  This is improper.  The incontestable status of a registered mark is not determinative of the conceptual strength of the mark.  The Fourth Circuit has explained that

> [I]ncontestability affects the validity of the trademark but ***does not establish the likelihood of confusion necessary to warrant protection from infringement***.  Likelihood of consumer confusion remains an independent requirement for trademark infringement….[We] hold that ***we are free to address whether Plaintiffs' incontestable trademark is descriptive or suggestive in determining whether the likelihood of consumer confusion exists in this case***.

*Petro Stopping Ctrs. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997) (emphasis added). Thus, incontestable marks can be shown to be weak marks for purposes of determining whether a likelihood of confusion exists.

As demonstrated in Section (III)(A)(2)(a), *supra*, Variety's "The Backyard BBQ" is generic and therefore not entitled to any trademark protection because a definition of BBQ is a barbeque grill, which is what the product is.  Variety's "The Backyard" mark is descriptive, lacks secondary meaning and thus conceptually weak. *See Pizzeria Uno*, 747 F.2d at 1527.

The conceptual weakness of Variety's marks is also demonstrated by the extensive third party use of marks incorporating the word "backyard."  "'A strong trademark is one that is rarely used by parties

other than the owner of the trademark, while a weak trademark is one that is often used by other parties.'" *CareFirst*, 434 F.3d at 270 (internal citations omitted). "'[T]he frequency of prior use of [a mark's text] in other marks, particularly in the same field of merchandise or service, illustrates the mark's lack of conceptual strength.'" *Id.*

As shown in Walmart's Summary Judgment Brief (at pp. 5-6), and above in section (II)(A), there is extensive third party use of marks using the word "backyard" in connection with lawn and garden products. Variety has admitted that the word "backyard" is "widely used" in connection with sales of grilling equipment, and that many such uses would not create a likelihood of confusion with Variety's BACKYARD marks. (*Id.*, p. 6.) This is compelling evidence of the weakness of Variety's marks. *See Fuel Clothing Co., Inc. v. Nike, Inc.*, 7 F. Supp. 3d 594, 611-12 (D.S.C. 2014) (evidence of third party registrations and usage rendered asserted trademark conceptually weak).

Weak marks are the subject of summary judgment against the trademark owner. For example, the Court in *CareFirst* granted summary judgment after concluding that the mark "CareFirst," as used in connection with a health care organization, was weak because many health care businesses used some variation of the words "care" and "first" in their marks. 434 F.3d at 270. "Backyard" used with outdoor products often used in the backyard is similarly conceptually weak.

### (2)    Variety's Marks Are Commercially Weak

Courts assess commercial strength by "look[ing] at the marketplace and ask[ing] 'if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise.'" *CareFirst*, 434 F.3d at 269 (internal citations omitted). Commercial strength considers: "(1) the plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark." *George & Co.*, 575 F.3d at 395.

Variety fails to provide any analysis of the above factors. Rather, it does nothing more than state that "[t]he commercial strength of the BACKYARD trademark in the marketplace is amply demonstrated

by its duration of use, annual sales, and advertising and marketing expenditures." (Dkt. 44, p. 13.)  This conclusory statement is insufficient to establish that its marks have commercial strength.

Variety has not produced any evidence demonstrating that customers understand that Variety's BACKYARD marks refer to Variety's lawn and garden products, including grills and grill accessories. Variety admits that it does not advertise its BACKYARD marks via television, radio or the internet. (Angell Aff., ¶ 3 & Ex. C, Blackburn Depo. at 40:8-9 & 84:9; ¶ 12 & Ex. L, Adcock Depo. at 21:11 – 22:13 & 24:5-14.)  Variety's only form of advertising is through circulars/tabs distributed in Variety's retail stores and local newspapers in a limited geographic area in the United States, as well as through in-store displays and product labels/packaging.  (*Id. See also* Angell Aff., ¶ 7 & Ex. G, Responses to Rogs. 5, 8, & 9.)  Variety's total expenditures for circulars allegedly containing references to the BACKYARD marks since 1998 were no more than approximately ████ per year.  (Angell Aff., ¶ 7 & Ex. G, Response to Rog 5.)  Expenses for in-store displays and product labels/packaging were just ██████ from 2009 forward, and ████████ prior to 2009.  (*Id.*)  This limited advertising shows the commercial weakness of the "backyard" marks.

