IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-217-BO

| | |
|---|---|
| VARIETY STORES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| WAL-MART STORES, INC. ) | |
| ) | |
| Defendant. ) | |

This cause comes before the Court on cross-motions for summary judgment. [DE 43, 49]. The appropriate responses and replies have been filed, and the matters are ripe for ruling. For the reasons discussed below, plaintiff's motion for partial summary judgment is granted.

## BACKGROUND

In 1993, Rose's Stores, Inc., Variety Stores, Inc.'s (hereinafter "Variety") predecessor in interest, began using the trademark THE BACKYARD for the in-store department selling lawn and garden equipment and supplies. [DE 44, p. 9]. Rose's Stores, Inc. filed a trademark application in 1993, and the mark was registered in 1994.[1] *Id.* THE BACKYARD was registered for use on "retail store services in the field of lawn and garden equipment and supplies." THE BACKYARD, Registration No. 1,847,503. Rose's used the marks THE BACKYARD, BACKYARD, and BACKYARD BBQ (collectively "the BACKYARD marks") on a wide variety of outdoor products, including grills and grill accessories. [DE 44, p. 3–4].

---

[1] THE BACKYARD is United States Trademark Registration No. 1,847,503, and it is incontestable. [DE 44, p. 8]. An incontestable mark's registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115; 15 U.S.C. § 1065.

In 1997, Variety purchased Rose's. *Id.* Following the acquisition, the BACKYARD marks remained in use in Rose's stores and expanded into other Variety stores as well. *Id.* Since 2002, Variety has sold over $56,000,000.00 worth of products under the BACKYARD marks, over $8,000,000.00 of which came from grill and grill accessory sales. [DE 44-10].

In 2010, Wal-Mart Stores, Inc. (hereinafter Walmart) decided to begin selling grill and grill accessories under an in-house brand. [DE 44-11, p. 25]. This process entailed developing a quality brand name under which to sell these grill and grill accessories. *Id.* Thus, in the second half of 2010, Walmart began researching and testing possible brand names for their desirability among consumers. *Id.*

Walmart went through several brand names, such as GRILL MASTER and GRILL WORKS. [DE 44-11, p. 35]. However, the legal team cautioned against use of GRILL WORKS, so Walmart abandoned it. [DE 44-11, p. 48]. The next choice was BACKYARD BARBECUE. [DE 44-11, p. 48–49]. Once again, the legal team advised against it, and the brand team elected not to move forward with the name. *Id.* After consulting additional consumer research, BACKYARD BBQ became the mark of choice. [DE 44-11, p. 62]. Once again, though, the legal team advised against using the name. [DE 44-11, p. 64]. Nevertheless, Walmart decided to move forward with BACKYARD BBQ despite being twice warned against using it. [DE 44-11, p. 78]. At some point, the preferred brand name apparently shifted to BACKYARD GRILL.

This branding decision was not made in an information vacuum. Walmart's representative Karen Dineen admits she was aware of Variety's trademark registration as early as 2011 "from information shared from [Walmart's] Legal Department with [her]." [DE 44-11, p. 87]. Thus, though Walmart had earlier decided against brand names on the advice of their legal team for similar reasons, they elected to move forward with their BACKYARD mark despite

2

knowing of Variety's trademark registration. Moreover, no one from Walmart visited a Variety-operated store to observe how the marks were used, though this is a corporate practice at Walmart. [DE 44-11, p. 32–33]. Instead, Walmart simply moved forward with the mark and began using their BACKYARD GRILL + Design mark in late 2011. [DE 50, p. 10].

Consequently, plaintiff filed the instant suit.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment: "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Variety has brought claims for trademark infringement and unfair competition under federal law and trademark infringement and unfair and deceptive practices under state law. 15 U.S.C. § 1114; 15 U.S.C. §1125; N.C. Gen. Stat. § 75-1.1 *et seq*; N.C. Gen. Stat. §80-11. The elements of each of these claims are substantially the same. To prevail, plaintiff must prove (1) its marks are protectable and (2) defendant's use of the mark(s) is likely to cause confusion among consumers. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014).

3

Variety first must prove its marks are protectable. As THE BACKYARD is a registered and incontestable mark, it is entitled to substantial protection. 15 U.S.C. §§ 1065, 1115(b). "[I]ncontestability provides a strong presumption in favor of the mark's predictability and validity." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006) (internal quotation marks omitted).

