IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| VARIETY STORES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 5:14-cv-00217 |
| | ) |
| WAL-MART STORES, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
VARIETY STORES, INC.'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT
TESTIMONY OF DEFENDANT WAL-MART STORES INC.'S WITNESSES DINEEN,
DESHOMMES, KOVACH, ORTIZ, AND PUGLISI**

**I. INTRODUCTION**

Walmart continues its campaign to relitigate issues previously determined by this Court including likelihood of confusion, Walmart's intent in adopting an infringing mark, and the strength of the mark. None of these issues are relevant to the October 11 bench trial, which is limited solely to the issue of the disgorgement of Walmart's profits for its willful infringement of Variety's well-established trademark rights.

This Court has already concluded as a matter of law that Variety owns an incontestable, federally registered trademark (the "BACKYARD mark"), that there is a likelihood of confusion between Variety's BACKYARD mark and Walmart's infringing BACKYARD GRILL & design mark ("infringing BACKYARD mark"), and that Walmart willfully and intentionally infringed those trademark rights. The only issues to be determined in the current proceeding are the equitable remedies available to Variety due to Walmart's willful infringement, namely the disgorgement of Walmart's profits from its sale of products bearing the infringing BACKYARD

mark. The only evidence relevant in such a hearing in equity is Walmart's profits from the sale of goods bearing the BACKYARD mark and the relevant equitable factors that the Fourth Circuit identified in *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006) in making such a determination.

Further, this Court has already determined as a matter of law many if not all of the relevant *Synergistic* factors in Variety's favor in its Order on Summary Judgment. [DE 149]. These facts are part of the law of the case in this matter. Where, as here, summary judgment has been granted in the liability phase, the law of the case doctrine prevents relitigation of the same issues during the remedies phase.

The testimony that Walmart intends to offer from Karen Dineen, Marvin Deshommes, Matt Kovach, David Ortiz, and Rob Puglisi all relate to issues that are not relevant in the remedies phase of this litigation and/or purport to relate to issues previously determined as a matter of law by this Court.

Accordingly, Variety respectfully requests that the Court exclude the testimony of Walmart's proffered witnesses Dineen, Deshommes, Kovach, Ortiz, and Puglisi, because, as explained further below, these witnesses are identified as having only knowledge regarding issues that Walmart has already unsuccessfully argued to the Court and the Court found unpersuasive as a matter of law.

## II.  FACTS AND PROCEDURAL HISTORY

The undisputed facts and procedural history of this case are laid out in this Court's Order granting Variety summary judgment and are incorporated herein by reference. [DE 149 at 1-3].

Variety filed a motion for Partial Summary Judgment on issues of trademark validity, likelihood of confusion, and Walmart's infringement of the BACKYARD mark. [DE 43].

Walmart opposed Variety's summary judgment motion [DE 74] and filed its summary judgment motion [DE 49] which the Court denied. [DE 149 at 15]. In support of its positions on the parties' respective motions, Walmart and Variety presented argument and facts relating to Walmart's design, development, use and sale of grills and related items bearing Variety's BACKYARD trademark. Walmart's experts presented and relied upon surveys relating to alleged lack of confusion and consumer's grill purchasing decisions. [DE 51-7, DE 51-8]. Walmart presented two Declarations of Ms. Dineen containing limited facts and limited communications about Walmart's trademark searches, analysis and legal clearances of Variety's BACKYARD trademark.[1] [DE 62, DE 80]. Finally, Walmart introduced evidence by Mr. Puglisi about what it claimed were various third party uses that included the term "backyard." [DE 60]. This evidence is clearly irrelevant to the remedy Variety is entitled to as a result of Walmart's infringement. The Court has already concluded, contrary to Mr. Puglisi's "evidence", that Variety's BACKYARD mark is both commercially and conceptually strong.

In short, issues relating to liability, such as likelihood of confusion, are no longer in this case. Walmart's indication that it intends to nonetheless continue pursuing these issues is nothing less than contempt directed at this Court and its Order on Summary Judgment.

Walmart served on Variety its purported "Supplement to Wal-Mart Stores Inc.'s Rule 26 Initial Disclosures" on February 19, 2016—more than six months after the close of discovery and after this Court granted partial summary judgment in Variety's favor, finding Walmart

---

[1] "Limited" because Walmart has steadfastly clung to its claim of attorney/client privilege regarding its activities in deciding to use the BACKYARD trademark despite its knowledge that it belonged to Variety. It is therefore unclear how Walmart intends to offer this testimony since it clearly falls within its privilege claim. Judge Swank has ruled in Walmart's favor that its attorney/client privilege was *not* waived by Ms. Dineen's testimony, *see* Minute Entry (Feb. 2, 2016) [DE 166], so this evidence cannot come into evidence, whatever else may be the case regarding its lack of relevance to Variety's remedy. In view of Judge Swank's ruling, Variety has not further pursued the waiver issue.

willfully infringed Variety's trademark rights.  In its supplement, Walmart identified four previously undisclosed fact witnesses.[2]  In the Joint Pretrial Order, Walmart indicates its intent to call each of these witnesses to testify regarding issues previously determined by this Court on summary judgment or otherwise not relevant to the limited scope of the current trial.  The chart below demonstrates Walmart's 26(a)(1) disclosed topics and the proposed testimony of each witness.

| WITNESS | 26(a)(1) DISCLOSURE | PROPOSED TESTIMONY |
| --- | --- | --- |
| **Karen Dineen** Senior Director — Brand/Creative/ Color-Trend Walmart | Ms. Dineen has knowledge concerning Walmart's design, development, selection and use of the "BACKYARD GRILL + Design" mark. Ms. Dineen also has knowledge concerning the topics addressed in her deposition taken in the TTAB action related to this matter. | Ms. Dineen will testify regarding *Synergistic* factor 1, whether Walmart had the intent to confuse or deceive in its design, development, selection, and with respect to *Synergistic* factor 2, whether sales have been diverted, including testimony concerning the use of the BACKYARD GRILL & Design mark, the strength of the BACKYARD GRILL & Design mark, the other branding associated with the BACKYARD GRILL & Design mark on Walmart's products, and drivers of sales of Walmart's BACKYARD GRILL & Design mark branded products. |

---

[2] Variety is filing concurrently herewith a Motion in Limine to exclude Walmart's untimely disclosed witnesses.

4

| | | |
|---|---|---|
| **Marvin Deshommes**<br>Vice President, Divisional Merchandise Manager for Seasonal Products Sam's Club<br>Previous position, Senior Category Director, Merchandising, for Outdoor Entertaining Products Walmart (2007 - July 2014). | Mr. Deshommes has knowledge concerning Walmart's design, development, selection and use of the "BACKYARD GRILL + Design" mark. He also has knowledge about facts and communications relating to the consideration, design, and development of the "BACKYARD GRILL + Design" mark. He also has knowledge about the facts and communications regarding trademark searches / analysis / legal clearances of the "BACKYARD GRILL + Design" mark. He also has knowledge about the role of licensed "brands" and "branding." | Mr. Deshommes will testify regarding *Synergistic* factor 1, whether Walmart had the intent to confuse or deceive in its design, development, selection, and regarding *Synergistic* factor 2, whether sales have been diverted, including testimony concerning the use of the BACKYARD GRILL & Design mark, the strength of the BACKYARD GRILL & Design mark, the other branding associated with the BACKYARD GRILL & Design mark on Walmart's products, and drivers of sales of Walmart's BACKYARD GRILL & Design mark branded products. |
| **Matt Kovach**<br>Senior Buyer — Outdoor Living — Grill Shop<br>Walmart | Mr. Kovach has knowledge concerning Walmart's purchase and sales of products branded under the "BACKYARD GRILL + Design" mark and Walmart's future use of the "BACKYARD GRILL + Design" mark. He also has knowledge about consumer purchasing decisions related to grills and grill-related accessories and sales projections related to Walmart's grills and grill-related accessories. | Mr. Kovach will testify regarding *Synergistic* factor 2, whether sales have been diverted, including testimony concerning Walmart's purchase and sales of products branded under the BACKYARD GRILL & Design mark and customer purchasing decisions relating to grills and grill-related accessories and sales projections related to Walmart's grills and grill-related accessories. |

5

| | | |
|---|---|---|
| **David Ortiz**<br>Vice President,<br>Divisional Merchandise<br>Manager – Lawn &<br>Garden Walmart | Mr. Ortiz has knowledge concerning Walmart's design, development, selection and use of the "BACKYARD GRILL + Design" mark. He also has knowledge about Walmart's future plans to use or expand use of "BACKYARD GRILL + Design" in the future. | Mr. Ortiz will testify regarding *Synergistic* factor 2, whether sales have been diverted, including testimony concerning Walmart's use of the BACKYARD GRILL & Design mark, the effect of the use of that mark, and regarding *Synergistic* factor 4, whether there was any unreasonable delay by Variety in asserting its rights, including testimony concerning the costs required to change or remove the BACKYARD GRILL & Design mark from Walmart products. |
| **Rob Puglisi**<br>MMCA Group, Ltd. | Mr. Puglisi has knowledge concerning third-party use of BACKYARD formative marks. | Mr. Puglisi will testify regarding the apportionment of Variety's alleged damages, including with respect to *Synergistic* factor 2, whether Variety's sales have been diverted, and the topic of the prevalence of use of the term BACKYARD by third parties in the grill and grilling accessories space. |

As is apparent from Walmart's disclosures in both its untimely Rule 26(a)(1) supplement and the Joint Pretrial Order, Walmart intends to call Dineen, Deshommes, Kovach, Ortiz, and Puglisi to testify regarding issues of confusion, buying decisions, strength of the mark, third party usage, and selection of the BACKYARD mark that are not relevant to the remedies phase of this case. As is also apparent, Walmart recharacterizes these witnesses' testimony in an attempt to circumvent Variety's objection to their relevancy. But Walmart is trying to fit a square peg into a round hole – the testimony of these witnesses is nothing more than Walmart's attempt to unwind the Court's Order on Summary Judgment.

### III. THE TESTIMONY OF WALMART'S WITNESSES IS IRRELEVANT AND MUST BE EXCLUDED

#### a. Irrelevant Evidence Must Be Excluded Under F.R.E. 401 and 402

Federal Rule of Evidence 402 plainly states that: "Irrelevant evidence is not admissible." Further, Federal Rule of Evidence 401 defines the "Test for Relevant Evidence":

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
(b) the fact is of consequence in determining the action.

Courts routinely exclude as *irrelevant* evidence pertaining to issues which have already been adjudicated by the Court. Such exclusion is often justified under the law of the case doctrine. The Supreme Court has very recently reaffirmed the longstanding law of the case doctrine:

> The law-of-the-case doctrine generally provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Pepper v. United States,* 562 U.S. 476, 506, (2011) (quoting *Arizona v. California,* 460 U.S. 605, 618, (1983)). The doctrine "expresses the practice of courts generally to refuse to reopen what has been decided," but it does not "limit [courts'] power." *Messenger v. Anderson,* 225 U.S. 436, 444, (1912).

*Musacchio v. United States*, No. 14-1095, 577 U.S. ---, 136 S. Ct. 709, 716 (2016).

Excluding evidence as irrelevant under the law of the case doctrine logically flows from both Rule 401 (a) and (b). That is, where an issue has already been ruled upon, evidence exclusively related thereto cannot "ha[ve] any tendency to make a fact more or less probable…." Similarly, where the issue has already been litigated, "the fact is [no longer] of consequence in determining the action."

This Court has invoked the law of the case doctrine to exclude evidence relating to issues already litigated. *United States v. Quality Built Const.*, 358 F. Supp. 2d 487, 490 (E.D.N.C. 2005) (Boyle, J.). In *Quality Built*, the United States of America filed an action to enforce provisions of the Fair Housing Act ("FHA"). *Id.* at 489 (citing 42 U.S.C. §§ 3601-3619). The Court stated: "[Plaintiff] alleges, and the Court *has already found*, that the subject properties were not designed and constructed so as to be accessible to persons with disabilities as required by the FHA. The issue of remedies remains." *Id.* (emphasis added).

On the issue of remedies, in *Quality Built*, the plaintiff filed a motion in limine to exclude defendants from introducing evidence pertaining to issues already litigated including, *inter alia*, "any evidence…pertaining to the 'housing needs of the relevant community of persons with disabilities' … and evidence regarding 'industry-wide' lack of 'notice' regarding the [FHA]'s accessibility requirements." *Id*. That is, the plaintiff sought to exclude evidence from the merits phase (which were decided on summary judgment) and not related to the remedy phase. Granting the motion in limine, this Court held: "The law of the case doctrine precludes Defendants' efforts." *Id*. at 490. This Court further stated:

> In its [previous] Order, this Court affirmed the Magistrate Judge's ruling that Defendants were charged with constructive notice of the Act's requirements. Defendants cannot ignore this ruling because the law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."

*Id*. (quoting *Arizona,* 460 U.S. at 618). Thus, this Court held in *Quality Built* that the law of the case doctrine was applicable to exclude evidence at the damages phase pertaining to issues already litigated during the merits phase of the litigation. This Court should do the same in this case.

### b. Testimony relating to Walmart's Design, Development and Selection of the Infringing BACKYARD Mark Is Irrelevant and Should be Excluded

This Court has already ruled that Walmart's use of the BACKYARD mark creates a likelihood of confusion, and that Walmart's use was willful. [DE 149 at 14]. Just like the case in *Quality Built*, the liability phase of this case is over and only "[t]he issue of remedies remains." *Quality Built*, 358 F. Supp. 2d at 489. [DE 51-7 at 4]. With the liability phase decided, and because this Court has already concluded as a matter of law that there is a likelihood of confusion based upon Walmart's use of the BACKYARD mark, under the law of the case doctrine and Rules 401 and 402 of the Federal Rules of Evidence, issues related to the design, development, selection and use of Variety's BACKYARD mark by Walmart are irrelevant. Walmart is not permitted to relitigate the likelihood of confusion and other liability issues which have already been decided by this Court as a matter of law.

Further, evidence related to determining whether there is a likelihood of confusion typically overlaps with evidence related to determining whether to award damages in a trademark infringement case. *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, No. CIV. WDQ-08-2764, 2011 WL 5825689, at *2 (D. Md. 2011). For example, the infringer's intent in adopting the mark, relevant to the likelihood of confusion analysis, also relates to whether it had the intent to confuse or deceive, the first *Synergistic* factor. *Id.*, *see Buzz Off*, 606 F. Supp. 2d at 588 (accepting the jury finding of willfulness and applying it to the Court's balancing of the equity factors from *Synergistic* and weighing the factor in favor of the plaintiff). This Court has already held that Walmart's infringement of Variety's mark was willful. [DE 149 at 11] ("This analysis could begin and end with the fact that Walmart's legal team made the brand team aware of Variety's mark and twice warned the brand team not to use a "BACKYARD" mark, and yet the mark was used anyway. It is difficult to imagine more compelling evidence of intent to confuse

9

than a knowing decision to use a similar mark to sell similar goods."). This factor has already been determined by the Court as favoring disgorgement and is the law of the case not subject to further litigation. Testimony relating to Walmart's design, development, and selection of the infringing mark is not relevant to this proceeding.

The identification of Messrs. Deshommes and Ortiz as having knowledge regarding "facts and communications regarding trademark searches/analysis/legal clearances of the 'BACKYARD GRILL + Design' mark" is particularly troubling. Walmart has consistently and vehemently asserted an attorney/client privilege as to every aspect of Walmart's "trademark searches/analysis/legal clearances" relating to its adoption and use of Variety's BACKYARD mark. This is despite Ms. Dineen's repeated and undisputed testimony that Walmart knew of Variety's mark, was twice advised not to adopt it and did so despite that advice.

Variety relied on Ms. Dineen's voluntary testimony about how Walmart came to the decision to adopt and use Variety's BACKYARD trademark, and asserted that her testimony comprised a waiver of the attorney/client privilege. Variety moved to compel production of a large number of withheld documents. [DE 97]. After a hearing on January 20, 2016, Judge Swank denied Variety's motion to compel, ruling that the privilege had not been waived by Ms. Dineen's testimony. [DE 166]. While Variety disagrees with this decision, it now views the matter as closed. So, Walmart's belated identification of Messrs. Deshommes and Ortiz as witnesses who may testify about Walmart's "trademark searches/analysis/legal clearances" is mystifying unless Walmart has in mind a last-minute, eve-of-trial waiver of its privilege in hopes of undoing this Court's prior ruling on Walmart's willful infringement. [DE 149 at 14]. This, of course, is discovery abuse and should not be permitted.

### c. Testimony relating to Strength and Use of the Infringing BACKYARD Mark is Irrelevant and Should be Excluded

The "commercial strength" of the mark is not an issue for the damages phase, because (1) the mark is federally registered and incontestable so it is a suggestive mark, and (2) the Court already examined the strength of the mark and concluded it is a strong mark.

This Court ruled in its Order on Summary Judgment that the BACKYARD mark is "commercially strong." [DE 149 at 8]. The Court reached this holding referencing the following undisputed facts:

> Variety has used the BACKYARD marks since 1993. THE BACKYARD, Registration No. 1,847,503. Since 2002, Variety has sold over $56,000,000.00 of products under the BACKYARD trademark, with over $8,000,000.00 in sales of grill and grill accessories. [DE 44-10]. Moreover, Variety has spent millions of dollars advertising for the BACKYARD marks. [DE 51-3, Ex. G; DE 44-10]. These factors combined with the aforementioned conceptual strength analysis persuade the Court that Variety's marks are conceptually and commercially strong.

*Id*. Accordingly, the law of the case is that the BACKYARD mark is "commercially strong." The Court also extensively considered Walmart's use of the infringing mark in finding that Walmart's use of the infringing BACKYARD mark creates a likelihood of confusion with Variety's valid, registered trademark.

Irrespective of the Court's explicit finding, Walmart intends to offer Dineen, Deshommes, Kovach, and Ortiz to testify regarding the strength of Walmart's infringing BACKYARD mark and Walmart's use of the mark. Having already been determined by this Court, this testimony is irrelevant to the issue of disgorgement of Walmart's profits for its willful infringement of Variety's trademark rights.

### d. Testimony relating to Third Party Usage of "BACKYARD" is Irrelevant and Should be Excluded

In support of its Motion for Summary Judgment, Walmart introduced evidence by Mr. Puglisi about what it claimed were various third party uses that included the term "backyard." [DE 60]. This evidence is clearly irrelevant to the remedy Variety is entitled to as a result of Walmart's infringement. Evidence of third party use has zero bearing on a determination of the equitable remedy of disgorgement of Walmart's profits. In fact, the Court has already considered this evidence on Summary Judgment, where it arguably may have been relevant, and concluded, contrary to Mr. Puglisi's "evidence", against Walmart's Motion for Summary Judgment and in favor of Variety's.

### e. Testimony relating to Walmart's Cost to Remove the Infringing BACKYARD Mark from its Products is Irrelevant and Should be Excluded

Walmart intends to offer testimony from Ortiz regarding "the costs required to change or remove the BACKYARD GRILL & Design mark from Walmart products" as relating to the fourth *Synergistic* factor, whether there was any unreasonable delay by Variety in asserting its rights. This is facially irrelevant. The fourth factor "addresses the *temporal issue* of whether the plaintiff waited too long, after the infringement activities began, before seeking court relief." *Synergistic,* 470 F.3d at 176. Variety promptly instituted an opposition proceeding with the Trademark Trial and Appeal Board ("TTAB") upon learning that Walmart had filed an intent-to-use application with the USPTO to register the infringing BACKYARD mark. As soon as it became clear through discovery in the TTAB proceeding that Walmart was in fact using the infringing BACKYARD mark, and refused to cease use, Variety instituted the present action. No court has considered the cost to the infringer to remove the infringing mark from its products as relevant to this inquiry.

Further, the Court has already found that "Walmart's legal team made the brand team aware of Variety's mark and twice warned the brand team not to use a "BACKYARD" mark, and yet the mark was used anyway."  Walmart chose to adopt the infringing BACKYARD mark, expecting that it could simply steam roll the smaller company that owned the mark, and now is being held accountable for its willful infringing.  It is no one's fault but its own that a willful infringer, such as Walmart, must bear the cost of changing its infringing mark.

## IV.    CONCLUSION

For the reasons discussed above, Variety requests the Court to grant the relief requested.

This the 4th day of October, 2016.

Respectfully submitted,

/s/ W. Thad Adams, III
W. Thad Adams, III (N.C. Bar No. 000020)
Samuel A. Long, Jr. (N.C. Bar No. 46588)
Christina Davidson Trimmer (N.C. Bar No. 44857)
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
Telephone: 704-945-2901
Fax: 704-332-1197
Email: tadams@slk-law.com
along@slk-law.com
ctrimmer@slk-law.com

/s/ Scott P. Shaw
Scott P. Shaw (CA Bar No. 223592)
Jain S. Soderstrom (CA Bar No. 261054)
CALL & JENSEN
610 Newport Center Drive, Suite 700
Newport Beach, California 92660
Telephone: 949-717-3000
Fax: 949-717-3100
Email:  sshaw@calljensen.com
jsoderstrom@calljensen.com
LR 83.1 Counsel

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 4th day of October, 2016.

>Respectfully submitted,
>
>/s/ W. Thad Adams, III
>W. Thad Adams, III (N.C. Bar No. 000020)
>SHUMAKER, LOOP & KENDRICK, LLP
>101 South Tryon St., Suite 2200
>Charlotte, North Carolina 28280-0002
>Telephone: 704-945-2901
>Fax: 704-332-1197
>Email: tadams@slk-law.com