UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:14-cv-00217-BO

VARIETY STORES, INC.,

      Plaintiff,

v.

WAL-MART STORES, INC.,

      Defendant.

**DEFENDANT WAL-MART STORES, INC.'S
OPPOSITION TO PLAINTIFF VARIETY STORES, INC.'S
MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT TESTIMONY
OF DEFENDANT WAL-MART STORES INC.'S WITNESSES
<u>DINEEN, DESHOMMES, KOVACH, ORTIZ, AND PUGLISI</u>**

Defendant Wal-Mart Stores, Inc. ("Walmart") submits this opposition to the Motion *in Limine* filed by Plaintiff Variety Stores, Inc. ("Variety") to exclude the testimony of Karen Dineen, Marvin Deshommes, Matt Kovach, Davis Ortiz, and Rob Puglisi, and Memorandum in Support thereof ("Variety Mem."). *See* DE 255, 256.

## INTRODUCTION

Variety's Motion asks the Court to exclude testimony that is directly relevant to the issue of disgorgement of profits under an unjust enrichment theory. Variety's argument that these witnesses' testimony is not relevant rests on an improperly narrow interpretation of the scope of the upcoming trial. Variety contends that the Court should only hear evidence concerning Walmart's revenue and costs, ignoring the well-settled legal precepts that: (i) the Lanham Act prohibits a monetary award when it would constitute punishment instead of compensation; (ii) the Lanham Act requires a causal connection between the allegedly infringing conduct and the defendant's profits; and (iii) *Synergistic International, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006), requires consideration of the equities and permits disgorgement only if the equities weigh in favor of disgorgement.

The testimony of the witnesses that Variety seeks to exclude is relevant to these very issues. Therefore, the Court should deny Variety's motion.

## BACKGROUND

On May 4, 2015, Variety filed a motion for partial summary judgment that expressly excluded monetary relief from consideration. DE 43 (Variety Mot. for Summ. J.) at 1 ("Variety seeks an order entering judgment against Wal-Mart on the issue of its liability for trademark infringement and unfair competition and enjoining Wal-Mart's unlawful conduct, reserving for trial issues relating to additional remedies to which Variety is entitled.").

1

On December 7, 2015, this Court entered an order granting summary judgment in favor of Variety on liability. *See generally* DE 149 ("SJ Order"). Consistent with Variety's narrow request for relief, the SJ Order addressed liability only—specifically: (i) the validity of Variety's claimed marks; and (ii) the likelihood of forward confusion between Variety's claimed marks and Walmart's alleged infringing use. The SJ Order did not address Variety's entitlement to monetary relief or the scope of any such relief.

Variety subsequently moved for an evidentiary hearing on disgorgement of Walmart's profits solely on a theory of unjust enrichment. DE 157. While that motion was pending, on February 19, 2016, Walmart served Supplemental Disclosures on Variety, identifying 11 witnesses to provide testimony on the topics requested by Variety and compelled by the Court, including testimony relevant to the remedy phase of this case. DE 180-1 (Walmart's Supplemental Disclosures). Among these 11 witnesses are the five individuals whose testimony Variety seeks to exclude in its present Motion, who were disclosed in Walmart's Supplemental Disclosures as having the following information:

- **Karen Dineen**, Walmart's Senior Director for Brand, Creative, and Color-Trend, who has knowledge of "Walmart's design, development, selection, and use of the 'BACKYARD GRILL + Design' mark."

- **Marvin Deshommes**, Walmart's Senior Category Director, Merchandising, for Outdoor Entertaining Products from 2007-2014, who has knowledge of "Walmart's design, development, selection and use of the 'BACKYARD GRILL + Design' mark," and "the consideration, design, and development of the 'BACKYARD GRILL + Design' mark," and "trademark searches / analysis / legal clearances of the 'BACKYARD GRILL + Design' mark."

- **Matt Kovach**, Walmart's Senior Buyer for Outdoor Living and Grill Shop, who has knowledge of "Walmart's purchase and sales of products branded under the 'BACKYARD GRILL + Design' mark and Walmart's future use of the 'BACKYARD GRILL + Design' mark," as well as "consumer purchasing decisions related to grills and grill-related accessories and sales projections related to Walmart's grills and grill-related accessories."

- **David Ortiz**, Walmart's Vice President, Divisional Merchandise Manager for Lawn & Garden, who has knowledge of "Walmart's design, development, selection and use of the 'BACKYARD GRILL + Design' mark," as well as Walmart's future plans to use or expand use of 'BACKYARD GRILL + Design' in the future.

- **Rob Puglisi**, of MMCA Group, Ltd., who has knowledge of "third-party use of BACKYARD formative marks."

*Id.* at 2-3.[1]

On February 25, 2016, counsel for Variety wrote to complain that Walmart's Supplemental Disclosures would "offer testimony that is irrelevant to the remedy issue which is left for determination by the Court" and threatened that unless Walmart withdrew the Supplemental Disclosures, Variety would move to bar any testimony from these witnesses and seek sanctions pursuant to Federal Rules of Civil Procedure 16 and 37. DE. 180-4 (Letter from T. Adams to L. Chapman (Feb. 25, 2016)) at 1. Walmart's counsel responded that Walmart had updated its disclosures precisely to identify witnesses in response to *Variety's* demands, and on remedy-related issues:

> [T]he Supplemental Initial Disclosures reflect the identities of witnesses who will provide testimony on topics Variety requested in its motion to compel and which Walmart agreed to provide to resolve that motion … Additionally, the supplementation is consistent with the parties' recent agreement to identify and make available for deposition any witnesses who would be testifying at trial, but whose depositions have not yet been taken.

DE 183-1 (Letter from L. Chapman to T. Adams (Feb. 29, 2016)) at 2. Walmart also provided dates when these witnesses would be available for deposition. *Id.* at 1.

On March 1, 2016, Variety moved to strike Walmart's Supplemental Disclosures, to exclude the testimony of Ms. Dineen, Mr. Deshommes, Mr. Kovach, Mr. Ortiz, and Mr. Puglisi,

---

[1] Mr. Kovach was identified in Walmart's Initial Disclosures, served on August 18, 2014. DE 180-3 (Walmart's Initial Disclosures) at 3.

and for sanctions pursuant to Fed. R. Civ. P. 16(f) and 37(c).  DE 179 (Motion *in Limine* to

Strike Defendants' Supplemental Initial Disclosures, exclude Testimony, and for Sanctions

("Mot. to Strike")).  Following a status conference on June 14, 2016, the Court entered an order,

DE 211 (Order), denying Variety's motion without prejudice, indicating that if the parties could

not come to agreement, the matter could be raised again at trial.

In a letter dated July 8, 2016, counsel for Variety informed counsel for Walmart that "We

do not currently intend to depose any of the witnesses identified by Walmart in its 'Supplemental

Initial Disclosures.'"  DE 220-11 (Letter from Adams to Puzella) (July 8, 2016).  Variety has

now re-filed is prior motion as two separate motions *in limine*.  The first motion, DE 253, asks

the Court to strike Walmart's Supplemental Disclosures and exclude the testimony of Mr.

Deshommes, Mr. Ortiz, and Mr. Puglisi on the basis that these witnesses were not timely

identified.[2]  The second motion, DE 255, seeks to exclude the testimony of Ms. Dineen, Mr.

Deshommes, Mr. Kovach, Mr. Ortiz, and Mr. Puglisi as irrelevant to the issues before the Court

in the upcoming trial.

## ARGUMENT

The relevance standard is not in dispute.  Federal Rule of Evidence 401 states that

evidence is relevant if:

> (a) It has any tendency to make a fact more or less probable than it would
> be without the evidence; and

> (b) The fact is of consequence in determining the action.

Fed. R. Evid. 401.  The "basic standard of relevance thus is a liberal one."  *Daubert v. Merrell*

*Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993).  Further, relevance is "determined in the context of

---

[2] Thus, Variety has omitted Ms. Dineen and Mr. Kovach from this motion and has added Ms. Massaway, whose exclusion Variety did not seek in the prior motion.

4

the facts and arguments in a particular case, and thus [is] generally not amenable to broad per se rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

Variety attempts to deny Walmart its right to defend itself by setting up a false argument about what issues remain "of consequence in determining the action." Specifically, Variety argues that the only issue to be determined is "Walmart's profits from [the] sale of goods bearing the … BACKYARD mark," and consequently the "only evidence" that is relevant is evidence of these profits. DE 256 (Variety Mem.) at 1-2. As shown below, however, the issues "of consequence in determining the action" are not as narrow as Variety claims. These remaining issues include: (i) causation; and (ii) the *Synergistic* factors. The testimony of these witnesses is highly relevant to these remaining issues and should not be excluded.

## I. THE REMEDY PHASE REQUIRES CONSIDERATION OF CAUSATION

It is well established that without a causal link between a defendant's sales and the alleged infringement, the plaintiff is not entitled to disgorgement of any profits. *See, e.g.*, 4 CALLMAN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES, § 23:61 (4th ed. 2015). The Callman treatise summarizes the rule as follows:

> The defendant, however, is permitted to show, and has the burden of proving, that there was no causal connection between his profits and the unlawful conduct. To put it another way, he must rebut the presumption that his sales were [a]ffected by his unfair competition. If the defendant makes such a showing, the plaintiff will be denied a recovery of the defendant's profits.

*Id*.; *see also* 5 MCCARTHY § 30:65 ("Under the federal Lanham Act, as well as the common law, it is the infringer's burden to prove any proportion of his total profits which may not have been due to the use of the infringing mark.").

This rule has its origin in *Mishawaka Rubber & Woolen Mfg.*, where the Supreme Court held that there is no basis for disgorgement of profits absent causation:

5

> If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher. ***The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark.***

316 U.S. at 206 (emphasis added).[3]

This rule is well-recognized among federal district courts in North Carolina. For example, in *Exclaim Marketing, LLC v. DirectTV, LLC*, the Court considered a demand to disgorge the infringer's profits in a case of willful infringement related to telephone listings incorporating an alleged infringing mark. No. 11-Civ-684, 2015 WL 5725692, at *2–4 (E.D.N.C. Sept. 30, 2015). Following a jury trial on monetary recovery, the mark owner moved for an equitable increase in the profits awarded pursuant to 15 U.S.C. § 1117(a), seeking the infringer's entire profits. *Id.* at *1. In addressing the burdens, the Court opined that the accused infringer had the right not only to "parse out costs and expenses," but also ***to submit evidence*** that the "customers would have called the numbers used in the infringing listings notwithstanding the use of the [mark owner's] mark." *Id*. at *4.[4] *See also Allen v. Standard Crankshaft & Hydraulic Co.*, 231 F. Supp. 301, 303 (W.D.N.C. 1964) (citing *Mishawaka* and stating, "An accounting for profits is a form of equitable relief and it does not follow as a matter of course

---

[3] Variety relied on *Mishawaka* in its Memorandum of Law in Support of its Motion for Evidentiary Hearing on Disgorgement of Profits. DE 158 (Disgorgement Mem.) at 4.

[4] Variety relied on *Exclaim Marketing* in its Memorandum of Law in Support of its Motion for Evidentiary Hearing on Disgorgement of Profits. DE 158 (Disgorgement Mem.) at 4. Notably, the *Exclaim Marketing* Court found that the *Synergistic* factors could not support disgorgement of the entire amount sought because that amount was "excessive, and in fact may be punitive, in light of the actual damages claimed and proved by" the mark owner. *Exclaim Mktg.*, 2015 WL 5725692, at *4 n.3. Here, Variety has identified no lost sales. In fact, its sales ***increased*** during the period of the alleged infringement. *See* DE 51 (Affidavit of Karen Angell in Support of Walmart Stores, Inc.'s Motion for Summary Judgment) at ¶ 2.

upon the mere showing of an infringement. … Where there has been no showing that the plaintiff's business has been hurt (by a trademark infringement) or that the defendant has made profit out of the infringement, there is no call for relief other than that given by injunction" (citations omitted)).

Courts in other jurisdictions follow the same rule. *See*, *e.g.*, *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 966 F.2d 956, 957–8 (5th Cir. 1992) (granting judgment notwithstanding the verdict on unjust enrichment for lack of causation); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (noting that a defendant's profits must be "attributable to" the infringing conduct to be recoverable under an unjust enrichment theory); *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984) (considering 15 U.S.C. § 1125 claim and holding that "[u]njust enrichment warranting an accounting exists when the defendant's sales 'were attributable to its infringing use' of plaintiff's trademark."); *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-Civ-22046, 2009 WL 8634834, at \*13 (S.D. Fla. Apr. 29, 2009) ("[A] court may award all profits made during the infringing period, unless the infringer can prove that at least some of these profits flow from his own merit rather than from infringement of the plaintiff's mark."). Indeed, causation is even included in the federal form jury instructions on the issue of disgorgement in a Lanham Act case. *See* 3A Fed. Jury Prac. & Instr. § 159:92 (6th ed. 2015) (instructing that the jury must determine whether profits were "attributable to" the infringement).

This causal rule makes sense. If a plaintiff such as Variety claims entitlement to a defendant's profits based on an "unjust enrichment" theory, there must be proof that the purported "enrichment"—the profit—is "unjust," *i.e.*, attributable to the alleged infringement rather than to some other marketplace factor. Of course, if the profits made on a product are not

attributable to the alleged infringement, then they are not "unjust."  Given that the Lanham Act

expressly requires that any award of profits must be compensatory, and "not a penalty," 15

U.S.C. § 1117(a), there can be no recovery for unjust enrichment absent causation.  *See, e.g.*,

*Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157–58 (7th Cir. 1994) (affirming decision

not to permit recovery for unjust enrichment because, without proof of causation, such recovery

would constitute a statutorily impermissible penalty).

## II.     THE REMEDY PHASE REQUIRES CONSIDERATION OF THE *SYNERGISTIC* FACTORS

As Variety itself has argued, however, *Synergistic* governs the disgorgement of profits

inquiry.  *See, e.g.*, DE 158 (Disgorgement Mem.) at 4–5.  In *Synergistic*, the Fourth Circuit

identified six factors to guide the Court's inquiry:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether
> sales have been diverted, (3) the adequacy of other remedies, (4) any
> unreasonable delay by the plaintiff in asserting his rights, (5) the public
> interest in making the misconduct unprofitable, and (6) whether it is a case
> of palming off.

470 F.3d at 175.[5]  The testimony of Ms. Dineen and Messrs. Deshommes, Kovach, Ortiz, and

Puglisi relates to the first, second, and fourth *Synergistic* factors. The first factor concerns

"whether there has been a willful infringement on the trademark rights of the plaintiff, or

whether the defendant has acted in bad faith."  *Id.*  The second factor concerns "whether the

plaintiff lost sales as a result of the defendant's trademark infringement activities."  *Id.* at 176.

The fourth factor "addresses the temporal issue of whether the plaintiff waited too long, after the

infringement activities began, before seeking court relief." *Id.*

---

[5] These guidelines are not exclusive; the Court may also consider other factors "that may be relevant in the circumstances." *Id*. at 176.

Although it now seeks to exclude testimony concerning the *Synergistic* factors, Variety

clearly recognizes the relevance of *Synergistic*. Even after the Court granted summary judgment

on liability, Variety continued to pursue motions to compel discovery from Walmart that

concerned these very issues. Indeed, during a discovery hearing before Magistrate Judge Swank

on January 20, 2016 (*after* the Court granted summary judgment on liability), counsel for

Variety told Judge Swank that Variety was seeking discovery "with respect to the *Synergistic* …

factors," particularly "whether Walmart acted with intent to infringe our trademark"—

*Synergistic* factor 1.[6] DE 161 (Tr. of Hrg. (Jan. 20, 2016)), at 21:23-25; *id.* at 22:2-3; *see id.* at

80:24-81:1 (arguing that Variety needed to take deposition testimony "regarding the

consideration, design, development, creation, selection, and adoption of the" BACKYARD

GRILL + Design mark). During the same hearing, Variety's counsel acknowledged the

---

[6] Although the Court, in its likelihood-of-confusion analysis, found that Walmart was an "intentional" infringer, that finding in the liability phase does not fully answer the *Synergistic* factor in the remedy phase, which is focused more on the **degree** of intent for purposes of the equitable balancing. *See Buzz Off Insect Shield, Inc. v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 588 (M.D.N.C 2009). In *Buzz Off*, the court acknowledged a jury finding of willfulness and weighed it in favor of the plaintiff in the *Synergistic* analysis, but went on to make further findings expressly tailored to the task of conducting an equitable balancing:

> [E]ven if BOIS willfully infringed the Maryed mark, … the Court never-theless finds that BOIS **originally selected its mark without any intent to trade on Maryed's goodwill, and without bad faith or an intent to commit fraud on the public**. Although BOIS did continue to develop its business under the "BUZZ OFF" mark even after learning of the Maryed mark, **BOIS did not attempt to intentionally confuse consumers into purchasing its products instead of Maryed's products, nor did BOIS act with malice toward Maryed or otherwise engage in fraudulent conduct**. Therefore, although this factor weighs in favor of SCJ in considering damages, the conduct by BOIS in this case is not so fraudulent, malicious, or deceptive, compared to other trademark infringement cases, to weigh heavily in favor of an enhancement to the damages awarded in the present case.

*Id*. This Court has not yet engaged in this more complete equitable inquiry, nor has Walmart had the opportunity to present evidence regarding it.

relevance of evidence and testimony concerning diversion of sales, *Synergistic* factor 2. DE 161 (Tr. of Hrg. (Jan. 20, 2016)), at 97:10-11; *id.* at 97:19-20. Despite its obvious recognition of the relevance of evidence related to the *Synergistic* factors, Variety now seeks to exclude testimony on these issues.

## III. THE WITNESSES' TESTIMONY IS RELEVANT

The witnesses Variety now seeks to exclude can offer relevant testimony on the issues of causation and the *Synergistic* factors.[7] Ms. Dineen will testify, for example, regarding Walmart consumer research showing that, except in the case of famous brands like Weber, cost and features are most important when customers are seeking to purchase a grill or grill accessories. Mr. Deshommes will further testify that Walmart understood that research when adopting its BACKYARD GRILL + Design brand, and that Walmart's efforts were directed to selling product features and not emphasizing the BACKYARD GRILL + Design name. If Walmart consumers are motivated to purchase Walmart's private label grills and grill accessories by factors other than brand name, it is less likely that its profits are attributable to its use of the BACKYARD GRILL + Design mark, and it is less likely that sales were diverted. Mr. Kovach will testify regarding his knowledge of "Walmart's purchase and sales of products branded under the BACKYARD GRILL + Design mark," "customer purchasing decisions relating to grills and grill-related accessories," and sales projections concerning these products—testimony that, like Ms. Dineen's, is relevant to causation and to diversion of sales. DE 226 (Proposed Joint Pretrial

---

[7] In an argument repeated from its prior motion, Variety complains about Walmart's identification of Mr. Deshommes and Mr. Ortiz as having knowledge regarding trademark searches and legal clearances. DE 256 (Variety Mem.) at 10; *cf.* DE 180 (Mem. of Law in Support of Motion to Strike) at 12-13. Walmart's description of Mr. Deshommes's and Mr. Ortiz's testimony in the Proposed Joint Pretrial Order, however, makes clear that they are not being called to testify on these matters.

Order) at 55.  Similarly, Mr. Ortiz will testify regarding the impact of Walmart's use of the

BACKYARD GRILL + Design mark on sales of grills and grilling accessories, the impact of the

delay in Variety's bringing suit against Walmart, and facts relevant to whether this is a case of

palming off.  *Id.* at 55-56; DE 271 (Walmart's Proposed Findings of Fact and Conclusions of

Law), at 19.  Testimony on this topic is directly relevant to the *Synergistic* factors of whether

sales have been diverted, delay, and palming off.  470 F.3d at 175.

Walmart's witnesses will also testify about the reasons for selecting the BACKYARD

GRILL + Design mark and its extensive design efforts to ***distinguish*** its use of the BACKYARD

GRILL + Design mark in the marketplace.  And they will testify about their efforts to register the

mark with the USPTO, which is inconsistent with an effort to "commit fraud on the public."  *Id*.

This testimony goes to the *Synergistic* factor concerning Walmart's intent.

Finally, Mr. Puglisi will testify regarding third-party uses of the word BACKYARD in

the grill and grill accessories space.  DE 226 (Proposed Joint Pretrial Order) at 56.  Variety

contends this testimony is irrelevant because the Court has already found that Variety's

BACKYARD mark is "commercially strong."  DE 256 (Variety Mem.) at 11.  Walmart does not

seek to relitigate that finding.  Rather, Mr. Puglisi's testimony is relevant to other issues such as

causation, diversion of sales, and palming off.  For example, the fact that the marketplace is

saturated with additional uses of BACKYARD in the grill and grill accessories space makes it

less likely that Walmart's sales were caused by use of the mark, or that any causal link relates to

Variety, rather than to another third-party user of BACKYARD.

## CONCLUSION

The testimony of Ms. Dineen and of Messrs. Deshommes, Kovach, Ortiz, and Puglisi is

directly relevant to issues the Court has not yet addressed, and which Variety plainly recognizes

11

are relevant to its claim for disgorgement of profits on an unjust enrichment theory.  Therefore, the Court should deny Variety's motion.

Dated: October 9, 2016

/s/   *Corby C. Anderson*
Corby C. Anderson (NC Bar No. 20829)
Matthew S. DeAntonio (NC Bar No. 39625)
BRADLEY ARANT BOULT CUMMINGS LLP
Bank of America Corporate Center
214 N. Tryon Street, Suite 3700
Charlotte, North Carolina 28202
Telephone: 704-338-6043
Facsimile: 704-338-6073
E-mail: canderson@bradley.com
          mdeantonio@bradley.com

Mark S. Puzella (admitted *pro hac vice*)
R. David Hosp (admitted pro hac vice)
Sheryl K. Garko (admitted *pro hac vice*)
FISH & RICHARDSON, P.C.
One Marina Park Drive
Boston, Massachusetts 02210
Telephone: 617-521-7043
Facsimile: 617-542-8906
E-mail: puzella@fr.com
          hosp@fr.com
          garko@fr.com

Elizabeth E. Brenckman (admitted *pro hac vice*)
FISH & RICHARDSON, P.C.
601 Lexington Avenue, 52nd Flr.
New York, New York 10022
Telephone: 212-641-2305
Facsimile: 212-258-2291
E-mail: brenckman@fr.com

12

Laura L. Chapman (admitted *pro hac vice*)
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: 415-434-9100
Facsimile: 414-434-3947
E-mail: lchapman@sheppardmullin.com

William W. Wilkins (SC Bar No. 6112)
Kirsten E. Small (NC Bar No. 37057)
NEXSEN PRUET
55 E. Camperdown Way
Suite 400
Greenville, South Carolina 29601
Telephone: 864-370-2211
Facsimile: 864-282-1177
E-mail: bwilkins@nexsenpruet.com
        ksmall@nexsenpruet.com

*Attorneys for Defendant*

13

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 9th day of October, 2016

/s/_____Corby C. Anderson_____
Corby C. Anderson (NC Bar No. 20829)