IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


VARIETY STORES, INC.          . CASE NO. 5:14-CV-217-BO
                Plaintiff     . ELIZABETH CITY, NC
                              . JUNE 14, 2016
V.                            .
                              .
WAL-MART STORES, INC.,        .
                Defendant     .
. . . . . . . . . . . . . . . .

                TRANSCRIPT OF STATUS HEARING
            BEFORE THE HONORABLE TERRENCE W. BOYLE
              JUDGE, UNITED STATES DISTRICT COURT


APPEARANCES:

FOR VARIETY STORES, INC.: W. THAD ADAMS, III, ESQUIRE
                          SHUMAKER, LOOP & KENDRICK
                          101 SOUTH TRYON STREET
                          CHARLOTTE, NC  28280-0002

                          SCOTT P. SHAW, ESQUIRE
                          CALL & JENSEN
                          610 NEWPORT CENTER DRIVE
                          NEWPORT BEACH, CA 92660


FOR WAL-MART STORES, INC: MARK PUZELLA, ESQUIRE
                          R. DAVID HOSP, ESQUIRE
                          FISH & RICHARDSON
                          ONE MARINA PARK DRIVE
                          BOSTON, MA  02210-1878

                          KIRSTEN SMALL, ESQUIRE
                          NEXSEN PRUET
                          P.O. DRAWER 10648
                          GREENVILLE, SC  29603




COURT REPORTER:           SANDRA A. GRAHAM, CVR

Proceedings recorded by stenomask, transcript produced from
dictation.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

1    **THE COURT:**  Good afternoon.  I'll hear from the plaintiff
2    first about how to proceed now.  I'm advised by your
3    briefings the dispute is over whether to have an equitable
4    recovery and/or a legal recovery, and whether those are
5    appropriate in combination or whether there's an election
6    and one preempts the other.  We're having this hearing in
7    order to set the stage for the next part of the
8    proceedings, at least that's the way I see it.
9    **MR. ADAMS:**  I understand, Your Honor.  Good afternoon.  My
10   name is Thad Adams representing Variety Wholesalers.  With
11   me is my co-counsel, Mr. Scott Shaw.
12        Your Honor, we believe the most appropriate way to
13   proceed would be to go directly to a non-jury hearing on
14   the equitable remedy of disgorgement of profits for the
15   reasons that we have set out in our memo.
16   **THE COURT:**  Is that a case law developed remedy?
17   **MR. ADAMS:**  It is.
18   **THE COURT:**  It's not a statutory remedy?
19   **MR. ADAMS:**  It's certainly statutory in the sense that the
20   statute itself says that the Court decides the remedy, and
21   it may or may not use a jury.  But the remedy is an
22   equitable remedy, and I can refer Your Honor to a very
23   recent opinion and explain the case by Judge Flanagan that
24   I think spells that out very clearly.  Let me go back for
25   just a moment.  The Summary Judgment Order that Your Honor

1    entered last December 7th resulted from the fact that not
2    only did we file a Motion for Summary Judgment, but Wal-
3    Mart, for reasons satisfactory to itself, chose not to file
4    a motion under 56(d) to take additional discovery or to
5    otherwise delay the hearing based on its need for some
6    further activity.  Instead they turned around and filed
7    their own Motion for Summary Judgment.  So when we had the
8    hearing last fall, Your Honor, may remember that it was not
9    only Variety arguing for its Motion for Summary Judgment,
10   but also Wal-Mart arguing for its Motion for Summary
11   Judgment.  Now why is that important?  In our view it makes
12   it crystal clear that both parties at the time, with
13   relatively minor exceptions, thought that they had the
14   evidence that they needed to prove their side of the case.
15   And so Wal-Mart's arguments were, in effect, mirror images
16   of our argument.  In other words we argued there was
17   likelihood of confusion.  They had a mirror argument that
18   there wasn't.  And they had facts that they thought
19   supported that contention and right on down the line.  Each
20   of the nine categories or points that Your Honor addressed
21   in the Summary Judgment Order were addressed by both
22   parties, and of course Your Honor came down on Variety's
23   side and entered Summary Judgment in our favor.
24        I think what that means is that there really isn't
25   very much left in the way of discovery that would need to

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 3 of 42

1    be had to have a hearing on disgorgement of profits.  Now
2    we have set out in our memo what we think is the accurate
3    and complete law on this particular issue.  The statute is
4    very clear that this is something the Judge does,
5    especially after Summary Judgment has been entered.  Now
6    there could be cases, of course, where there are factual
7    disputes regarding these various issues, and everything is
8    done together.  But that's not what we have here.  We
9    already have a finding by Your Honor that we were entitled
10   to Summary Judgment.  When it gets to the remedy issue then
11   you start talking about the factors which are set out in
12   the <u>Synergistic's</u> opinion.  And <u>Synergistic</u> is frequently
13   cited, Your Honor, by courts all over the Fourth Circuit.
14   It relies on the <u>Banjo's</u> case from the Third Circuit.  And
15   those elements that the Court considers in determining a
16   remedy in most cases clearly correspond to the similar
17   elements that the Court has already decided in ruling on
18   the Motion for Summary Judgment.  It just happens to be the
19   case here that that's what the Court did.  So there really
20   isn't a lot of additional factual material that's necessary
21   to arrive at disgorgement.  The Court has already made
22   findings regarding likelihood of confusion.  The Court has
23   already made findings regarding intent.  In fact, I believe
24   it is fair to say that Your Honor felt that the willfulness
25   that Variety -- I'm sorry -- that Wal-Mart displayed in

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 4 of 42

1  refusing to follow their attorney's advice on two separate
2  occasions and going ahead and using the mark is about the
3  clearest example of willful infringement and raising the
4  possibility of likelihood of confusion that you could
5  possibly have.  So we just don't see in this particular
6  case, since this is a hearing after a Motion for Summary
7  Judgment has been granted, that we really need to have a
8  hearing on profits -- I'm sorry, on damages in the form,
9  for example, of a reasonable royalty first.  There's
10 another reason for that, and that is that there is a series
11 of festering disputes before Judge Swank, some of which
12 have been going on for a year and a half now, virtually all
13 of which relate to the issue of what a reasonable royalty
14 might be.  And I have no idea how much longer those issues
15 are going to be in front of Judge Swank.  So far Wal-Mart
16 has exercised a grotesque degree of contempt for
17 everything, virtually everything that Judge Swank has done.
18 So we now have a series of letters that are before Judge
19 Swank trying to resolve issues that arose a year ago
20 January.  And Wal-Mart has simply told Judge Swank, no,
21 we're not going to do that.  Just by way of one example,
22 way back at the beginning of this case we filed some
23 document requests and a Rule 30(b) -- and a 30(b)6 that
24 required them to produce correspondence relating to other
25 license agreements that they have.  Wal-Mart refused to do

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 5 of 42

1   that, so we filed a Motion to Compel.  We heard the Motion

2   to Compel, and Judge Swank denied our motion but told Wal-

3   Mart I do think it's reasonable for you to allow Variety to

4   have a deposition.  And so there's going to be a deposition

5   of a witness regarding this correspondence and then we can

6   decide whether or not, based on the deposition testimony of

7   this witness, whether or not the correspondence should be

8   produced.

9       What did Wal-Mart do, they just ignored it.  So when I

10  wrote who was then Wal-Mart's counsel, no longer Wal-Mart's

11  counsel, when are you going to comply with this Order, she

12  just wrote back and said, we're not going to; we're not

13  going to provide the witness.  In fact, we'll file a Motion

14  for a Protective order if we have to.  So we came back in

15  January of this year regarding the same issue that we had

16  dealt with in May of 2015.  And the transcript of Judge

17  Swank made it very clear.  It says, I'm very troubled, in

18  fact, that we're here in January and you still haven't

19  complied -- I'm paraphrasing of course -- still haven't

20  complied with the Order I entered requiring you to produce

21  a witness to answer questions regarding this

22  correspondence.

23      So we've been exchanging letters, and as of the 23rd

24  of last month, we had submitted our positions regarding

25  whether or not there ought to be a hearing, a telephone

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 6 of 42

1    hearing or a hearing at all.  The point of this is, Your

2    Honor, that we don't think that that ought to slow up the

3    process.  Most of that relates to the question of whether

4    or not there's a reasonable royalty and, if so, what it

5    would be.  I think we need to simply let that take its own

6    course and move ahead with the hearing on disgorgement of

7    profits.  I just don't think -- I don't want to

8    characterize Wal-Mart's conduct beyond what I've already

9    said, but I just don't think Wal-Mart is interested in

10   moving this case along.  I think it's going to require a

11   judicial nudge to get it done.  For that reason, the

12   easiest way I think and the most straightforward way to

13   resolve this case is to have a disgorgement of profits

14   hearing before the Court.  And while I'm not, at this

15   point, waiving any claims, I think I can represent to the

16   Court that I think it is very likely that after a hearing

17   and a result in the disgorgement of profits side of the

18   case, I think Variety will very likely simply waive at that

19   point its claim for a reasonable royalty.  So I think

20   that's another reason why I don't think it makes sense to

21   bog down this part of the case to await whatever happens in

22   this other part that's still pending before Judge Swank.

23   **THE COURT:**  A few questions if you'll listen and bear with

24   me.  The disgorgement of profits is the profit, not the

25   gross sale, but whatever evidence there is and whatever

1  experts there are as to what profit was realized on the

2  tainted sales, sales that were covered by the trademark?

3  **MR. ADAMS:**  That's right, Your Honor, and under the statute

4  it works very similarly to the way it does in the Copyright

5  Act.  In other words, the only real thing that Variety has

6  to do in the first instance is offer evidence of what Wal-

7  Mart's gross revenue was, in other words, all the revenue

8  they obtained from the sale of the infringing grill.

9  **THE COURT:**  And that was forecast I think earlier as being

10  over *** ******* *** ***** * *******?

11  **MR. ADAMS:**  Yes.

12  **THE COURT:**  It's somewhere in the broad range there, over

13  the period of time?

14  **MR. ADAMS:**  Right.  And that's really statutorily all

15  Variety has to do in this instance.

16  **THE COURT:**  Well, how does the trier of fact come up with

17  the net amount?

18  **MR. ADAMS:**  Well, then the statute goes on to say that it's

19  the duty of the accused infringer, in this case, the

20  determined infringer to prove by a preponderance of the

21  evidence what deductions, if any, are proper.

22  **THE COURT:**  Oh, okay.

23  **MR. ADAMS:**  So it would be Wal-Mart's responsibility, and

24  the burden would be on them to come in, obviously with

25  expert testimony, and they would disclose what revenue they

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 8 of 42

1    had received and the cost of goods and would make that

2    deduction.  You take the cost of goods and the gross

3    revenue together, you end up with what's called gross

4    profit.  It's simply a simple mathematical formula.  Then

5    the experts go to work, and it's usually a matter of

6    dueling experts where one expert will say, well, certain

7    things also should be deducted to arrive at a true profit.

8    **THE COURT:**  So it's a net profit that is the measure of

9    damages?

10   **MR. ADAMS:**  No, it's just a profit.  And there's a

11   discussion -- there's usually a debate about what

12   deductions have to be made from the gross revenue to allow

13   the profit figure.  The statute doesn't speak in terms of

14   gross profit, net profit or anything else.  It just says

15   the profits.  And so the usual way at a trial --

16   **THE COURT:**  So profits is synonymous with proceeds; is that

17   what you're saying?

18   **MR. ADAMS:**  Well, yes, I mean, if you --

19   **THE COURT:**  I mean, it's the gross amount that's received

20   from consumers?

21   **MR. ADAMS:**  Minus the cost of goods.

22   **THE COURT:**  Okay.

23   **MR. ADAMS:**  So, for example --

24   **THE COURT:**  So if the cost of goods is 50 percent and the

25   gross proceeds from consumers is 100 percent, the other 50

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 9 of 42

1  percent would be the profits?

2  **MR. ADAMS:** Exactly. And, as I say, there is usually some

3  discussion about -- along the margins about whether or not

4  a few additional things should or should not be deductible,

5  to account for things like shipping or administrative

6  overhead and so forth, but usually that's the way it

7  proceeds.

8  **THE COURT:** So what about market area? What about the

9  geography of where the profits are measured?

10  **MR. ADAMS:** The courts are pretty much unanimous on the

11  fact that in the case of willful infringement where you're

12  talking about disgorgement of profits, that geography

13  simply doesn't enter into it.

14  **THE COURT:** So if your client -- and I don't know -- I'm

15  just going to take this for the example -- if your client

16  isn't marketing, say, on the West Coast, in Washington,

17  Oregon and California, but Wal-Mart is, and they are

18  selling this line of products and reaping revenue from

19  that, you would still include that in the profits?

20  **MR. ADAMS:** Absolutely. In the case of willful

21  infringement, absolutely. Furthermore, we have a federal

22  registration which protects us throughout the United

23  States. And given the situation something like this could

24  diminish the ability of Variety, for example, to move into

25  an area or if it did it could minimize its sales or

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO  Document 320  Filed 01/11/17  Page 10 of 42

1    whatever.  So that's -- again, that's been, I think, fully
2    briefed.
3    **THE COURT:**  So it's not geographically market presence?
4    **MR. ADAMS:**  It can be in certain circumstances, but not
5    here.
6    **THE COURT:**  But you're not claiming it here -- you're
7    claiming it isn't here?
8    **MR. ADAMS:**  We're claiming it isn't.  We're claiming we're
9    entitled to all of Wal-Mart's profits throughout the United
10   States, wherever our trademark, our federally registered
11   trademark, protects us.
12   **THE COURT:**  Stay right there.  Thank you for your patience.
13   I'm going to try to go through what's on my mind with them,
14   and then I'll give you ample chance to talk.  We'll have a
15   thorough vetting here.
16   **MR. PUZELLA:**  Thank you, Your Honor.
17   **THE COURT:**  If you weren't in the equitable zone of
18   disgorgement but were in damages as a legal matter, what
19   would you be measuring damages as?
20   **MR. ADAMS:**  We think that an appropriate way to measure
21   damages would be a reasonable royalty.  In other words, the
22   case law generally says that, well, in a situation where
23   you don't actually have a license agreement one reasonable
24   way to do this is to essentially create one, in other
25   words, generate a series of assumptions that are reasonable

1    under the circumstances and apply that formula to the

2    circumstances.

3    **THE COURT:**  So in the market that the defendant was

4    competing in for these products that were covered by the

5    mark, what would -- what would add to their price and still

6    make them competitive?  In other words, what would allow

7    them to do it.  I didn't say that right.  Let's say it

8    costs $20 to make an item, or you're going to sell it for

9    $20, but you have to get a royalty because it has somebody

10   else's trademark, so you add $2.00, and you make it $22.00.

11   Does that put you out of the market because somebody is

12   selling on at 21.99, or how do you figure that out?

13   **MR. ADAMS:**  Well, in the real world that might, in fact,

14   happen in which case you wouldn't enter into that licensing

15   agreement because it wouldn't be economically feasible to

16   do so.  In a situation like this and there are cases --

17   there's the Quaker Oats case and a number of other cases,

18   including one in Charlotte that I was involved in where the

19   court dealt with exactly that issue.  But, really, all

20   you're doing, is you're creating sort of a fictional

21   assumption that, well, what would have happened if Wal-Mart

22   had done the right thing.  In other words, instead of

23   infringing the trademark what would the likely result have

24   been if they had simply come to Variety and said, we'd like

25   to -- we'd like a license.  And of course Wal-Mart may not

1     have gotten a license. Variety may have said, well, we

2     don't license our trademark. So the Courts take into

3     account -- I mean, this is an assumption you're making.

4     And I know in a case I was involved in, which was called

5     Clear Blue versus Clear Blue -- it's sort of like Backyard

6     versus Backyard -- Judge Whitney specifically ruled that

7     there didn't have to be any prior negotiations or attempt

8     at licensing between the two parties. But, in essence, in

9     a situation like that there would be an attempt to arrive

10     at a royalty. And that would be applied -- that would be

11     applied to the gross sales. In other words, royalties are

12     almost always applied not to the profits but to the gross

13     revenue. And so whatever percentage the fact finder came

14     up with, that would be the case.

15     **THE COURT:** So it's sort of a moving target. You're using

16     different factors in each of the recovery zones. You're

17     going to have a portion of the gross amount in damages, so

18     it might be ten percent on gross sales or something like

19     that. And the other would be the disgorgement profits.

20     **MR. ADAMS:** Well, another reason why I think that it makes

21     sense to do the disgorgement first is that I think Wal-Mart

22     might would -- Wal-Mart would have an argument that if you

23     did disgorgement first and then you had a separate hearing

24     on reasonable royalty, under some circumstances that might

25     actually involve double accounting. In other words,

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 13 of 42

1    because the royalties would be another expense which would
2    be applied.  So another reason why I think it makes sense
3    to do the disgorgement first, it may eliminate the
4    possibility or need to do a trial on the royalty issue
5    altogether.  But the other reason is that, again, we're
6    tangled up in front of Judge Swank on this whole issue of
7    reasonable royalty.  We've got license agreements that have
8    been produced.  Wal-Mart still hasn't produced the witness
9    that Judge Swank ordered them to produce on its
10   correspondence in January of last year.
11   **THE COURT:**  Do you have to elect between the two
12   recoveries?
13   **MR. ADAMS:**  No.
14   **THE COURT:**  You don't?
15   **MR. ADAMS:**  There's nothing in the statute that requires
16   that.  Again, we may very well do that.  I'm not going to
17   do it here, but, again, depending on how the disgorgement
18   hearing turned out it might not make any sense for Variety
19   to ask for a separate trial on recovery based on a
20   reasonable royalty, in which case we simply at that point
21   would waive it altogether.
22   **THE COURT:**  And this falls into equity for what reason?  Is
23   it well recognized in equity?
24   **MR. ADAMS:**  The statute says it does.  The statute refers
25   to it specifically as an equitable remedy, but it's the

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 14 of 42

1    Court's decision to do this. Again, I can't, off the top

2    of my head, recommend a better place to start but in the

3    <u>Exclaim</u> opinion that Judge Flanagan authored about -- just

4    a few months, maybe a year ago. She really goes into this

5    quite well, and she's relying on an earlier Ninth Circuit

6    case which was exhaustive in its discussion about how this

7    sorts itself out. So I really don't think there's any

8    dispute about the fact that disgorgement of profits is by

9    definition an equitable remedy, and it's for the Court to

10   determine, not a jury.

11   **THE COURT:** Okay.

12   **MR. ADAMS:** Especially where you're dealing with summary

13   judgment and the basic facts in the case have already been

14   determined as a matter of law.

15   **THE COURT:** What would be involved in -- I'm ready, willing

16   and able, if necessary, to go forward. Do you all have a

17   time problem with doing it in the near future?

18   **MR. ADAMS:** No. The only thing I would mention, Your

19   Honor, is in terms of -- in terms of my personal situation

20   we have children and grandchildren living in Germany, and

21   we have a planned vacation trip scheduled between the

22   middle of September and the first week in October.

23   **THE COURT:** I'm thinking of getting to it before that.

24   **MR. ADAMS:** That would be fine. As long as we're done by

25   sometime in early September, we're ready to go.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 15 of 42

1   **THE COURT:**  Well, it wouldn't take that long.

2   **MR. ADAMS:**  No.  Again, I think that's the other advantage

3   of doing this first.  The procedures will be relatively

4   truncated and straightforward.  Without a jury the hearing

5   is going to last about half as long as it would otherwise,

6   and I think that certainly makes a lot of sense from the

7   plaintiff's standpoint.

8   **THE COURT:**  All right.  Anything else?

9   **MR. ADAMS:**  No, Your Honor.

10  **THE COURT:**  Okay.  Thank you.

11  **MR. ADAMS:**  Thank you.

12  **THE COURT:**  I'll hear from the defendant.

13  **MR. PUZELLA:**  Good afternoon, Your Honor, Mark Puzella from

14  Fish & Richardson on behalf of Wal-Mart.  With me is my

15  colleague David Hosp with Fish & Richardson and our local

16  counsel, Kirsten Small from Nexsen Pruet.

17  **THE COURT:**  Okay.  Thank you.

18  **MR. PUZELLA:**  Would you like me to begin by addressing the

19  Court's questions?

20  **THE COURT:**  Well, I think what you're faced with now -- I

21  mean I know you want to go to the Court of Appeals, but I'm

22  not going to certify it until it's over and then I don't

23  have to certify it; it will be ready to go.  I'm going to -

24  - I'm thinking about having this hearing on the

25  disgorgement of profits as an equitable remedy and doing it

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 16 of 42

1    as soon as I can or as soon as you can, not I can.  I can
2    do it tomorrow.  So that's where we're going.  I see the
3    hierarchy as being the disgorgement equitable hearing and
4    then based on the outcome of that decide what's left, if
5    anything, in the case.
6        **MR. PUZELLA:**  If I may respond to some of the questions
7    that were posed to Variety, the question of whether a
8    request for unjust enrichment damages is equitable or legal
9    such that there should be a non-jury or jury determination
10   is not clear cut.
11       **THE COURT:**  Is not what?
12       **MR. PUZELLA:**  Is not clear cut, contrary to Variety's
13   position.  There's a Supreme Court case called <u>Dairy Queen</u>
14   where the Court considered a Complaint that had both breach
15   of contract and trademark infringement claims in it.  It
16   was essentially a franchise agreement where the defendant
17   continued to use post the expiration of the franchise
18   agreement, so there were claims at law, and there were
19   arguably claims in equity under the Trademark Act, as the
20   plaintiff suggests here.  The Court in that case said that
21   no matter whether it's construed as a complaint at law or a
22   complaint at equity, the defendant is entitled to a jury
23   because the nature of unjust enrichment damages in a
24   trademark case is such that it's a legal remedy.  Because
25   the nature of 15 U.S.C. 1117, which is the statute that

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 17 of 42

1    gives us the damages for an illegal trademark is such that
2    it's a burden shifting, that the plaintiff's entitlement to
3    the defendant's profits is really by way of a proxy for
4    actual damages.  That's the nature of the entitlement under
5    the statute.  So where those damages are a proxy for actual
6    damages, you're entitled to a jury.  So here in various
7    places in the papers, and we identified it in our briefs,
8    the plaintiff has claimed that its damages in this case are
9    a proxy for its own losses.  Where that is the case, the
10   defendant is entitled to a jury.
11       So what's even more interesting about this is
12   plaintiff is very keen about the idea that the equitable
13   balancing that the Court can apply after the jury returns a
14   verdict is governed by a Fourth Circuit case called
15   Synergistic.  And there's a multi-factor test that the
16   Court can use to adjust the determination up or down.  One
17   of those factors that the Fourth Circuit gives us is the
18   question of whether sales have been diverted from plaintiff
19   to defendant.  So one of the factors that the Court has to
20   consider in this later equitable balancing is the question
21   of whether sales have been diverted, the question of actual
22   damages.  That is a legal damage.  That is a determination
23   that needs to be made by a jury.  So no matter the concept
24   or the characterization of the -- or the label that the
25   plaintiff puts on their claim for relief, the elements that

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 18 of 42

1    the Court has to consider in its equitable balancing are

2    elements that have to be first determined by a jury.

3    Because without a jury we can't determine the degree to

4    which Variety has been actually damaged, as compared to

5    whether Wal-Mart has been unjustly enriched.

6        So the case law is not at all as clear as plaintiff

7    would suggest.  And as we set forth in our papers, we think

8    the case law comes out the other way.  And another factor

9    that is required by the <u>Synergistic</u> case that the Fourth

10   Circuit gives us is the question of whether other remedies

11   are adequate.  So taking plaintiff in their position as

12   true, we'll have a determination on royalty later.  Well,

13   how then can the Court determine whether that other remedy

14   is adequate in its equitable balancing if there's been no

15   determination by the jury as to whether a royalty is

16   appropriate and in what amount.  So the <u>Synergistic</u> case

17   brings together the legal and the equitable claims in a way

18   that really instructs us that the best practice is to do

19   this all at once.

20   **THE COURT:**  Is injunction a factor in the remedies?

21   **\*\* \*\*\*\*\*\*\*:**  \*\*\*\*\*\*\*\*\*\* \*\*\*\*\* \*\* \* \*\*\*\*\*\* \*\* \*\*\* \*\*\*\*\*\*\*\*

22   \*\*\*\*\* \*\*\* \*\*\* \*\* \*\*\*\* \*\*\*\*\*\*\*\*\* \*\*\*\*.

23   **THE COURT:**  There's no injunctive relief sought?

24   **MR. PUZELLA:**  There is.  May I have a moment, Your Honor?

25        (Mr. Puzella confers with Mr. Adams.)

```
1    ******************************************************************

2    ******************************************************************

3    ******************************************************************

4    ******************************************************************

5    *****************************

6    *************************************

7    *******************

8    *******************

9    ********************

10   ******************************************************************

11   ******************************************************************

12   ******************************************************************

13   ******************************************************************

14   *******.
```

15   **THE COURT:**  Well, at least I'm consistent, whether I

16   remember it or not.

17   MR. ADAMS:  ************************************************

```
18   ******************************************************************

19   ******************************************************************

20   ******************************************************************

21   ******************************************************************

22   ******************************************************************

23   ******************************************************************

24   ******************************************************************

25   ******************************************************************
```

1    ****************************************************************

2    ****************************************************************

3    ****************************************************************

4    ****************************************************************

5    ****************************************************************

6    ****************************************************************

7    ****************************************************************

8    **THE COURT:**  No, injunction -- well, there may be a trial

9    but not a jury.

10   **MR. ADAMS:**  No, of course not.  But, still, there would

11   have been a hearing, and Wal-Mart, of course, would oppose

12   an injunction.  There would have been an argument about the

13   amount of money and whatever happened Wal-Mart would

14   appeal.

15   **THE COURT:**  But the injunction is usually the paramount

16   goal of these.  I had a much litigated case that you don't

17   have to care about, but <u>Georgia Pacific versus Von Drehle</u>

18   over the --

19   **MR. ADAMS:**  I'm very familiar with it, over paper towel

20   rolls.

21   **THE COURT:**  Wave your hands on the towels.  And, gosh, they

22   were more into the injunction than they were anything else.

23   **MR. ADAMS:**  ****************************************************

24   ****************************************************************

25   ****************************************************************

1  ************************************************************

2  ************************************************************

3  ************************************************************

4  ************************************************************

5  *****************

6  **THE COURT:**  No, I was -- you know, full disclosure of a

7  judge's mind, I was just speculating that certainly

8  injunction is a core equitable remedy and it's a behavioral

9  remedy, not necessarily a financial remedy, but it suggests

10  a fact that you're deeply into equity, and other financial

11  remedies could arise at the same time.

12  **MR. ADAMS:**  *******************************************

13  ************************************************************

14  ************************************************************

15  ************************************************************

16  ************************************************************

17  **THE COURT:**  Well, I'm sorry to interrupt you.  You can

18  resume where you were.  I just wanted to clear that up.

19  **MR. PUZELLA:**  So the Court's question was, might an

20  injunction be a component of another remedy in which the

21  Court has to consider its adequacy.  *******************

22  ************************************************************

23  ************************************************************

24  ************************************************************

25  ************************************************************

23

1    *****************************************************************

2    *****************************************************************

3    *****************************************************************

4    *****************************************************************

5    *****************************************************************

6    *****************************************************************

7    *****************************************************************

8    *****************************************************************

9    *****************************************************************

10   *****************************************************************

11   *****************************************************************

12   *****************************************************************

13   *****************************************************************

14   *****************************************************************

15   *****************************************************************

16   *****************************************************************

17   *****************************************************************

18   *****************************************************************

19   *****************************************************************

20   *****************************************************************

21   *****************************************************************

22   *****************************************************************

23   *****************************************************************

24   *****************************************************************

25   *****************************************************************

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 23 of 42

1  ***************************************************************

2  ***************************************************************

3  ***************************************************************

4  ***************************************************************

5  ***************************************************************

6  ***************************************************************

7  ***************************************************************

8  ***************************************************************

9  **THE COURT:**  Okay.

10  **MR. PUZELLA:**  So considering whether the remedy is adequate

11  or the adequacy of these other remedies, in the <u>Synergistic</u>

12  case it says one of the things the Court ought to consider

13  is this other demand for damages, namely a reasonable

14  royalty.  So the point is that if that determination is put

15  off for a later time, the Court's hands will be tied on

16  that factor, because the Court won't be able to assess the

17  adequacy of another rememdy because it hasn't come in yet,

18  which is why the better practice is to have all of these

19  issues presented to a jury, which the statute allows.  15

20  U.S.C. 1117 allows the presentation to a jury.  And, in

21  fact, if I may approach, there is a federal pattern jury

22  instruction on this very topic.  May I approach?

23       (Hands up document to the Court.)

24       And I think this answers several of the Court's

25  questions.  So the jury instruction reads:  "In addition to

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 24 of 42

actual damages, plaintiff is entitled to any profits earned
by the defendant that are attributable to the infringement.
However, you may not include in any award of profits any
amount that you included in determining actual damages.
Meaning that there ought to be a set off between actual
damages here, unreasonable royalty, that plaintiff wants to
put off for another day, and profits. If we put it off for
another day, we can't have that set off. Expenses and then
it describes how it is the defendant has to prepare
expenses and prove its case. And then finally -- this is
an element that plaintiff omitted from what needs to occur
during the hearing -- and that is unless you find that a
portion of the profit from the sale of goods using the
trademark is attributable to factors other than the use of
the trademark, you must find that the total profit is
attributable to the infringement.

So what that means is that under the burden shifting
of 15 U.S.C. 1117 on lost profits, the defendant, Wal-Mart,
has the opportunity to disprove causation. So the
defendant can show that the use of the mark is not tied to
the sales of the product, that the consumers who went to
Wal-Mart to purchase grills purchased grills from Wal-Mart,
not because of the name but because of the price, because
of the warranty, because of the product specifications,
because of its color, whatever. So there is an opportunity

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 25 of 42

1    for the defendant --

2    **THE COURT:**  That's a back door way of invalidating the

3    trademark.  I mean, that was part of the argument on

4    summary judgment.

5    **MR. PUZELLA:**  It's not, Your Honor, because it's often the

6    case that you can get a finding of infringement but no

7    entitlement to the defendant's profits.

8    **THE COURT:**  But that cuts against the undisputed facts that

9    the Court found in the Summary Judgment Order.  If I

10   recall, the Order clearly says that it was the mark that

11   was confusing and that people didn't buy the product

12   because of the price or because of the availability and

13   that sort of thing.

14   **MR. PUZELLA:**  What the Summary Judgment decision finds is

15   that there is a likelihood of confusion between Variety's

16   goods on the one hand and Wal-Mart's goods on the other.

17   That doesn't tell us that all of the sales made by Wal-Mart

18   are attributable to the use of the mark.  It may be some

19   portion, and there's a portion of people who perhaps --

20   **THE COURT:**  But if the mark is valid and enforceable, and

21   it's on everything, the fact that a blind man goes in and

22   says, sell me a grill; here's $20, doesn't obviate the

23   strength of the mark.

24   **MR. PUZELLA:**  It doesn't obviate the strength of the mark,

25   but the question of whether a mark is strong for purposes

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 26 of 42

1    of likelihood of confusion is not the same as whether a
2    mark is a motivator in a purchasing decision, and that's
3    the question that has to be addressed in the damages phase.
4    There can be infringement, there can be grounds for an
5    injunction, but there may not be grounds for the entirety
6    of lost profits.  The defendant is entitled to show that
7    some portion of the sales were not attributable to the use
8    of the mark.
9        For example, plaintiff in its presentation suggested
10   on a question about geographic scope, that it is entitled
11   to damages in those areas where it doesn't engage in sales,
12   let's say, California.  Wal-Mart sells in California.  A
13   California consumer has never been exposed to Variety's
14   mark.  They don't sell there.  So there can be no occasion
15   for the sales that Wal-Mart made in California to be unjust
16   enrichment, because none of those sales are as a
17   consequence of using the mark.  All of those sales were for
18   other reasons.
19   **THE COURT:**  But the mark is still a protected mark.  I
20   mean, years ago -- how many years ago -- 50 years ago,
21   Coors beer didn't sell on the East Coast because they made
22   it all in Golden and they didn't want to discredit the
23   quality of the product that was under certain conditions.
24   So suppose a guy in New York City started labeling and
25   selling Coors beer you think they wouldn't have stopped

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 27 of 42

1    them?

2    **MR. PUZELLA:**  They may have been able to get an injunction,

3    Your Honor.  I'm not quibbling with that.  I'm talking

4    about the degree in which the plaintiff is entitled to

5    disgorge the defendant's profits without some sort of

6    showing that those profits are tied to the use of the mark.

7    If it is the case that there are consumers who purchased

8    the product for reasons other than the presence of the

9    mark, those are not -- those are not profits that were

10   unjustly acquired.  The unjust enrichment test is not

11   premised on mere use; it's premised on whether the mark was

12   the motivating principle for the purchase.

13        So if I could turn to some of the Court's other

14   questions, one of the issues that Variety suggested was

15   that consideration of a royalty may present issues of

16   double accounting.  That's exactly right.  If you have a

17   royalty determination, the royalty is an expense, and that

18   expense has to come out of a calculation of profits.  So

19   that's another reason why these two types of damages ought

20   to be determined in a single event, because they are offset

21   and one is related to the other.  And along those lines,

22   there are factual questions that are in the royalty

23   determination that are also in the unjust enrichment

24   determination.  A moment ago I was discussing this concept

25   that under unjust enrichment, as it is stated in the

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 28 of 42

1    pattern jury instruction, the plaintiff is only entitled to

2    those portions of the profit that are attributable to the

3    use of the mark.

4        When looking at the royalty figure issue, in figuring

5    out what an appropriate royalty figure is, you have to

6    determine the value of the trademark, because you are

7    trying to invent a negotiation between the parties, and a

8    factor in those negotiations is to what degree is my use of

9    your mark going to aid me in making sales.

10    **THE COURT:** Right.

11    **MR. PUZELLA:** Right. So the question of determining a

12    reasonable royalty is inextricably intertwined --

13    **THE COURT:** With the market.

14    **MR. PUZELLA:** With some --

15    **THE COURT:** With the market, what the market will tolerate.

16    **MR. PUZELLA:** It is. And it also --

17    **THE COURT:** Say this is a $20 grill, give me $20 and a

18    license fee. Now it's a $40 grill. Well, all the $22

19    grills are going to be sold first.

20    **MR. PUZELLA:** That may be the case in the real world, that

21    may be. But my point is that reasonable royalty and its

22    determination is inextricably intertwined with trying to

23    determine the proper amount for unjust enrichment, which

24    plaintiff contends is equitable. Assuming that's correct,

25    that means that there are common facts to be determined

1    when looking at a reasonable royalty and unjust enrichment.

2    And where there are common facts, the case law tells us,

3    that those two determinations should be simultaneous or at

4    the very least the legal determination should not come

5    after the equitable determination.

6        So the last point I want us to make concerns the

7    degree to which plaintiff believes that a royalty

8    consideration will delay matters, we have a different view

9    of the facts.  And we're happy to brief this if you would

10   like, but the only royalty related correspondence that

11   plaintiff contends has been subject to dispute with Judge

12   Swank, it's completely been produced, and has been I think

13   more than a month where Wal-Mart has indicated that its

14   witnesses on those topics are available for deposition, and

15   the plaintiff has not taken us up on that offer.  So there

16   are no royalty based disputes before Judge Swank.  There

17   are some disputes before Judge Swank, but they don't relate

18   to these royalty issues, so there's really no opportunity

19   for these royalty issues to cause the belief that it is

20   going to delay matters and we ought to just get on with the

21   unjust enrichment portion.

22       So our position, Your Honor, as set forth more fully

23   in our briefs, is that it's the most proper course for

24   unjust enrichment to be considered as a legal remedy.  Its

25   underlying purpose is to address legal damages.  By its

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 30 of 42

1   nature it's inextricably intertwined with the royalty
2   request, and there are various elements within the
3   _Synergistic_ factors that the Court is to consider that
4   simply cannot be accomplished in a non-jury setting.
5       Unless the Court has any questions.
6   **THE COURT:**  No.  I thank you for your position.
7   **MR. PUZELLA:**  May I comment on the timing that plaintiff
8   suggested?
9   **THE COURT:**  Sure, as I reach for my calendar.
10  **MR. PUZELLA:**   I think it is agreed between the parties
11  that there is at a minimum a need for some additional
12  discovery.  The parties submitted a joint report.
13  Expert discovery, Your Honor.  We haven't taken the
14  deposition of plaintiff's expert witness.  The parties
15  submitted a joint report to Magistrate Swank, following
16  your Order, in January in which the parties agreed, each
17  party will produce for deposition anyone that it intends to
18  testify at trial who has not been deposed previously.  We
19  have offered those people, and plaintiff has not taken the
20  opportunity to take those depositions.  There are
21  depositions of Variety that we would like to take, that we
22  requested that have been refused.  And, second, the parties
23  submitted to Judge Swank: Wal-Mart will issue a subpoena
24  for the deposition of plaintiff's damages expert, Dr.
25  Poindexter of Florida, which will be taken after (a) Wal-

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 31 of 42

1  Mart provides supplemental sales and cost data to

2  plaintiff.  That has been accomplished; (b), Dr. Poindexter

3  supplements his reports.  That hasn't happened yet.  We're

4  waiting on supplementation from plaintiff.  And, (c), Mr.

5  Rogers, the defendant's expert, supplements his damages

6  report.  That hasn't happened because we haven't had the

7  supplementation.  And then thereafter the parties are going

8  to take the depositions of each side's experts, which

9  hasn't happened because the supplementation hasn't taken

10  place.  So in the plaintiff's own brief requesting a non-

11  jury hearing, they indicate that a discovery period to

12  assess these issues is necessary.  I believe it was 30 to

13  45 days.  So I think that brings us given --

14  **THE COURT:**  Having magistrates creates a false sense of

15  security, because you get engaged with what they do and it

16  really doesn't trickle up.  If you were -- if there were no

17  magistrates and all of this discovery stuff just had to

18  land on me, we wouldn't be talking about it.

19  **MR. PUZELLA:**  Understood, Your Honor, but nonetheless we

20  presented agreed positions to the magistrate that were

21  necessary to resolve pending motions.

22  **THE COURT:**  I know, but I need to be efficient with the use

23  of the Court's time, my time, the trial judge's time.  I'm

24  looking at August 15th as the trial date.

25  **MR. PUZELLA:**  And before that -- assuming that would be the

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 32 of 42

1    case, Your Honor, before that time will the parties be

2    entitled to engage in discovery that has been previously

3    agreed?

4    **THE COURT:** I mean, it's up to you. I would tell you to

5    just get ready for trial. If it's a non-jury trial, that's

6    the way it'll be.

7    **MR. PUZELLA:** So --

8    **MR. ADAMS:** Your Honor, we'll work something out with Wal-

9    Mart's counsel. They will have every opportunity to do

10   what they need to do.

11   **THE COURT:** I'll give you a trial date now of August 15th

12   for a non-jury trial on the equity.

13   **MR. PUZELLA:** Well, Your Honor, it's Wal-Mart's position

14   that there is more discovery to be done, some of which is

15   subject to a court order from the magistrate.

16   **THE COURT:** Yeah, but the magistrate doesn't order me

17   around.

18   **MR. PUZELLA:** Understood, but the magistrate ordered the

19   parties to engage in 30(b)6 depositions related to motions

20   to compel.

21   **THE COURT:** I can vacate that. I just did that the other

22   day in another case that we ended up trying, because that's

23   the efficient use of the court's time. I mean, I'm here,

24   I'm ready to go and I just see that as imperative. I'm not

25   trying to do anything but be candid with you. So I'll do

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO  Document 320  Filed 01/11/17  Page 33 of 42

1    an order to that effect, that we'll set the case for trial

2    the week of August 15th.  Now if something comes up that's

3    irreconcilable, let me know, but that's where we go from

4    here.  It's not going to take that long.  I mean if you

5    marshal your evidence and put it on, I'll be the one to

6    decide.

7    **MR. PUZELLA:**  Your Honor, the rule is that the defendants

8    are entitled to present at this non-jury trial, we have a

9    motion pending concerning some witnesses that we disclosed

10   pursuant to the magistrate's order who we offered for

11   deposition by the plaintiff, and the plaintiff has moved to

12   exclude them despite us identifying them in response to the

13   magistrate's order.  I understand the court's order and

14   what the court intends to do, but from the parties' point

15   of view there are pending motions on who are appropriate

16   witnesses.

17   **THE COURT:**  Yeah.  Well, why don't you have a conference

18   and come up with some solutions.  Here's the problem that I

19   see.  You know, I'm the referee.  I've got time.  And

20   things go fast, okay, for whatever reason; they move fast.

21   And you've got a lot of money at stake here.  *************

22   ******* *******.  It's, you know, I don't know what, maybe

23   a number significantly --

24   **MR. PUZELLA:**  A lot.

25   **THE COURT:**  A lot.  A lot is a lot.  And no one wants to be

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 34 of 42

1    in an awkward position with their client involving that,

2    because there will be scrutiny, probably.  And so without

3    trying to be difficult, I'm telling you that I'm going to

4    do a non-jury trial, you're going to get an outcome.  You

5    may go to the Court of Appeals with that.  I see that as

6    highly efficient in the administration of justice.  Work

7    around that and if you've got some real problems, I'm not

8    unsympathetic.  But that's where we -- and as far as -- I'm

9    sorry that you got entangled with a magistrate.  If you had

10   a good playbook on my practice and my history, you would

11   see that that's not a fruitful tack.  I don't use them, I

12   don't send things to them.  The court clerk does, but I

13   don't.  I don't talk to them.  So you get enveloped with a

14   magistrate and you have all this busy work and all this

15   time consumed and then you find out it was for nothing.

16   **MR. PUZELLA:**  In this case, Your Honor, the result of that

17   would be the parties' agreements in connection with that.

18   And it changes expectations.

19   **THE COURT:**  If you had a good playbook on what to expect in

20   this court, which 32 years you can figure out a few things,

21   you would not be shocked to find out that I never followed

22   a magistrate down the trail, ever.  And I don't send things

23   to them.  I mean, they're terrific, they're nice people,

24   but they don't do me any good.  I'm going to do it myself.

25   **MR. PUZELLA:**  So how is it that the Court suggests that we

1    get some clarity on what witnesses are permissible in

2    anticipation of trial?

3    **THE COURT:**  Either agree on it or bring it to my attention,

4    and you'll get a summary ruling without coming back and

5    doing this again.

6    **MR. PUZELLA:**  We have some pending motions on those topics,

7    Your Honor.

8    **MR. ADAMS:**  Let me just very briefly.  Recently Wal-Mart

9    submitted what I refer to as a terminal disclosure.  They

10    call it an initial disclosure, but six months after

11    discovery ended they tendered a long list of Wal-Mart

12    employees that had not previously been identified to us

13    during discovery indicating they were going to come to

14    trial.  And one of the things they are going to testify

15    about was the lack of bad faith and willfulness that they

16    claim they exercised during the selection of the Backyard

17    mark.  I'm not joking about this.  We had a hearing before

18    Judge Swank who ruled that Wal-Mart had not waived its

19    attorney/client privilege regarding communications between

20    its lawyers and its employees regarding use or non use of

21    the Backyard mark.  And part of the reason that she did

22    that was, Wal-Mart made the statement in writing that they

23    did not intend to offer any evidence whatever at trial

24    regarding this issue, testimony or conversations back and

25    forth between the Wal-Mart employees and attorneys.  What

1    happened as soon as the ink was dry on that order, we get

2    this new initial disclosure, and some of the things they

3    specifically say they are going to talk about are the

4    trademark clearances and advice and so forth going back and

5    forth between them.  That prompted us to file a motion in

6    limine.  Your Honor can rule on that one way or the other

7    very quickly, but in the absence of that is that Wal-Mart

8    is perfectly free to bring any and all of those witnesses

9    they want to to trial and we can object and Your Honor can

10    rule on their admissibility or their right to testify then.

11    Those are two options that we have, which would not at all

12    cause us to miss this date that Your Honor has set.  We are

13    fully prepared to meet that date, whether Wal-Mart is or

14    not.

15    **THE COURT:**  Yeah.

16    **MR. PUZELLA:**  Your Honor, if that is a genuine offer, we

17    are prepared to bring all the witnesses that we've

18    identified to the Court's hearing, and we can take it on a

19    rolling basis on objections, and we will do our best in

20    anticipation of the Court's time to come to an agreement in

21    advance as to any obvious disputes.  But we can avoid a

22    ruling on that motion and have the parties just bring the

23    witnesses they think are appropriate, deal with the

24    objections as they come and then perhaps beforehand we can

25    come to some compromise.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 37 of 42

1    **THE COURT:**  Just my intuition is that this case will not

2    settle because there's too much involved and each side

3    feels that they have leverage.  And then, you know, you're

4    going to have a more finalized outcome when you get a final

5    order, a verdict, in the case.  And then that creates a --

6    I mean I don't know how realistic you all are, as lawyers

7    with this, but then you go to the Fourth Circuit, right?

8    And then what happens?  Hum, who knows, you know.  And if

9    you have a bad result and you go there and you don't get

10   any traction, for lack of a better term.  I'm trying to be

11   as circumspect as I can be with my language.

12   **MR. PUZELLA:**  I hear you loud and clear, Your Honor.

13   **THE COURT:**   If you don't get any traction, then, whoa,

14   what in the world are we going to do with a -- what is it,

15   ***********************************.

16   **MR. PUZELLA:**  Well, Wal-Mart clearly thinks it's zero

17   because none of its sales are attributable to the use of

18   the mark.

19   **THE COURT:**  Yeah, yeah, but if you go that dare and you get

20   a per curiam that says, I don't see anything wrong with

21   this or words to that effect, and it's ************, then,

22   whoa, how did we get into this situation.  So it's good to

23   look -- sometimes in law to look backwards from the worst

24   thing that can happen to the present, not forwards,

25   necessarily.  And, like I say, I'm willing to be agreeable

1    on your circumstances.  If you can work out a lot of it
2    together, that will be good.
3        **MR. PUZELLA:**  Just so I understand, because this is going
4    to come quickly.  I just don't what there to be any
5    ambiguity after the fact.  It's the Court's intention that
6    Wal-Mart and Variety are entitled to bring to trial the
7    witnesses that they have disclosed as to this point,
8    subject to objections at the time of trial, and the parties
9    will endeavor to --
10   **THE COURT:**  Yeah, I'm going to listen to the witnesses, and
11   if I don't think they're telling me anything I'll say,
12   thank you very much, delighted you're here, next witness.
13       **MR. PUZELLA:**  Excellent.  Just two more questions, Your
14   Honor.
15   **THE COURT:**  You can have more questions.
16       **MR. PUZELLA:**  As it relates to supplementation of the
17   parties' expert reports, I understand the Court to say that
18   our request for depositions is not going to be allowed,
19   despite the magistrate and the agreement and so forth?
20   **THE COURT:**  Well, you can have the depositions if you want
21   to do it, but I'm not going to slow you down right now with
22   six months of depositions or something.  I want to try this
23   case before the fall.
24       **MR. PUZELLA:**  Excellent.  That being the case, could we
25   perhaps have a date for the supplementation of the expert

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 39 of 42

1    reports, to just facilitate the parties scheduling of those

2    depositions?

3    **THE COURT:**  Well, I want you to be good neighbors and good

4    friends and I want you to work it out.

5    **MR. PUZELLA:**  Excellent.  Then my last question, Your

6    Honor, my co-counsel I think has a conflict.

7    **MR. HOSP:**  Yes, Your Honor, David Hosp.  I'm just

8    wondering, and if we can't, we can't, if there is anyway we

9    can do the next week in August it would make my family life

10   significantly better.  And if we can't I understand that,

11   too.  Obviously the Court's time is exceptionally

12   important, and I will work it out one way or another.

13   **THE COURT:**  Okay.  I'll take a look at that and see if that

14   works, but right now it's the 15th.  I thought that would

15   be a better time, but it could be the 22nd.

16   **MR. HOSP:**  Thank you, Your Honor.

17   **THE COURT:**  The case will try in a couple of days.

18   **MR. PUZELLA:**  Our view, Your Honor, is it's --

19   **THE COURT:**  Don't use the word weeks.

20   **MR. PUZELLA:**  No, no.  Four days, at the outside.

21   **THE COURT:**  Okay.

22   **MR. SHAW:**  Just for housekeeping matters, Scott Shaw, for

23   the plaintiff, we have looked at some of your prior cases

24   and the local rules and your standing orders.  As far as

25   preparation of a pretrial order, are you going to set a

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 40 of 42

1    pretrial conference, for example, a week prior to that?

2    **THE COURT:**  The only thing I look at in the pretrial order

3    is the thing at the last line, the parties estimate number

4    of days for trial.  So you can -- you can have a pretrial

5    order.  I would be reluctant to send it to a magistrate.

6    Just send it here.  Work it out and send it here.

7    **MR. PUZELLA:**  I will now that I know, Your Honor, that's my

8    preference as well.

9    **MR. SHAW:**  I just know some of the dates in the local rules

10   track back from the date of the pretrial.

11   **THE COURT:**  I'm horrible obedient to the rules, so -- I

12   think we're in good shape on this.

13   **MR. PUZELLA:**  So no pretrial order?

14   **THE COURT:**  What?

15   **MR. PUZELLA:**  So no pretrial order?

16   **THE COURT:**  You can do one and, you know, put a day and a

17   half on the last line above the signatures.

18       Okay.  Well, thank you for coming here today.  I don't

19   know if it did any good, but we're at least moving ahead.

20   **MR. ADAMS:**  Thank you, Your Honor.

21   **MR. PUZELLA:**  Thank you, Your Honor.

22   **THE COURT:**  We're in recess.

23

24

25

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:14-cv-00217-BO   Document 320   Filed 01/11/17   Page 41 of 42

STATE OF NORTH CAROLINA        )
                               ) C-E-R-T-I-F-I-C-A-T-I-O-N
COUNTY OF PERQUIMANS           )


       I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.



*Sandra A. Graham, CVR-M* _____      *6/17/2016* _____
Sandra A. Graham, CVR-M        June 17, 2016
Court Reporter & Notary Public
Notary Public Number:  19940140086

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646        sgrahamassoc@gmail.com