IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-217-BO

| | |
|---|---|
| VARIETY STORES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| WAL-MART STORES, INC., ) | |
| ) | |
| Defendant. ) | |

This cause comes before the Court on plaintiff's motion for a pretrial conference and trial setting. [DE 318]. The matter has been fully briefed and is ripe for disposition. For the reasons discussed below, plaintiff's motion is denied and final judgment is entered in this case.

## BACKGROUND

The Court incorporates by reference as if fully set forth herein the factual and procedural background included in its order granting partial summary judgment. [DE 149].

On December 8, 2015, the Court granted Variety Stores, Inc.'s (hereinafter "Variety") partial summary judgment in its favor on its claim for trademark infringement and unfair competition under federal law and trademark infringement and unfair and deceptive practices under state law. [DE 149]. In its order, the Court found that Variety owns a protectable interest in the BACKYARD marks and that Wal-Mart Stores, Inc.'s (hereinafter Walmart) competing use created a likelihood of confusion. *Id.*

Subsequently, Variety moved for a bench trial focused on an accounting and disgorgement of profits which is an equitable remedy not necessitating a jury trial. [DE 157]. The Court granted this motion, [DE 211], and an evidentiary bench trial on these issues was held on October 11 and 12, 2016. The Court, in a written order issued on November 22, 2016, found

that Walmart's sales of infringing products during the relevant time period in the states where Variety and Walmart both operated totaled $395,316,314.71, that Walmart proved appropriate costs to be deducted in the amount of $362,794,643.31, and therefore found that profit in the amount of $32,521,671.40 could be attributed to sales of the infringing mark. [DE 316]. After considering several equitable factors the Court determined, in its discretion, that the profit figure derived above was a just award to plaintiff in these circumstances and ordered that Walmart disgorge the amount to Variety. *Id.*

Then, on December 21, 2016, Variety filed the instant motion requesting that the Court set a date for a jury trial on the issue of damages, arguing that the Lanham Act allows it to recover damages in addition to an equitable disgorgement of profits and that it reserved its right to such a jury trial on damages. [DE 318]. Walmart responded in opposition, [DE 321], Variety filed a reply, [DE 328], and the Court's written opinion now follows.

## DISCUSSION

In this action, Variety asserted claims against Walmart under the Lanham Act, 15 U.S.C. § 1114, 15 U.S.C. § 1125, North Carolina trademark law, N.C. Gen. Stat. § 80-11, at common law, and the North Carolina Unfair and Deceptive Trade Practices Act, N.C Gen. Stat. § 75-1.1 *et seq*. Following its order on plaintiff's motion for partial summary judgment, in which the Court found Walmart liable for trademark infringement, the Court made an equitable determination of recovery on behalf of the plaintiff. The Court must now consider whether, in addition to its equitable award, Variety is also entitled to a jury trial on actual damages.

The Lanham Act states in relevant part:

> When a violation of any right of the registrant of a mark . . . shall have been established . . . the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or

cause the same to be assessed under its direction . . . In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a). In *Synergistic Intern., LLC v. Korman*, the Fourth Circuit set forth the following six factors for a court to weigh equitably when determining whether monetary relief under the Lanham Act, 15 U.S.C. § 1117(a), is appropriate, and if so, the amount thereof:

(1) whether the defendant had the intent to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable; and (6) and whether this is a case of palming off.

470 F.3d 162, 175–76 (4th Cir. 2006). A court may also consider other factors "that may be relevant in the circumstances," *id.* at 176, and "the court has broad discretion to award any monetary relief necessary to serve the interests of justice." *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir. 1991).

The Lanham Act expressly notes that any award to a prevailing plaintiff shall be "subject to the principles of equity." 15 U.S.C. § 1117(a). Thus, the Lanham Act envisions a role for equitable discretion, and the Fourth Circuit has made clear the equitable factors that shall be considered by the Court when determining an appropriate award. *Synergistic*, 470 F.3d at 175–76. Additionally, the Lanham Act also forbids the use of any award as a way to punish an infringer. 15 U.S.C. § 1117(a) ("such sum . . . shall constitute compensation and not a penalty."). In addition, the Fourth Circuit's holding in *Synergistic* required the Court to consider "the adequacy of other remedies" in weighing the equities to rule on disgorgement of profits. 470 F.3d at 175.

In determining the amount of the disgorgement award, the Court recognized its obligation "to ensure that the award does not amount to a windfall to Variety, but constitutes only the compensation due to it." [DE 149 at 14]. The Court also considered the effect of Variety's demand for other an injunction and damages, and considered such equitable factors as unjust enrichment and deterrence in weighing the equities. [DE 149]; see *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir. 1994) ("Where the defendant's infringement is deliberate and willful, as in this case, an accounting for profits is proper under a theory of unjust enrichment.") (citing *Maltina Corp. v. Cawy Bottling Co. Inc.*, 613 F.2d 582, 585 (5th Cir.1980)). Therefore, in considering the equitable factors set out in *Synergistic* and mindful that any award under the Lanham Act should be compensatory and not punitive, the Court ruled that an award that disgorged the entirety of Walmart's compensable profits was just in these circumstances. In short, the Court determined in its discretion that $32,521,671.40 is the appropriate award to compensate Variety for Walmart's transgression.

Notwithstanding the above, Variety argues that the Lanham Act allows it to recover actual damages in the form of a reasonable royalty in addition to an equitable disgorgement of profits, and that, because Variety reserved its right to a jury trial, one should now be set to make a determination of the actual damages for which it is entitled. Variety also argues that it is also entitled to recover damages under state law. In considering the equitable factors listed above and the circumstances of this case, the Court does not agree.

It is clear that defendant's profits, any damages sustained by the plaintiff, and the costs of the action are all distinct remedies that are available to a prevailing plaintiff under the Lanham Act. *Georgia-P. Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 718 (4th Cir. 2015) ("By the terms of the statute, 'damages' are to be treated separately from 'profits.'"). But while it

4

is true that the Act contemplates that a plaintiff may recover both actual damages and disgorgement of profits, it is equally true that it does not permit the recovery of both if the award would result in a double recovery. *See* 5 McCarthy on Trademarks and Unfair Competition § 30:73 (4th ed. 2016).

Though the law does not precisely define under which circumstances an award of both actual damages and disgorged profits would constitute a double recovery, the courts appear to be generally in agreement that an award that would compensate for plaintiff's lost profits as well as disgorge defendant's profits would be an impermissible double recovery. *See, e.g., United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1227–28 (10th Cir. 2000) (noting that "[w]hile the damages allowed under the statute are joined with the conjunction 'and,' the district court correctly pointed out a plaintiff in a trademark infringement case generally cannot recover its lost profits in addition to the defendant's profits."); *Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007 (9th Cir. 1994) ("[T]he recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act.").

Additionally, under this principle, many courts have held that where an award of disgorged profit was from sales in which the parties competed, any additional award of damages would be an impermissible double recovery. *See, e.g., Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219 (D. Colo. 1976), *modified*, 561 F.2d 1365 (10th Cir. 1977), *cert. dismissed*, 434 U.S. 1052 (1978) (holding that no recovery of profits was available to plaintiff in addition to damages, as that would result in overcompensation); *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 208 U.S.P.Q. 421 (S.D.N.Y. 1980) (holding that damages and profits may not be awarded together if based on the same sales); *Victoria Cruises, Inc. v.*

5

*Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255 (E.D.N.Y. 2008) (denying recovery of plaintiff's own lost profits as damages in addition to defendant-competitor's profits from its infringing sales, stating that "awarding plaintiff both defendant's profits and its own lost profits based on the same sales would constitute an impermissible double recovery."); *see also* Restatement Third, Unfair Competition § 36, comment c (1995) ("In such cases, an award of both profits and damages may thus be prohibited under the rule precluding double recovery for the same loss.").

Variety appears to concede that, because the Court disgorged Walmart's profits from sales within the states in which the parties competed, an award of damages in the form of a royalty from those same sales would be a double recovery. Variety argues, however, that it is also entitled to collect damages in the form of a reasonable royalty from Walmart's nationwide sales. The Court does not agree. While the Lanham Act provides for nationwide protection of trademarks, the actual area of competition is to be weighed under the Court's equitable discretion when determining an award. As the Fourth Circuit has stated, "[t]he fact that a plaintiff had not entered the relevant marketplace when the infringement was ongoing, in combination with the fact that no sales were diverted, should weigh against an award being made." *Synergistic*, 470 F.3d at 175–76. The Fourth Circuit has also interpreted the Lanham Act to provide injunctive relief only if the trademark holder is likely to enter, or has entered, the infringing user's trade territory. *Lone Star Steakhouse & Salool v. Alpha of Virginia*, 43 F.3d 922, 931–32 (4th Cir. 1995). Under this guidance, and as previously decided, the Court is persuaded that the actual geographic area of competition should be weighed under its equitable determination and the Court will not derive damages from sales from states within which Variety did not operate.

In considering the above principles, the Court also notes that the award which was previously granted, which the Court considered and found to be just, necessarily includes any amount of a reasonable royalty that a jury might subsequently find. This is because the award was the entirety of the compensable profits derived by Walmart from its infringing activity, and such profit necessarily includes any amount of royalty that would have been paid from its sales. Consequently, any actual damages in the form of a reasonable royalty that a jury might award to Variety would need to be deducted from Walmart's profits to avoid an impermissible double recovery. *See, e.g., Playboy Enters., Inc. v. Dumas*, 831 F. Supp. 295, 320 (S.D.N.Y.), *opinion modified on reargument*, 840 F. Supp. 256 (S.D.N.Y. 1993), *aff'd in part, rev'd in part on other grounds*, 53 F.3d 549 (2d Cir. 1995) ("[A]ny license or royalty fee would be deducted from the profits to prevent double recovery."). Consequently, there is no need to hold a jury trial on the issue of damages because such an award is already encompassed by the award of disgorged profits.

In this action Variety asserted two Lanham Act claims: for trademark infringement under 15 U.S.C. § 1114 and for unfair competition under 15 U.S.C. § 1125. Variety also brought three state law claims: for trademark infringement under North Carolina law, N.C. Gen. Stat. § 80-11, for trademark infringement at common law, and for unfair competition under the North Carolina Unfair and Deceptive Trade Practices Act, N.C Gen. Stat. § 75-1.1. As previously held, the elements of these claims are substantially the same, [DE 149 at 3], and to prevail on each of these claims in the context of trademark infringement requires proof (1) that the infringed-upon mark is protectable and (2) that defendant's use of the disputed mark is likely to cause confusion among consumers. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014); *see also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("The North

Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement."). Because the state law claims require proof of the same essential elements as Variety's claims under federal law, to the extent Variety seeks a remedy under its state law claims, such an award would be duplicative of Variety's award under the Lanham Act. A party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery. *See Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333 (1980) ("It . . . goes without saying that the courts can and should preclude double recovery by an individual."). Any additional award under state law would therefore be an impermissible double recovery, and there is no need to bring such claims before a jury.

Therefore, because Variety has already been awarded the entirety of Walmart's profits that can be attributed to its infringement and that are compensable to Variety, and because no additional remedy is available in this case, there is no need to hold a jury trial and final judgment will be entered.

## CONCLUSION

For the foregoing reasons, plaintiff's motion is DENIED. [DE 318]. The Clerk is DIRECTED to enter final judgment and close the case.

SO ORDERED, this _18_ day of April, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE