IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-217-BO

| | | |
|---|---|---|
| VARIETY STORES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This cause comes before the Court on plaintiff's motion for attorneys' fees, non-taxable expenses, treble damages, and pre-judgment interest. [DE 340]. The matter has been fully briefed and is ripe for disposition. For the reasons discussed below, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The Court incorporates by reference as if fully set forth herein the factual and procedural background included in its order granting partial summary judgment. [DE 149].

On December 8, 2015, the Court granted Variety Stores, Inc.'s (hereinafter "Variety") partial summary judgment in its favor on its claim for trademark infringement and unfair competition under federal law and trademark infringement and unfair and deceptive practices under state law. [DE 149]. In its order, the Court found that Variety owns a protectable interest in the BACKYARD marks and that Wal-Mart Stores, Inc.'s (hereinafter Walmart) competing use created a likelihood of confusion. *Id.*

Subsequently, Variety moved for a bench trial focused on an accounting and disgorgement of profits which is an equitable remedy not necessitating a jury trial. [DE 157]. The Court granted this motion, [DE 211], and an evidentiary bench trial on these issues was held

on October 11 and 12, 2016. The Court, in a written order issued on November 22, 2016, found that Walmart's sales of infringing products during the relevant time period in the states where Variety and Walmart both operated totaled $395,316,314.71, that Walmart proved appropriate costs to be deducted in the amount of $362,794,643.31, and therefore found that profit in the amount of $32,521,671.40 could be attributed to sales of the infringing mark. [DE 316]. After considering several equitable factors the Court determined, in its discretion, that the profit figure derived above was a just award to plaintiff in these circumstances and ordered that Walmart disgorge the amount to Variety. *Id.*

On December 21, 2016, Variety filed a motion requesting that the Court set a date for a jury trial on the issue of damages, arguing that the Lanham Act allows it to recover damages in addition to an equitable disgorgement of profits and that it reserved its right to such a jury trial on damages. [DE 318]. The Court denied this motion and entered final judgment. [DE 334]. Variety filed a notice of appeal that same day, [DE 336], followed by the instant motion seeking attorneys' fees and costs under Rule 54(d)(2) of the Federal Rules of Civil Procedure and to alter or amend the Court's judgment under Rule 59(e) to add awards for treble damages, pre-judgment interest, and to fix an accounting error. [DE 340].

## DISCUSSION

Variety first moved for an award of attorneys' fees and costs. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117 (a). As explained by the Fourth Circuit,

> a district court may find a case "exceptional" and therefore award attorneys fees to the prevailing party under § 1117(a) when it determines, in light of the totality of the circumstances, that (1) "there is an unusual discrepancy in the merits of the positions taken by the parties," *Fair Wind Sailing*, 764 F.3d at 315, based on the non-prevailing party's position as either frivolous or objectively unreasonable, *see Octane Fitness*, 134 S.Ct. at 1756 n. 6; (2) the non-prevailing party "has litigated

2

the case in an 'unreasonable manner,'" *Fair Wind Sailing*, 764 F.3d at 315 (quoting *Octane Fitness*, 134 S.Ct. at 1756); or (3) there is otherwise "the need in particular circumstances to advance considerations of compensation and deterrence," *Octane Fitness*, 134 S.Ct. at 1756 n. 6 (quoting *Fogerty*, 510 U.S. at 534 n. 19, 114 S.Ct. 1023) (internal quotation marks omitted).

*Georgia-Pacific Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015), *as amended* (Apr. 15, 2015). As the Supreme Court has explained in interpreting the term in a similar context, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

In assessing the totality of the circumstances, *see Octane Fitness*, 134 S. Ct. at 1756, the Court finds that this is an exceptional case warranting the award of attorneys' fees. First, there has been an unusual discrepancy in the positions taken by the parties in this matter. As previously noted at summary judgment, Walmart decided to use the BACKYARD mark despite being twice warned by its own attorneys not to do so and despite being aware of Variety's trademark registration. [DE 149 at 2–3]. This fact alone marks this case as unusual and exhibits the discrepancy between the parties' positions in this matter. Despite this holding at summary judgment, Walmart continued to dispute the willfulness of its infringement in all following stages of litigation.[1] Walmart also continually advanced remarkable contentions throughout this litigation, such as the argument that the BACKYARD mark was worth "zero" despite the Court's prior holding that that Walmart's competing use of the BACKYARD mark created a likelihood

---

[1] As previously noted by the Court, "Walmart presented evidence at trial purporting to prove that its infringement was not willful or was based on entirely innocuous reasons. . . . However, this is plainly contradicted by the Court's earlier finding as a matter of fact that Walmart adopted the mark intentionally after its legal team made its brand team aware of Variety's mark and twice warned the brand team not to use the Backyard mark." [DE 316 at 4].

3

of confusion and that the mark was commercially strong. This case also presents a particular need for compensation and deterrence. As described by the Court in summary judgment,

> Having engaged in the nine-point analysis and found it favors plaintiff, the Court now considers the circumstances of this case at a more global level, for examination of the larger picture is especially compelling. Before the Court is a case in which a larger company with deeper pockets for litigation selected a product name with the same dominant word as a smaller company by which to sell the same and similar items as that smaller company. The larger company knew of the smaller company's use-and trademark-when it decided to use the name, but the larger company used it anyway. The items were then sold in the same types of stores located in the same geographic areas and frequented by the same types of customers. It is difficult to imagine how these circumstances lead to anything but a likelihood of confusion.

[DE 149 at 14]. For these reasons, the Court finds this to be an exceptional case meriting the award of attorneys' fees.

The question then becomes what fees are reasonable to award. This Court has the discretion to determine the amount of a fee award. *Mercer v. Duke Univ.*, 30 F. Supp. 2d 454, 466 (M.D.N.C. 2004) (citing *Hensley v, Eckerhart*, 461 U.S. 424, 437 (1983), abrogated on other grounds by *Tex. States Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S 782 (1989)). To calculate an award of attorneys' fees, the court "must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). The party requesting fees bears the burden of establishing the reasonableness of the requested rate and "must produce satisfactorily specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Id.* at 244. Other facts may lead the court "to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434.

Plaintiff submitted a declaration which detailed billing information to support its request for attorneys' fees and costs in the amounts of $1,554,028.45 and $136,593.68, respectively. [DE

341 at 14]. The Court has considered all the facts, the circumstances of this litigation, as well as the declarations and affidavits submitted by plaintiff. [DE 341-1, 341-2, 341-3, 341-4, and 341-5]. The Court finds the rates proposed by plaintiff to be reasonable for this region and under the standards laid out by the Fourth Circuit. *See Robinson*, 560 F.3d at 243; *Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008).

A fee applicant also must establish the reasonableness of the hours requested. *See Hensley*, 461 U.S. at 437. Plaintiffs request fees for a total of 5,275.92 hours and, after reviewing the affidavits and billing statements submitted by plaintiffs, the Court finds that this is a reasonable number of hours. Plaintiff has demonstrated with sufficient particularity that the hours requested were properly billable and appropriately performed by plaintiff's attorneys.

Therefore, Variety's motion to award attorneys' fees and costs is granted and the Court finds that an award of fees and non-taxable costs totaling $1,554,028.45 and $136,593.68, respectively, to be reasonable given the extent of litigation in this matter and the circumstances of the case. In crafting this remedy, the Court has carefully considered what amount will compensate plaintiff for its losses without being punitive and what is reasonable under the applicable statutes and standards.

Variety has also requested that the judgment be amended to treble damages and award pre-judgment interest. Prior to filing the instant motion, Variety appealed this Court's order and judgment, raising questions as to the extent of the remedies available to it under state and federal law in these circumstances. As Walmart has noted, the filing of an appeal divests a district court of jurisdiction over all matters that are the subject of that appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district

5

court of its control over those aspects of the case involved in the appeal."). There is a limited exception to this general principle which is encompassed in Rule 59 of the Federal Rules of Civil Procedure. Under that Rule, a motion to alter or amend judgment can be made within 28 days of entry of judgment, and the Fourth Circuit has recognized three reasons for which a court can grant such a motion: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available previously; or (3) to correct a clear error of law or prevent manifest injustice. *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007). Although Variety did not identify the specific basis for its motion under Rule 59, because it did not present any new evidence or identify a change in law, Variety is ostensibly arguing that judgment should be amended to correct a clear error of law or prevent manifest injustice.

The Court has previously ruled that Variety prevailed under its state and federal law causes of action, [DE 149], and the Court consequently entered an order disgorging the entirety of Walmart's profits that the Court found, under its equitable discretion, to be compensable to Variety. [DE 316]. Further, the Court held that, in these circumstances, the disgorgement award was the entirety of the remedy available to Variety under state and federal law.[2] The questions

---

[2] The Court described its reasoning in its previous order denying Variety's motion to set a trial date: "In considering the above principles, the Court also notes that the award which was previously granted, which the Court considered and found to be just, necessarily includes any amount of a reasonable royalty that a jury might subsequently find. This is because the award was the entirety of the compensable profits derived by Walmart from its infringing activity, and such profit necessarily includes any amount of royalty that would have been paid from its sales. Consequently, any actual damages in the form of a reasonable royalty that a jury might award to Variety would need to be deducted from Walmart's profits to avoid an impermissible double recovery. *See, e.g., Playboy Enters., Inc. v. Dumas*, 831 F. Supp. 295, 320 (S.D.N.Y.), *opinion modified on reargument*, 840 F. Supp. 256 (S.D.N.Y. 1993), *aff'd in part, rev'd in part on other grounds*, 53 F.3d 549 (2d Cir. 1995) ("[A]ny license or royalty fee would be deducted from the profits to prevent double recovery."). Consequently, there is no need to hold a jury trial on the issue of damages because such an award is already encompassed by the award of disgorged profits. . . . Because the state law claims require proof of the same essential elements as Variety's claims under federal law, to the extent Variety seeks a remedy under its state law claims, such an award would be duplicative of Variety's award under the Lanham Act. A party may not recover

6

Variety raises concerning the remedies available to it under state law have already been appealed and are under consideration in the Fourth Circuit, [DE 336, 344], and this Court has therefore been divested of jurisdiction over these matters. Additionally, for the reasons discussed in the Court's prior orders, the Court finds that there is no clear error of law or manifest injustice to correct such that judgment should be altered or amended under Rule 59. Therefore, Variety's request for to alter or amend its judgment is denied.

Finally, Variety requests that the Court correct the disgorgement award by increasing it by $390,000 due to a computation error that had occurred in the materials presented to the Court at trial. Such a request is properly understood as a request to correct a mistake under Rule 60 of the Federal Rules of Civil Procedure. However, that rule states that, "after an appeal has been docketed in the appellate court and while it is pending, . . . a mistake may be corrected only with the appellate court's leave." Fed. R. Civ. P. 60(a). As that is the situation here, this Court is unable to make the requested correction without leave from the Fourth Circuit and Variety's motion is denied.

---

twice for one injury, even if the party asserts multiple, consistent theories of recovery. *See Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333 (1980) ("It . . . goes without saying that the courts can and should preclude double recovery by an individual."). Any additional award under state law would therefore be an impermissible double recovery, and there is no need to bring such claims before a jury." [DE 334 at 8].

## CONCLUSION

For the foregoing reasons, plaintiff's motion [DE 340] is GRANTED IN PART and DENIED IN PART. Defendant is ORDERED TO PAY $136,593.68 in costs and $1,554,028.45 in attorneys' fees to plaintiff.

SO ORDERED, this __6__ day of July, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE