IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-cv-217-BO

| | |
|---|---|
| VARIETY STORES, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| WALMART INC., | ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT WALMART INC.'S
MOTION *IN LIMINE* CONCERNING
APPORTIONMENT AND DISGORGEMENT OF PROFITS**

To the extent that Variety seeks disgorgement of Walmart's profits, Walmart should be permitted to present evidence and argument showing that its profits are not "attributable to" its use of the word "Backyard." Under long-established trademark law, a defendant is entitled to show that its profits from goods bearing the allegedly infringing mark are not "attributable to" the use of the mark, but to other factors, such as price, quality, or product features. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942). Indeed, this Court previously granted Walmart's motion *in limine*, filed in advance of the October 2016 disgorgement trial, seeking a ruling that: (i) Walmart was entitled to present argument that its profits were not "attributable to" its use of the word "Backyard"; and (ii) Walmart's proffered evidence on that issue was relevant to the issue of disgorgement. DE 232; DE 316 at 15.

Despite the well-established case law and this Court's previous ruling, Variety continues to take the improper position that the question of whether Walmart's profits are "attributable to" its use of the word "Backyard" is irrelevant to the issue of disgorgement. But as Walmart previously explained, Variety's position is contrary to the large body of case law, and, if accepted, would improperly exclude a critical portion of Walmart's defense against Variety's claim that it is entitled to Walmart's profits. DE 232. Accordingly, Walmart once again respectfully requests a ruling that: (i) Walmart is entitled to present argument that its profits were not "attributable to" its use of the word "Backyard"; and (ii) Walmart's proffered evidence on that issue is relevant to the issue of disgorgement.

## ARGUMENT

When a plaintiff seeks disgorgement of profits under an unjust enrichment theory, the defendant is entitled to show that its profits were not "attributable to" its use of the alleged infringing trademark, but instead were attributable to other factors. If Walmart's profits were earned due to marketplace factors ***other than*** the use of the mark, a disgorgement of its profits—

1

even after a finding of liability—would be improper. Exclusion of such evidence would be legal error.

Just as it did during the October 2016 disgorgement trial, Walmart intends to offer highly relevant expert and fact evidence on the issue of its profits. Specifically, Walmart intends to offer a consumer survey and related expert testimony demonstrating that the use of the word "Backyard" did not contribute to the sales of the grilling products at issue. Variety offers no contrary consumer surveys. Walmart's survey alone is sufficient to carry Walmart's burden and preclude a disgorgement of profits.

Walmart also intends to offer two "likelihood of confusion" surveys that demonstrate the absence of actual confusion. Variety offers no contrary likelihood of confusion surveys.

Walmart also intends to present fact witnesses whose testimony will describe, among other things:

(i) the rationale for the rebranding in 2011 and why use of the word "Backyard" was not a critical aspect of it;

(ii) the Walmart consumer "decision tree" relied upon by the company in purchasing Opening Price Point ("OPP") products at wholesale, which emphasizes value, quality, and features—not the product name;

(iii) the design guidelines for the rebranded products and their express emphasis on product features and not the word "Backyard";

(iv) pre-litigation marketing surveys and related internal documents demonstrating that the use of "Backyard" would not be an independent driver of sales;

(v) the absence of any incidents of "actual confusion";

(vi) Walmart's decision to discontinue use of the word "Backyard" on its products and its wholesale buyer's purchase of the same or greater quantity of products for sale at retail without using the name; and

(vii) Walmart's real-world sales experience with the products after the word "Backyard" was removed—showing that the products without the word "Backyard" sold just as well as those that previously included the word "Backyard."

This expert and fact evidence should be considered at trial.[1]

## A. DISGORGEMENT OF PROFITS REQUIRES CONSIDERATION OF WHETHER THE PROFITS ARE "ATTRIBUTABLE TO" THE USE OF THE MARK

It is well-established that without a causal link between a defendant's sales and the alleged infringement, a plaintiff is not entitled to disgorgement of any profits. *See, e.g.*, 4 CALLMAN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 23:63 (4th ed. 2018). The Callman treatise summarizes the rule as follows:

> The defendant, however, is permitted to show, and has the burden of proving, that there was no causal connection between his profits and his unlawful conduct. To put it another way, he must rebut the presumption that his sales were [a]ffected by his unfair competition. ***If the defendant makes such a showing, the plaintiff will be denied a recovery of the defendant's profits.***

*Id*. (emphasis added); *see also* 5 MCCARTHY ON TRADEMARKS § 30:65 (4th ed. 2016) ("Under the federal Lanham Act, as well as the common law, it is the infringer's burden to prove any proportion of his total profits which may not have been due to use of the infringing mark.").

This rule has its origin in *Mishawaka Rubber*, where the Supreme Court held that there is no basis for disgorgement of profits absent causation:

---

[1] Variety has no contrary survey evidence and no contrary factual evidence on this issue.

> If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher. ***The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark.***

316 U.S. at 206 (emphasis added).

This rule governs in trademark infringement cases decided in this District. *See, e.g., Exclaim Mktg., LLC v. DirecTV, LLC*, No. 5:11-CV-684-FL, 2015 WL 5725692, at *4 (E.D.N.C. Sept. 30, 2015) (acknowledging that defendant was entitled to "introduce evidence suggesting its infringing listings were less profitable, or that customers would have called the numbers used in the infringing listings notwithstanding the use of DirecTV's mark"); *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2011 WL 2491208, at *5 (E.D.N.C. June 22, 2011) (defendant is entitled to demonstrate "that 'some of [its] sales were unrelated to and unaided by' the unlawful conduct") (quoting *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 63–64 (1st Cir.2008)); *accord Allen v. Standard Crankshaft & Hydraulic Co.*, 231 F. Supp. 301, 303 (W.D.N.C. 1964) ("But, if it can be shown that the infringement had no relation to profits made by the defendant and that purchasers bought goods bearing the infringing mark because of defendant's recommendation or its reputation, or indeed for any reason other than a response to the diffused appeal of the plaintiff's symbol, the plaintiff, is, of course, not entitled to defendant's profits attributable to such factors.") (quoting *Mishawaka Rubber*, 316 U.S. at 206).[2]

---

[2] While it does not appear that the Court of Appeals for the Fourth Circuit has addressed the issue of apportionment in the trademark infringement context, it has considered the disgorgement of profits and causation in the context of a false advertising unfair competition claim pursuant to the Lanham Act, 15 U.S.C. § 1125. *See Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285–86 (4th Cir. 2003), *abrogated on other grounds*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010). In *Xoom*, the Fourth Circuit instructed generally that "[i]n determining damages under the

Courts in other jurisdictions also follow the rule. *See*, *e.g.*, *Optimum Techs., Inc. v. HomeDepot U.S.A., Inc.*, 217 Fed. Appx. 899, 903 (11th Cir. 2007) (affirming denial of award of infringer's profits where "[t]here is no evidence that any of [infringer's] sales of [the subject goods] are attributable to its alleged infringement of [plaintiff's mark]"); *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349–50 (5th Cir. 2002) (affirming denial of award of infringer's profits because mark owner "is only entitled to those profits attributable to the unlawful use of the mark"); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 966 F.2d 956, 957–58 (5th Cir. 1992) (denying en banc rehearing on judgment notwithstanding the verdict on unjust enrichment where infringer "would have sold just as many pig sandwiches by any other name and . . . there is no basis for inferring that any of the profits received by [infringer] from the sale of pig sandwiches are attributable to infringement.") (citations omitted); *see also Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-CV-22046, 2009 WL 8634834, at *13 (S.D. Fla. April 29, 2009) ("[A] court may award all profits made during the infringing period, unless the infringer can prove that at least some of these profits flow from his own merit rather than from infringement of the plaintiff's mark."); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (noting that a defendant's profits must be "attributable to" the infringing conduct to be recoverable under an

---

Lanham Act, the plaintiff bears the burden of proving a causal connection between its harms and the defendant's profits." *Id*. at 286. This causation requirement is the same as the requirement that Walmart's profits be "attributable to" the use of the alleged infringing mark.

The Fourth Circuit also has addressed apportionment in the analogous copyright context. *See Konor Enter., Inc. v. Eagle Publ'ns, Inc.*, 878 F.2d 138 (4th Cir. 1989). In *Konor*, the Fourth Circuit remanded the case for a new trial on damages, instructing: "[a]t the new trial on damages, Eagle must be given an opportunity to show what portion of its income did not result from infringement, and which, if any, revenue were derived from non-infringing uses of the copyrighted material." *Id*. at 141.

Given these two similar cases and the substantial body of law described herein, the Fourth Circuit is highly likely to conclude that apportionment is a required consideration in determining disgorgement of profits in the trademark infringement context.

unjust enrichment theory); *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772–73 (2d Cir. 1984) (asserting that "[u]njust enrichment warranting an accounting exists when the defendant's sales 'were attributable to its infringing use' of plaintiff's trademark" and absent such a showing disgorgement "is precluded").

The rule is even included in the federal form jury instructions on the issue of disgorgement of defendant's profits in a Lanham Act case. *See* 3A Fed. Jury Prac. & Instr. § 159:92 (6th ed. 2015) (instructing that the jury must determine whether profits were "attributable to" the infringement).

Notably, the fact-finder must consider apportionment even when the plaintiff's mark is famous and commercially strong. *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 242 (3d Cir. 2003). In *Gucci*, the Third Circuit weighed the evidence of whether defendant's profits were attributable to the use of the plaintiff's mark where the goods at issue were counterfeits and the name at issue was the famous (and commercially very strong) mark GUCCI. The Court wrote:

> [T]he record does not establish what percentage of Daffy's sales, if any, was the result of the use of Gucci's mark. We understand, of course, that "Gucci" suggests a certain level of quality and prestige. It is therefore certainly possible that the instant sales were the direct result of the exploitation of that brand name. However, it is also quite possible that the purchasers were motivated by the opportunity of purchasing what appeared to be an attractive handbag of exceedingly high quality at the very favorable price afforded by Daffy's "discount." To the extent that consumers were motivated by obtaining such a bargain, the fact that they were also obtaining "a genuine Gucci" may have been only an incidental factor in their purchase, or no factor at all. In other words, given the quality, attractiveness, and price of the bags, we cannot conclude that Daffy's could not have sold them at the same price even if they contained no reference to "Gucci." Since Gucci is "only entitled to those profits attributable to the unlawful use of its mark," the record would not support awarding Gucci lost profits.

*Id.*³ The Court of Appeals also dismissed the concern that defendant would be unjustly enriched unless disgorgement was ordered, stating:

> …that concern is exaggerated where, as here, the record does not establish that the infringer was enriched *because of* the owner's mark. As noted above, that requires speculation. The district court could not conclude that Daffy's was able to sell the counterfeit bags because of the Gucci mark without speculating about whether purchasers were attracted to the handbags because of the Gucci mark as opposed to quality, price, and appearance.

*Id.* at 243.

This causal rule makes sense. If a plaintiff claims entitlement to a defendant's profits based on an "unjust enrichment" theory, as Variety does in this case, there must be proof that the purported "enrichment"—the profit—is "unjust." In other words, that the profits are attributable to the alleged infringing use, and not to some other marketplace factor. *See, e.g.*, *Andersons, Inc. v. Consol, Inc.,* 348 F.3d 498, 502 (6th Cir. 2003) ("[T]he plaintiff must show enrichment that is **unjust**. It is insufficient for the plaintiff to prove merely that he conferred a benefit upon the defendant.") (emphasis in original) (internal citations omitted); *Kerin v. United States Postal Serv.*, 116 F.3d 988, 994 (2d Cir. 1997) (considering unjust enrichment damages and stating "enrichment of the defendant alone is insufficient to sustain a damage award for unjust enrichment—the plaintiff must also show that the enrichment was unjust and that it caused the plaintiff harm.").

Of course, if the profits made on a product are **not** attributable to the alleged infringing use, any profits are not unjust. Given that the Lanham Act expressly requires that any award of profits must be compensatory, and not a "penalty," 15 U.S.C. § 1117(a), there can be no recovery for unjust enrichment absent causation. *See*, *e.g.*, *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145,

---

³ The Gucci court concludes this paragraph with the phrase "awarding Gucci lost profits," however it is apparent from the opinion that the court was addressing the question of awarding Gucci the defendant's profits. *See generally id.* at 241–42.

1157–58 (7th Cir. 1994) (affirming decision not to award unjust enrichment damages because, without proof of causation, such damages would constitute a statutorily impermissible penalty).[4]

In light of the foregoing, Walmart should be entitled to show at trial that its profits were not "attributable to" its use of the alleged infringing trademark.

**B.      WALMART'S APPORTIONMENT EVIDENCE IS RELEVANT**

Rule 401 of the Federal Rules of Evidence states that evidence is relevant if:

(a)     It has any tendency to make a fact more or less probable that it would be without the evidence; and

(b)     The fact is of consequence in determining the action.

The "basic standard of relevance thus is a liberal one." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993). Further, relevance is "determined in the context of the facts and arguments in a particular case, and thus [is] generally not amenable to broad *per se* rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). Walmart's proffered evidence is relevant under this standard.

Walmart intends to offer consumer surveys and related expert testimony demonstrating that the use of the word "Backyard" did not contribute to the sales of the grilling products at issue. A survey expressly designed to address the question of whether the use of "Backyard" was a motivating factor among consumers in making purchasing decisions is plainly relevant because it has at least some tendency to make it less probable that the sales were attributable to the use of the mark. Whether the sales were attributable to the use of the mark is of consequence in determining the action because, as explained above, if sales are attributable to factors other than use of the word "Backyard," Variety is not entitled to those profits.

---

[4] A plaintiff is not without relief—an injunction or actual damages may be a sufficient remedy to address the infringement.

Similarly, surveys that demonstrate the absence of actual confusion and testimony related to the absence of incidents of actual confusion are relevant to the question of whether any of Walmart's sales are "attributable to" the use of the mark. The absence of any actual confusion given the volume of goods sold has at least some tendency to make it less probable that the sales were attributable to the use of the mark. *See*, *e.g.*, James M. Koelemay, Jr., A PRACTICAL GUIDE TO MONETARY RELIEF IN TRADEMARK INFRINGEMENT CASES, 85 TMR 263, 293 (1995) ("KOELEMAY") ("One method of accomplishing this apportionment might be to consider survey evidence of the extent of actual confusion.").

Walmart's evidence concerning the facts surrounding the post-use marketplace environment is also relevant because that evidence has at least some tendency to make it less probable that the sales were attributable to the use of the mark. *See, e.g.*, *Marten Transport, Ltd. v. Plattform Advertising, Inc.*, No. 14-CV-2464-JWL, 2016 WL 715765, at *9 (D. Kan. Feb. 22, 2016) (defendant "will be free at trial to attempt to show that it did not in fact realize any profits attributable to the inclusion of Marten information on the websites (for instance, by showing that revenues were the same whether or not Marten was included on the sites)."); KOELEMAY at 293 ("One method of accomplishing this apportionment might be to … consider the defendant's pre- or post-infringement sales compared to sales realized during the infringement.").

Finally, the fact witness testimony that Walmart intends to offer—including testimony regarding the circumstances leading to Walmart's use of the word "Backyard" in Walmart's rebranding efforts in 2011, the absence of any incidents of "actual confusion," and Walmart's sales experience once the word "Backyard" was removed—is relevant because that evidence has at least some tendency to make it less probable that the sales were attributable to use of the mark. *See Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*, 463 F. Supp. 2d 733, 739 (E.D. Mich. 2006)

(finding a "disgorgement of profits inappropriate because the evidence indicated that [Defendant's] profits were not attributable to its use of the [infringed mark]," including evidence from Defendant's employees that sales did not fall after Defendant discontinued sales under infringed mark, and evidence that consumers purchase Defendant's products based on quality and price, and not name).

## **CONCLUSION**

For the foregoing reasons, the Court should issue a ruling that: (i) Walmart is entitled to present argument that its profits are not "attributable to" its use of the word "BACKYARD"; and (ii) Walmart's proffered evidence on that issue is relevant.

Respectfully submitted,

Dated: September 28, 2018
/s/Mark S. Puzella
Mark S. Puzella (admitted pro hac vice)
R. David Hosp (admitted pro hac vice)
Sheryl K. Garko (admitted pro hac vice)
FISH & RICHARDSON, P.C.
One Marina Park Drive
Boston, Massachusetts 02210
Telephone: 617-521-7043
Facsimile: 617-542-8906
E-mail: puzella@fr.com
hosp@fr.com
garko@fr.com

Elizabeth E. Brenckman (admitted pro hac vice)
FISH & RICHARDSON, P.C.
601 Lexington Avenue, 52nd Flr.
New York, New York 10022
Telephone: 212-641-2305
Facsimile: 212-258-2291
E-mail: brenckman@fr.com

William W. Wilkins (SC Bar No. 6112)
Kirsten E. Small (NC Bar No. 37057)
NEXSEN PRUET
55 E. Camperdown Way
Suite 400
Greenville, South Carolina 29601
Telephone: 864-370-2211
Facsimile: 864-282-1177
E-mail: bwilkins@nexsenpruet.com
ksmall@nexsenpruet.com

***Attorneys for Defendant Walmart Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 28th day of September, 2018.

*/s/Mark S. Puzella*
Mark S. Puzella