Variety also advertises its BACKYARD marks primarily in connection with non-grill related outdoor products, with only a few instances of advertising in connection with grills or grill-related products after 2008.  (Angell Aff., ¶ 1 & Ex. A, 2010-2015 Circulars/Tabs, showing a grand total of 16 such pages.)  This further demonstrates that customers do not associate Variety's BACKYARD marks with barbecue grills.

In assessing commercial strength, the Court may also "consider the sales and advertising expenditures of the product or products bearing the trademark at issue relative to those of other trademarks in the market."  *Fuel Clothing*, 7 F. Supp. 3d at 613.  Since Variety has not provided any sales or advertising figures for similar products, this weighs against a finding of commercial strength.  *See Id.* at 613-14.  Variety cannot dispute that many national grill brands (*e.g.*, Weber, Brinkman, Char-Broil, Coleman, Sunbeam, etc.) are much better known due to advertising and promotion campaigns as compared to Variety's "Backyard" grills.  It is undisputed that since 2012, Variety's sales of grills and

grill related products have totaled less than ██████, further demonstrating that Variety is not known

for its grills or grill-related products.  (Angell Aff., ¶ 2 & Ex. B, Variety's Sales Data.)

The prevalence of extensive third party use of marks incorporating the word "backyard" also

weakens any commercial strength in Variety's marks.  *See CareFirst*, 434 F.3d at 270 (finding that

"evidence of extensive third-party use" demonstrated the disputed mark's lack of commercial strength);

*George & Co.*, 575 F.3d at 396-97 (finding a lack of commercial strength where advertising expenditures

were small, no consumer studies were performed, and no evidence of any attempts to plagiarize, even

though there was some unsolicited media coverage and recent sales success).

Finally, Variety's inconsistent use of its BACKYARD marks (as discussed below) in the face of

pervasive third party use of "backyard" shows conceptual weakness.  *See* McCarthy § 7:38.50 ("[O]nly

uniform and consistent appearance will allow uses of the mark to continue to imprint the image of the

mark in the public mind as an easily and quickly recognized symbol."); *Rock & Roll Hall of Fame &*

*Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 755 (6th Cir. 1998) ("Consistent and repetitive use of a

designation as an indicator of source is the hallmark of a trademark.").

For all of these reasons, Variety's BACKYARD marks are commercially and conceptually weak,

which strongly favors a finding of no likelihood of confusion.

### c.      The Marks are Dissimilar

The Court also looks at the similarity of the marks, which requires examining the allegedly

infringing use in the context in which it is seen by the ordinary consumer.  *CareFirst*, 434 F.3d at 271

(internal citations omitted).  For word marks, the focus is on "whether there exists a similarity in sight,

sound, and meaning which would result in confusion."  *George & Co.*, 575 F.3d at 396.

Variety claims that in assessing similarity, the Fourth Circuit focuses on the dominant portions of

the marks.  (Dkt. 44, p. 14.)  Because Walmart disclaimed the word "grill" in its mark Backyard Grill +

Design, Variety maintains that the Court must focus on the word "backyard" as the dominant portion of

both the parties' marks.  Again, Variety's argument lacks merit.

When comparing trademarks, the Court should follow the anti-dissection rule. Trademarks should be compared as a whole, in their entireties, as a consumer would, rather than broken down into their component parts. *Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1358 (Fed. Cir. 2000) ("The ultimate conclusion of similarity or dissimilarity of the marks must rest on consideration of the marks in their entirety.").

Further, if the common element of conflicting marks is a word that is "weak," likelihood of confusion is reduced. McCarthy § 23:48. A portion of a mark may be "weak" in the sense that such portion is descriptive, highly suggestive, or is in common use by many other sellers in the market. *Id.* For example, no likelihood of confusion was found between plaintiff's DULUTH NEWS–TRIBUNE newspaper and defendant's SATURDAY DAILY NEWS & TRIBUNE newspaper, the court noting that the combination of the "common words" "news" and "tribune" was "relatively weak." *Duluth News-Tribune v. Mesabi Publ. Co.*, 84 F.3d 1093, 38 USPQ.2d 1937 (8th Cir. 1996) (defendant also used a distinctive blue banner and subtitle beneath the newspaper name). *See also Smith v. Tobacco By-Products and Chemical Corp.*, 243 F.2d 188, 189-90 (C.C.P.A. 1957) ("It has frequently been held that trademarks, comprising two words or a compound word, are not confusingly similar even though they have in common one word or part which is descriptive or suggestive of the nature of the goods to which the marks are applied, or of the use to which such goods are to be put."). Some courts have also held that "descriptive" terms should not be considered when addressing the similarity between marks because descriptive terms are legally irrelevant. *See American Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 308 (2d Cir. 1986).

As demonstrated in section (III)(A)(2)(b), *supra*, the word "backyard" is descriptive of the lawn and garden products. Thus, while "backyard" may be a common element of both parties' marks, it does not make the marks confusingly similar.

Variety also ignores that Walmart's mark is a design mark, where all that is needed is a simple "eyeball" test to determine non-infringement. *Ocean Spray Cranberries, Inc. v. Ocean Garden Products, Inc.*, 223 USPQ 1027 (TTAB 1984) (holding that the issue of the similarity of design marks must be

decided primarily on the basis of visual similarity); *In re Steury Corp.*, 189 USPQ 353 (TTAB 1975). A comprehensive verbal analysis adds nothing to an eyeball evaluation of the visual similarities and differences of graphic marks. *General Foods Corp. v. Ito Yokado Co.*, 219 USPQ 822 (TTAB 1983); *Daimler-Benz Aktiengellschaft v. Chrysler Corp.*, 169 USPQ 686 (TTAB 1971); McCarthy, §23:25.

Variety has used many iterations of its mark with or without other elements. As shown below, Variety's more recent uses include the following: (1) "The Backyard" + Design, which consists of the words "The Backyard" displayed against a red, rectangular background in front of a black circle with a yellow perimeter and accompanied by a design that includes pruning shears, a shovel, an umbrella, a pronged fork, tongs, and a spatula; (2) "The Backyard" + Design as previously described except that the mark is entirely blue; (3) "The Backyard BBQ," which consists of "The Backyard" directly above the term "BBQ" displayed against a red, rectangular background in front of a black circle with a yellow perimeter; and (4) "The Backyard BBQ" or "Backyard" in plain font with mostly lower case letters as a product label. (Angell Aff., ¶ 1 & Ex. A, Variety Circulars.)

| Variety's Marks | Walmart's Mark |
|---|---|
|  | |

In contrast, as shown above, Walmart's mark consists of the word "BACKYARD" in capital letters, directly over the capital letters "GR" and "LL" with an image of a grill between the two sets of letters. Both the letters and the image of a grill are gray or black in color. Consequently, the only similar component of the parties' marks is the word "backyard," which as detailed above is descriptive term that is widely used by others in this field and should not be considered. Additionally, Walmart's use of its

mark has been generally consistent, with the same form of the mark either appearing on product packaging, labeling, or on the product itself. (Angell Aff., ¶ 13 & Ex. M, Walmart Advertisements.)

Under these circumstances, the word marks cannot be considered similar. *See Hearthware, Inc. v. E. Mishan & Sons, Inc.*, 2012 WL 3309634 at *9 (N.D. Ill. 2012) (granting summary judgment and finding that the word "wave" "is descriptive and is frequently used for other items in the same kitchen and household product category")*; Swatch AG*, 739 F.3d at 160 (differences in accompanying terms and designs undercut any similarity of the marks at issue); *CareFirst*, 434 F.3d at 271-72 (accompanying terms distinguished marks at issue); *George & Co.*, 575 F.3d at 396 (finding marks at issue were dissimilar based on different branding and packaging); *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 94 (4th Cir. 1997) (finding marks were not similar despite common use of "Petro" where the marks used different colors, accompanying terms, and graphics).

Moreover, the designs are not objectively or visually similar. The graphic designs used by each party may be protected, but a simple "eyeball test" shows that Walmart's design, which includes an image of a barbeque grill, does not infringe Variety's designs. One of Variety's designs consists of lawn and garden tools, which are not present in Walmart's design. The prominent features in the other Variety designs are a rectangle and a circle, neither of which are present in the Walmart design.

The parties' respective marks are also private label "house" brands used only on products sold in their respective stores (and in Walmart's case, on Walmart.com) where they are surrounded by other insignia clearly indicating the source of the brands. Consumers would never see the parties' respective products side-by-side or in close proximity at any other store. This lessens any likelihood of confusion. *See Fuel Clothing*, 7 F. Supp. 3d at 616 ("[w]hen considering the similarity of two marks, '[i]f one of two similar marks is commonly paired with other material, that pairing will serve to lessen any confusion that might otherwise be caused by the textual similarity between the marks.'") (internal citations omitted).

*d.* *There is Only Minimal Overlap Between the Parties' Respective Goods*

In considering the similarity of the goods identified by the marks at issue, a court must measure the "similarity . . . with respect to each party's actual performance in the marketplace." *CareFirst*, 434 F.3d at 272 (citation omitted).

Variety's mark THE BACKYARD is registered only in connection with retail services. Because there is no dispute that Walmart does not use its Backyard Grill + Design mark with retail services, there is no overlap between the parties' goods and services with respect to Variety's registered mark.

As for Variety's common law marks, there is only minimal overlap between the parties' goods. Although both parties sell grills and grill-related products, the overwhelming majority of the products sold by Variety in connection with its BACKYARD marks are other types of outdoor products. (Angell Aff., ¶ 2 & Ex. B & ¶ 6 & Ex. F.) As evident from its listing of "Branded Products" on page 15 of its Motion, Variety uses its BACKYARD marks with a line of lawn and garden products, which includes a few charcoal grills and grill accessories. (*See also* Angell Aff., ¶ 2 & Ex. B & ¶ 6 & Ex. F.) In contrast, Walmart uses its Backyard Grill + Design mark with an extensive line of gas and charcoal grills and grilling and cooking accessories. (*Id.*) The only overlap between the parties is limited to charcoal grills and a few grill accessories. (*Id.*) Thus, this factor weighs against a finding of likelihood of confusion. *See Petro Stopping*, 130 F.3d at 95 (finding that the parties' services were dissimilar despite some overlap where the plaintiff offered other services in addition to those offered by both parties).

*e.* *The Parties' Respective "Facilities," aka, Channels of Trade, Differ*

This factor seeks "to determine if confusion is likely based on how and to whom the respective goods of the parties are sold." *Rosetta Stone*, 676 F.3d at 155 (internal quotations omitted). Here, there is no overlap between the retail locations in which products branded with the marks at issue are sold.

Variety sells products branded with its BACKYARD marks only at Variety's stores (*see* Dkt. 1 at ¶¶ 21-24), and Walmart only sells its Backyard Grill + Design products in Walmart stores and on Walmart's website (*see* Angell Aff., ¶ 4 & Ex. D, Dineen Depo. at 30:9-13.) Thus, consumers will encounter only Variety's products after entering a store replete with advertisements and references to one

of Variety's store names, and consumers will encounter Walmart's products only by entering a Walmart store filled with references to Walmart or by visiting Walmart's website adorned with Walmart's logo.

Variety claims that both parties operate retail locations in some of the same cities and towns, making them direct competitors for the same customers. (Dkt. 44, p. 16.) However, this does not demonstrate similar facilities. *See Swatch AG*, 739 F.3d at 161 (although the parties both sold products in department stores, online, and in gift shops, any overlap was insignificant because the parties did not sell the products at the same stores or through the same websites); *Fuel Clothing*, 7 F. Supp. 3d at 618-19 (finding dissimilar facilities where products at issue were sold in different stores and websites).

The fundamental differences in the way consumers encounter the parties' products in the marketplace weigh against a finding of likelihood of confusion. *See CareFirst*, 434 F.3d at 273 ("significant differences between how consumers encounter the parties' respective marks in these facilities reduce the weight of this factor").

### f. The Parties' Advertising Differs

Courts also look at the similarity in advertising between the parties, including "the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and the content of the advertisements." *CareFirst*, 434 F.3d at 273.

Variety claims that the parties advertise grills and grill accessories in similar ways because they principally advertise by displaying products in their retail stores. (Dkt. 44, p. 16.) Variety states that it occasionally advertises its grills on its website, but does not sell them there. Although Variety admits that Walmart advertises ***and*** sells grills on its website, Variety dismisses this form of advertising as negligible because Walmart sells █████████ of its grills via its website. (*Id.*, pp. 16-17.) Variety's characterization of the parties' advertising is not accurate.

The evidence makes clear that Variety advertises using circulars/tabs inserted in newspapers or distributed in Variety's stores, along with in-store signage, labels and product packaging. (Angell Aff., ¶ 7 & Ex. G, Responses to Rogs. 5, 8, & 9.) Most of Variety's circulars/tabs do not connect the featured products with one of the BACKYARD marks, but rather use the BACKYARD marks to designate a

section of a circular featuring outdoor, garden, and lawn related products. (*Id.*, ¶ 1 & Ex. A, Variety's Circulars.) A small number of circulars also contain a few pages in which the names "Backyard BBQ" or "The Backyard BBQ" are affixed to charcoal grills in very small print. (*Id.*) Since Variety only utilizes in-store and newspaper circulars/tabs, its advertising is limited to the geographic areas in which it has store locations. Variety's corporate designee, Mr. Blackburn, testified that "pretty much any" of its customers fall within an approximately 500-mile range of Henderson, North Carolina. (Angell Aff., ¶ 3 & Ex. C, Blackburn Depo. at 40:5-7.)

In contrast, Walmart advertises its "Backyard Grill + Design products only in circulars that are distributed in newspapers and within Walmart's stores. (Dineen Decl., ¶ 5.) Unlike Variety, Walmart's advertisements clearly link its mark with the featured products. (Angell Aff., ¶ 13 & Ex. M, Walmart Advertisements.) These differences weigh against a finding of confusion. *See CareFirst*, 434 F.3d at 273 (finding differences where defendant's advertising was much more extensive despite some overlap).

g.      *Variety Cannot Show An Intent To Cause Confusion*

In a case of forward confusion, the "intent of a junior user is relevant only if the junior user intended to capitalize on the good will associated with the senior user's mark." *CareFirst*, 434 F.3d at 273. Intent "is evidenced by an alleged infringer's efforts to make his use of the mark resemble the mark holder's use in order to pass his services [or products] off as the mark holder's services [or products]." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 25 F. Supp. 3d 865, 887 (E.D. Va. 2014) (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984)). *See also Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 464 (D. Md. 2002) (no intent to confuse where there were observable differences in the marks).

Variety argues that Walmart knew of Variety's federal registration for THE BACKYARD (which was issued only in connection with retail services) prior to adopting its Backyard Grill + Design mark. (Dkt. 44, p. 7.) Such knowledge is insufficient to show that Walmart intended to confuse consumers. *See George & Co.*, 575 F.3d at 398 ("knowledge of another's goods is not the same as an intent to mislead and to cause consumer confusion.") (internal citations omitted); *Fuel Clothing*, 7 F. Supp. 3d at 620

(evidence of prior knowledge of plaintiff's mark was insufficient to create an issue of material fact that defendant had an intent to cause confusion); *U.S. Conf. Of Catholic Bishops v. Media Res. Ctr.*, 432 F. Supp. 2d 616, 628 (E.D. Va. 2006) (admission of prior knowledge of plaintiff's mark "does not address the central question" of intent to infringe); *CareFirst*, 434 F.3d at 273 (evidence that defendant filed a trademark application after learning of plaintiff's mark "in and of itself, simply does not show an intent to capitalize on the good will associated with [plaintiff's] mark.").

Moreover, Variety ***misrepresents*** the testimony from Walmart's witness, Karen Dineen, on this issue. Contrary to showing wrongful intent, Ms. Dineen's testimony shows that Walmart acted prudently at all stages. In vetting possible brand names, Walmart became aware of Variety's THE BACKYARD registration. (Angell Aff., ¶ 4 & Ex. D, Dineen Depo. at 30:22–33:14). That registration, however, was only for the mark THE BACKYARD for "retail store services" and not for any products. *Id.* When Walmart adopted the Backyard Grill + Design mark, it had no knowledge that Variety was using that mark or any mark with grills or grill-related products. In fact, Ms. Dineen testified that Walmart did not learn that Variety was using any "backyard" mark in connection with any such products until much later, in July 2012, when Variety filed a related trademark opposition. (*Id.* at 90:3-10).

The fact that Walmart considered using the mark "Backyard BBQ" during the trademark selection process does not show wrongful intent. Ms. Dineen did not testify that Walmart was aware of Variety's use of "Backyard BBQ," and Variety has shown no such awareness. Regardless, Walmart never adopted "Backyard BBQ" or any other mark Variety claims to have used over the years.[4] Instead, Walmart adopted Backyard Grill + Design, a different trademark.

The element of intent is entirely missing because there is no evidence that Walmart sought to capitalize on any goodwill in Variety's marks. There is no evidence that Walmart copied or manipulated

---

[4] Variety's counsel acknowledged this during Ms. Dineen's deposition. (Angell Aff., ¶ 4 & Ex. D, at 52:18-20. On page 6 of its Summary Judgment Brief, Variety nevertheless argues, "Wal-mart, apparently having lost patience with the trademark selection process, simply decided to ignore its attorneys' advice and adopt the Backyard trademark anyway. . . ." (Dkt. 44, p. 6). The distortion is clear, and underscores Variety's apparent misconception that it is entitled to a monopoly on the word "backyard" for use with outdoor goods or grill products.

Variety's word or design marks since the marks look different. There is no evidence that Walmart attempted to pass its products off as Variety's products. Further, the products on which the marks appear are mostly different, and Walmart did nothing to advertise or market them in a way that suggests they were sold by Variety. There is also no evidence that Walmart desired to use the Backyard Grill + Design mark in order to gain a benefit from any goodwill or reputation that Variety may have had in its marks.

Like the situation here, it is more difficult to show an intent to confuse consumers when the mark is weak and there is no evidence that any confusion actually resulted or that the defendant believed it could increase sales through goodwill associated with a plaintiff's mark. *See Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 Fed. App'x 239, 245 (4th Cir. 2007) (defendant was justified in continuing use of its mark after learning of plaintiff's mark where defendant believed that plaintiff's mark was weak, even in the absence of a trademark search); *Fuel Clothing*, 7 F. Supp. 3d at 620 (a finding that plaintiff's mark was weak supports a finding that defendant acted in good faith and without an intent to cause confusion); *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 299 (S.D.N.Y. 2003) (awareness of the senior user's mark is not evidence of bad faith when the junior user reasonably believed that there would be no likely confusion between the marks as used).

Accordingly, Variety has failed to show that Walmart intended to cause confusion.

> h.       *The Sophistication of Grill Purchasers Is Neutral*

Consumer sophistication "'considers the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods.'" *Star Indus.*, 412 F.3d at 390 (internal citations omitted). Walmart's products range in cost from $10 to approximately $200. (Angell Aff., ¶ 4 & Ex. D, Dineen Depo. at 81; *see also* http://www.walmart.com.) Items at the higher end of the range would prompt consumers to be more careful in making purchasing decisions. "When consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, . . . there is not a strong likelihood of confusion." *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 284 (3d Cir. 2001); *Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*, 954 F.2d 713, 718 (Fed. Cir. 1992) ("There is always

less likelihood of confusion where goods are expensive and purchased after careful consideration." In light of the nature of all of the products at issue and the range of price points, this factor is neutral.[5]

      6.      <u>Variety Has Not Shown Infringement Under A Theory Of Reverse Confusion</u>

Variety claims that this is a case of both "forward" and "reverse" confusion. (Dkt. 44, p. 19.) Yet, in its Motion, Variety does nothing more than present a few case law citations considering the reverse confusion theory and identifying some of the factors that are analyzed differently from a typical forward confusion case. (*Id*.) Variety has failed to, and cannot, prove that there is a likelihood of confusion under a theory of reverse confusion.

As in forward confusion, "the ultimate question in a reverse confusion claim is whether there is a likelihood of consumer confusion as to the source or sponsorship of a product." *A&H Sportswear,* 237 F.3d at 229. "The essence of reverse confusion is that the more powerful junior user saturates the market with a similar trademark and overwhelms the smaller senior user." *Freedom Card*, 432 F.3d at 474. The Fourth Circuit has not recognized a claim of "reverse confusion." *Teal Bay Alliances, LLC v. Southbound One, Inc.* 2015 WL 401251 (D. Md. Jan. 26, 2015). Courts have recognized that the "chief danger inherent in recognizing reverse confusion claims is that innovative junior users, who have invested heavily in promoting a particular mark, will suddenly find their use of the mark blocked by plaintiffs who have not invested in, or promoted, their own marks." *Freedom* Card, 432 F.3d at 472 n.17 (internal citations omitted). Further, "an overly-vigorous use of the doctrine of reverse confusion could potentially inhibit larger companies with established marks from expanding their product lines." *Id*.

Here, Variety has not presented any evidence showing that Walmart engaged in a multi-million dollar "massive, saturation advertising and marketing campaign" that would be necessary for a finding of reverse confusion. In fact, Walmart's advertising has been limited to including some of the "Backyard Grill" products in circulars inserted in newspapers and available in Walmart's stores, which appear among many other products. (Dineen Decl., ¶¶ 4-5.) This clearly does not amount to a significant

---

[5] Given that Variety does not assess this factor in its likelihood of confusion analysis, it must be assumed that Variety agrees that this factor does not weigh in favor of finding a likelihood of confusion.

advertising and marketing campaign that warrants a finding of reverse confusion. *A&H Sportswear Co. v. Victoria's Secret Stores*, 57 F. Supp. 2d 155 (E.D. Pa. 1999) *aff'd in part, vac'd in part by,* 237 F.3d 198 (3d Cir. 2000) (holding that the "Defendants have not used their economic power to overwhelm the market with advertising of THE MIRACLE BRA swimwear. Since the doctrine of reverse confusion is not implicated, we decline to examine whether a likelihood of reverse confusion exists.")

Further, the courts have made clear there can be no reverse confusion where the senior user failed to actively promote and protect its mark before the junior user entered the market. For example, in *Fuel Clothing*, 7 F. Supp. 3d at 624-25, the Court found that at the time the junior user entered the mark, there were over 1,000 federal trademark registrations that included the word "Fuel," with at least 15 of these registrations for the word "Fuel" alone in the same class as the senior user's registered mark, as well numerous non-party uses of the word "Fuel" in connection with the same goods and services. The Court held that there was no reverse confusion because "Nike's entry into the market did not overwhelm Fuel, as the market was saturated upon Nike's entry." *Id.* at 625. The facts in this case are virtually identical.

Variety also has not established that Walmart adopted its mark "knowing, or recklessly disregarding" Variety's mark. *See The Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468, 487-88 (D. Md. 2012) ("In a reverse confusion claim, the factfinder considers whether the junior user adopted the infringing mark knowing, or recklessly disregarding, the senior user's mark—not whether the junior user intended to trade on the senior user's goodwill and reputation.") The evidence shows that Walmart was only aware of Variety's registered mark THE BACKYARD for use with retail store services. Walmart was ***not*** aware of Variety's use of "The Backyard" and "The Backyard Grill" in connection with lawn and garden products, including grills, and had no basis to assume that Variety was using its marks in this manner. (Supp. Dineen Decl., ¶ 3.) Because Walmart was not using its mark in connection with retail services, it had no basis to assume there was any risk of confusion. (*Id.*)

Variety claims that "confusion" is treated differently in reverse confusion cases (Dkt. 44, p. 19), implying that evidence of confusion is not required in cases involving reverse confusion. Yet, Variety fails to provide any authority for this naked claim.

Further, Walmart retained survey expert George Mantis to design and conduct a survey to determine whether Walmart's use if its Backyard Grill + Design mark creates any reverse confusion. (DeAntonio Decl., ¶ 5 & Ex. A at 12.)  Out of 121 qualified respondents, two were determined to be confused and two "possibly confused," resulting in a 1.7% level of confusion.  (*Id*.)  These results are clearly *de minimis* and show that there is no reverse confusion.  *See CareFirst*, 434 F.3d at 269 (granting summary judgment of non-infringement and holding that a 2% level of confusion is "hardly a sufficient showing of actual confusion"); *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1151 (10th Cir. 2013) (holding that "survey data reflecting a 2.6% rate of actual confusion, was *de minimis*). Accordingly, Variety has failed to demonstrate a likelihood of confusion under a theory of reverse confusion.

IV.     <u>CONCLUSION</u>

For all of the reasons set forth above, the Court should deny Variety's motion for partial summary judgment and should grant summary judgment in favor of Walmart.

Respectfully submitted this 28th day of May, 2015.

NEXSEN PRUET, PLLC

/s/ Corby C. Anderson
Corby C. Anderson (NC Bar No. 20829)
Matthew S. DeAntonio (NC Bar No. 39625)
227 W. Trade Street, Suite 1550
Charlotte, North Carolina  28202
Telephone: 704-338-5365
Facsimile:  704-805-4737
E-mail:canderson@nexsenpruet.com
       mdeantonio@nexsenpruet.com

*Counsel for Defendant Wal-Mart Stores, Inc.*

## CERTIFICATE OF SERVICE

I certify that the foregoing **OPPOSITION TO VARIETY STORES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was served on all parties to this action via the Court's electronic filing system.

This the 28th day of May, 2015.

/s/ Corby C. Anderson

Corby C. Anderson