Variety uses THE BACKYARD, as well as the marks BACKYARD and BACKYARD BBQ, "for retail services and a wide variety of goods, including furniture and home furnishings, lawn and garden furnishings and supplies, [and] barbeque grills and barbeque grilling accessories." [DE 44, p. 14]. Variety claims "strong common law rights" in all these BACKYARD marks, despite the fact that only THE BACKYARD is registered. [DE 44, p. 14]. Lack of registration is not fatal to Variety's case, as "[a]ctual use of most kinds of trademarks, without more, establishes protectable trademark rights under common law. The right to a trademark comes from its use." 1-3 Gilson on Trademarks § 3.02 (2015). Indeed, "all ownership rights in a mark flow from its prior use." *See Humanoids Group v. Rogan*, 375 F.3d 301, 305 n.3 (4th Cir. 2004); *see also Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 335 (1st Cir. 2004) ("Trademark rights may arise under either the Lanham Act or under common law, but in either circumstance, the right is conditioned upon use in commerce."). Here, there is no dispute that Variety was the prior user. Indeed, Walmart's representative has admitted Walmart was aware of Variety's use before it ever marketed a grill under its BACKYARD GRILL brand. [DE 44-11, p. 87]. Accordingly, though only THE BACKYARD is registered and incontestable, Variety has trademark rights in all the BACKYARD marks.

Variety also claims that its rights extend to use of the marks beyond just the purpose stated in the THE BACKYARD registration. [DE 44, p. 15]. The Fourth Circuit addressed a

4

similar situation in its opinion in *Synergistic Int'l v. Korman*, 470 F.3d 162 (4th Cir. 2006). In *Synergistic*, the court of appeals considered whether a business known as THE WINDSHIELD DOCTOR infringed on the trademark of a business operating under the incontestable mark, GLASS DOCTOR. *Id.* at 166. The district court had granted summary judgment to the GLASS DOCTOR registration owner despite the fact that the area in which the two companies were competing—windshield repair—went beyond the services identified in the GLASS DOCTOR registration. *Id.* at 169. Considering this question on appeal, the Fourth Circuit held that "a suggestive mark is entitled to protection against 'the same or a confusing mark on the same product, or related products, and even on those which may be considered by some to be unrelated but which the public is likely to assume emanate from the trademark owner.'"[2] *Id.* at 173 (internal quotation marks omitted). The court of appeals also held that "the PTO's [United States Patent and Trademark Office] registration of a suggestive mark should be broadly construed, and the appropriate reading is not limited to the text of the mark's registered purpose. In this regard, it is apparent that windshield repair and windshield installation are related services." *Id.* Accordingly, the Fourth Circuit held that the GLASS DOCTOR registration warranted protection against THE WINDSHIELD DOCTOR's "use of a similar trademark for similar services." *Id.* Here, too, Variety's registration is to be broadly construed. Doing so, it is apparent that the area of a store selling outdoor equipment and the outdoor equipment itself are related. Thus, Variety's BACKYARD marks are protectable against Walmart's "use of a similar trademark for similar services"—including the marketing and selling of grills and grill accessories. *Id.*

---

[2] The BACKYARD marks are suggestive. This designation will be discussed further *infra*.

5

Variety must also prove defendant's use of the mark is likely to cause confusion among consumers. For guidance in this determination, the Fourth Circuit has put forth nine factors for the district court to consider:

> (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion;

as well as "(8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 933 (4th Cir. 1995); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Noting that "not all these factors are of equal relevance in every case," the Court now considers each factor in turn. *Lone Star*, 43 F.3d at 933.

First, the Court considers the strength or distinctiveness of the mark. This inquiry has two components: conceptual strength and commercial strength. *See George & Co.*, 575 F.3d at 393. "A mark's conceptual strength is determined in part by its placement into one of four categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *Id.* at 394. The category into which a mark falls determines its level of protection. The closest calls often come when distinguishing between descriptive and suggestive marks, but "[g]enerally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528 (4th Cir. 1984) (quoting *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 379 (7th Cir. 1976)) (internal quotation marks omitted). Examples of suggestive marks include "CopperTone®, Orange Crush®, and Playboy®," where examples of descriptive marks would be "After Tan post-tanning lotion" and "5 Minute Glue." *Sara Lee Corp. v. Kayser-Rother Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). The trademark

6

registration itself is instructive in this inquiry because "[i]f the USPTO [United States Patent and Trademark Office] believes a mark is descriptive, the registrant must provide evidence of secondary meaning before the USPTO will grant registration." *George & Co.*, 575 F.3d at 395. The USPTO's determination is prima facie evidence of whether a mark is descriptive or suggestive. *Id.*

Here, the Court finds that the BACKYARD marks are suggestive and, thus, entitled to higher protection. The association of BACKYARD with grills and grill accessories "requires some operation of the imagination to connect it with the goods." *Pizzeria Uno Corp.*, 747 F.2d at 1528 (quoting *Union Carbide Corp.*, 531 F.2d at 379) (internal quotation marks omitted). The association is similar to that of CopperTone®, Orange Crush®, and Playboy® with their designated products in that there is a logical connection between the name and product but the connection is more nuanced than a name that imparts information directly. Since a logical leap must be made, the BACKYARD marks are suggestive. Moreover, there is no evidence that the USPTO required proof of secondary meaning before registering THE BACKYARD mark, which constitutes prima facie evidence that the mark is suggestive. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir. 1995).

The strength of the mark determination does not end with conceptual strength; the Court must also consider whether the mark has commercial strength. This inquiry "looks at the marketplace and asks if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *CareFirst of Md. V. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006). The Fourth Circuit has held that this analysis is similar to that of determining secondary meaning, in which the Court considers (1) advertising expenditures; (2) consumer studies linking

7

the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d, 383, 395 (4th Cir. 2009).

Here, Walmart argues that Variety's advertising expenditures have been insufficient and that Variety has put forth no evidence of customer association of the brand with Variety. [DE 50, p. 20]. Walmart also contends that the prevalence of the word "backyard" in third party marks undermines the commercial strength of Variety's marks. *Id.* at 21. It is indisputable that Variety has not proffered evidence in support of all six aforementioned factors, but it nevertheless claims that its mark is commercially strong due to the duration of use, annual sales, and advertising and marketing expenditures. [DE 44, p. 19]. Indeed, Variety has used the BACKYARD marks since 1993. THE BACKYARD, Registration No. 1,847,503. Since 2002, Variety has sold over $56,000,000.00 of products under the BACKYARD trademark, with over $8,000,000.00 in sales of grill and grill accessories. [DE 44-10]. Moreover, Variety has spent millions of dollars advertising for the BACKYARD marks. [DE 51-3, Ex. G; DE 44-10]. These factors combined with the aforementioned conceptual strength analysis persuade the Court that Variety's marks are conceptually and commercially strong. Accordingly, the strength of Variety's marks supports the claim of likelihood of confusion.

Second, the Court considers the similarity of the two marks. Once again, this factor supports a finding for plaintiff. At the outset, plaintiff's marks THE BACKYARD, BACKYARD, and BACKYARD BBQ are obviously similar to BACKYARD GRILL in that each prominently features the word "backyard." Evaluating the dominant word in each mark is proper, as the Fourth Circuit "has reasoned that the marks need only be sufficiently similar in

appearance, with greater weight given to the dominant or salient portions of the marks" when evaluating the similarity of two marks. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Here, the dominant portion of each mark—BACKYARD—is more than "sufficiently similar."[3] It is identical. When "the dominant portion of the parties' marks . . . is the same," this "caus[es] a strong likelihood of confusion." *Id.*

Third, the Court considers the similarity of the goods and services the marks identify. This factor strongly supports finding for plaintiff. Plaintiff provided the Court a side-by-side list of the products on which it uses its BACKYARD marks and those on which defendant uses its BACKYARD GRILL mark. [DE 44]. The similarities are striking. Plaintiff uses its marks on, among other items, grills, grill accessories, and grill covers. *Id.* Defendant uses its mark on barbecues and grills, charcoal grills, gas grills, lighters for grills, wood chips, thermometers, utensils for grilling and so on. While the lists do not map onto each other exactly, the comprehensive overlap in marketing and selling grills is patent. Defendant argues that "Variety uses its BACKYARD marks with a line of lawn and garden products, which includes a few charcoal grills and grill accessories," whereas "Walmart uses its BACKYARD GRILL + Design mark with an extensive line of gas and charcoal grills and a few grill accessories." [DE 50]. While this may be true, it does little to rebut plaintiff's claim that the marks are used on similar goods; indeed, Walmart itself stated "both parties sell grills and grill-related products." [DE 50, p. 27]. Thus, consideration of the similarity of the goods the marks identify is strong support of plaintiff's argument that there is likelihood of confusion.

---

[3] Just as Synergistic was required to disclaim "GLASS" apart from its use in its GLASS DOCTOR mark, Walmart was required to disclaim "GRILL" apart from its use in its BACKYARD GRILL mark in its intent-to-use trademark application. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 167 (4th Cir. 2006); U.S. Trademark Application Serial No. 85400391 (filed Aug. 17, 2011). Accordingly, just as the "dominant word" of Synergistic's mark was "DOCTOR," so too is the dominant word of Walmart's mark "BACKYARD." *Synergistic*, 470 F.3d at 167; U.S. Trademark Application Serial No. 85400391 (filed Aug. 17, 2011).

9

Fourth, the Court considers the similarity of the facilities that the two parties use in their businesses. Here again, this factor militates strongly toward a finding for plaintiff. As plaintiff states in its motion, "[l]ittle need be said regarding this factor" because it is so apparent that the facilities used by both parties are similar. The Court adopts plaintiff's argument that

> Wal-Mart operates thousands of retail stores selling a wide variety of goods, including many items intended for outdoor use, including grills and grill accessories. Variety operates hundreds of retail stores selling a wide variety of goods including many items intended for outdoor use, including grills and grill accessories. In many instances Wal-Mart and Variety operate stores in the same cities and towns, making them direct competitors for the same customers.

[DE 44, p. 22]. The Court is not persuaded by Walmart's argument on this point, which essentially states that consumers know if they are in a Variety store or a Walmart store, so the facilities are dissimilar. [DE 50]. The analytical benefit of the similarity of the facilities factor is not to determine if consumers know the store in which they are shopping; rather, it considers whether there is a greater likelihood of confusion because consumers who shop in one outlet are likely to shop in the other and, thus, be confused when they see the mark at issue. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984) (deciding this factor based on whether "the products and services provided by the two companies serve the same purpose."). Here, the similarities in size, type, customer, and geographic locations of the stores in question strongly support a finding that the similarity of the facilities contributes to a likelihood of confusion.

Fifth, the Court considers the similarity of the advertising the parties use. Both parties use similar methods to advertise the products. Both Variety and Walmart use primarily in-store methods of advertising the products at issue with occasional inclusion in in-store or newspaper circulars as well. [DE 44, 50]. Due to these similarities, this factor also militates toward finding for Variety.

Sixth, the Court considers the defendant's intent. This factor is among the strongest in support of finding for Variety. This analysis could begin and end with the fact that Walmart's legal team made the brand team aware of Variety's mark and twice warned the brand team not to use a "BACKYARD" mark, and yet the mark was used anyway. [DE 25-1, p. 3; DE 44-11, p. 48–49, 64]. It is difficult to imagine more compelling evidence of intent to confuse than a knowing decision to use a similar mark to sell similar goods. This intent is only underscored by the fact that Walmart deviated from a common practice and chose not to investigate the ways in which Variety stores were using the BACKYARD marks. [DE 44-15]. It is apparent from the record that Walmart knew a smaller chain (Variety) used the BACKYARD marks in the way Walmart itself wished to and—either because it grew exhausted with trying to come up with another name or because it knew it was bigger and could likely outlast the smaller chain in litigation or both—decided to use the marks in that way anyway.

Seventh, the Court considers whether there has been actual confusion. Walmart hangs its hat on this issue, claiming it is nearly decisive. Walmart has repeatedly suggested in filings and at the hearing that the multi-factor analysis used by the Fourth Circuit in trademark infringement cases is in fact a proxy for determining if there has been actual confusion. [DE 141, p. 8]. The Court is not convinced that a finding of actual confusion does quite that much work under existing Fourth Circuit jurisprudence. It is true that the Fourth Circuit has said "evidence of actual confusion is *often* paramount in the likelihood-of-confusion analysis." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006) (emphasis added) (internal quotation marks omitted). However, the court of appeals has never held that such a finding is necessary. *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 263 (4th Cir. 2007) ("[I]t is well established that no actual confusion is required"); *API v. Cooper*, 718 F.3d 347, 363

(4th Cir. 2013) ("[L]ack of evidence of actual existing consumer confusion is beside the point. As we observed above, proof of actual confusion is unnecessary") (internal quotation marks omitted); *Super Duper, Inc. v. Mattel, Inc.*, 382 Fed. Appx. 308, 313 (4th Cir. 2010) ("[T]he absence of such proof [of actual confusion] does not preclude a party from proving a likelihood of confusion based on a compilation of other evidence"). *See also Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014) (noting that "actual confusion is generally considered to be the most important factor" but also finding that "the factors are weighed differently depending on the circumstances of the cases . . . .") (internal quotation marks omitted); *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006) ("Not all of these factors are of equal importance, nor are they always relevant in any given case.") (internal quotation marks omitted). *Contra Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) ("The first and paramount factor under this set of factors is the distinctiveness or strength of the two marks.").

Here, plaintiff contends likelihood of confusion can be proven without actual confusion, and, thus, has not offered evidence of such. [DE 44, p. 24]. Given the facts of this case, plaintiff argues, "there is no mechanism by which confusion at the consumer level can filter its way up from the retail stores through several layers of bureaucracy to a specific department in a home office." *Id.*

Defendant, on the other hand, has offered a survey which claims to prove that there has been no actual confusion. [DE 51-7, 51-8]. However, the Court fundamentally disagrees with the way the survey was conducted, and, thus, affords it relatively little weight. The survey asked Walmart shoppers in North Carolina questions such as, "[d]o you believe that these products are sponsored, approved, or authorized by any company or store, or do you not?" and "[d]o you

12

believe that these products are connected or affiliated with any other company or store, or do you not?" [DE 51-7]. However, the Court does not believe these questions squarely address the crux of the confusion issue. The issue is not whether consumers think BACKYARD branded products are owned by Variety, for consumers shopping at Rose's or Walmart have no reason to believe that BACKYARD is an in-store brand at all. Instead, consumers would believe BACKYARD was another brand of grill such as Char-Broil, Weber, Coleman, or any other brand of grill the stores may offer.[4] Consequently, consumers would have no reason to associate a BACKYARD branded grill with another company or store, so their reply in the negative to the questions posed above may actually tell very little about whether they were confused in the way that is material to the case.

Though the Court is aware of the importance of the actual confusion factor in certain circumstances, the Court does not believe the facts at hand create an instance where actual confusion is paramount. Accordingly, the Court notes that there is no evidence of actual confusion put forth by plaintiff, and it also notes that evidence of the type of actual confusion that would be instructive in this matter would be difficult to obtain. Thus, this factor, though weighing against plaintiff, is not as significant in this case as it may be in others.

Finally, the Court considers the remaining two factors: the quality of the products and the sophistication of the consumers. The parties do not dispute the similarities on these factors. In its motion, plaintiff stated that "the quality of the goods is similar, and the consuming public, i.e., outdoor grill cooks, clearly has no particular sophistication regarding this relatively inexpensive product." [DE 44]. Walmart did not dispute the analysis of product quality and agreed that "[t]he

---

[4] Indeed, Walmart's data-supported assertion that "Variety's revenue from sales of 'BACKYARD' products have continued to increase since Walmart started using 'Backyard GRILL' + Design in late 2011" only further supports the notion that consumers believed these brands were one and the same. [DE 50, p. 9].

13

sophistication of grill purchasers is neutral." [DE 50]. Accordingly, the Court finds that these final two factors also support plaintiff's claim of likelihood of confusion.

Having engaged in the nine-point analysis and found it favors plaintiff, the Court now considers the circumstances of this case at a more global level, for examination of the larger picture is especially compelling. Before the Court is a case in which a larger company with deeper pockets for litigation selected a product name with the same dominant word as a smaller company by which to sell the same and similar items as that smaller company. The larger company knew of the smaller company's use—and trademark—when it decided to use the name, but the larger company used it anyway. The items were then sold in the same types of stores located in the same geographic areas and frequented by the same types of customers. It is difficult to imagine how these circumstances lead to anything but a likelihood of confusion.

For all the reasons above, the Court finds that Variety had a protectable interest in the BACKYARD marks and that Walmart's competing use created a likelihood of confusion. Therefore, Variety's motion for partial summary judgment is granted, and Walmart's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment [DE 43] is GRANTED and defendant's motion for summary judgment [DE 49] is DENIED. Also, for good cause shown, all motions to SEAL [DE 45, 57, 91, 94, 98] are GRANTED. The clerk is DIRECTED to file this order UNDER SEAL.

SO ORDERED, this **7** day of December, 2015.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE