**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
No. 5:14-CV-217-BO

| | |
|---|---|
| VARIETY STORES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WALMART INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**<u>DEFENDANT WALMART INC.'S TRIAL BRIEF</u>**

# TABLE OF CONTENTS

ANTICIPATED EVIDENTIARY ISSUES ................................................................................... 1

CONTESTED ISSUES OF LAW .............................................................................................. 10

I.  VARIETY MUST PROVE OWNERSHIP AND VALIDITY OF THE CLAIMED
    UNREGISTERED TRADEMARKS "BACKYARD BBQ" AND "BACKYARD"
    INDEPENDENT OF THE REGISTERED TRADEMARK "THE BACKYARD" ........ 12

    A.  THE PRESUMPTION OF VALIDITY FOR VARIETY'S REGISTERED
        TRADEMARK "THE BACKYARD" DOES NOT EXTEND TO VARIETY'S
        CLAIMED UNREGISTERED TRADEMARKS "BACKYARD BBQ" AND
        "BACKYARD" .................................................................................................. 13

    B.  VARIETY MUST SEPARATELY ESTABLISH THAT IT USED THE
        CLAIMED UNREGISTERED TRADEMARKS "BACKYARD BBQ" AND
        "BACKYARD" IN COMMERCE AND THAT THEY ARE DISTINCTIVE.... 14

II. VARIETY MUST ESTABLISH THAT WALMART PURPOSELY SELECTED OR
    USED ITS "BACKYARD GRILL + DESIGN" TRADEMARK WITH THE INTENT
    TO TRADE OFF VARIETY'S GOODWILL .................................................................. 16

III. THE FOURTH CIRCUIT'S DETERMINATIONS ON APPEAL CONSTITUTE THE
     LAW OF THE CASE, AND THIS COURT'S SUMMARY JUDGMENT ORDER HAS
     NO PRECLUSIVE EFFECT ........................................................................................ 16

    A.  THE FOURTH CIRCUIT CONCLUDED THAT VARIETY'S ASSERTED
        TRADEMARKS ARE CONCEPTUALLY WEAK AND THAT WALMART'S
        CONSUMER SURVEYS SHOULD BE ADMITTED INTO EVIDENCE ........ 17

    B.  WALMART SHOULD NOT BE FORECLOSED FROM PRESENTING
        EVIDENCE ON ANY OF THE LIKELIHOOD OF CONFUSION FACTORS
        OR FROM CHALLENGING TRADEMARK OWNERSHIP OR VALIDITY.. 18

IV. THE JURY'S VERDICT ON DISGORGEMENT SHOULD BE ADVISORY
    BECAUSE THE ISSUE MUST BE DECIDED BY THE COURT ................................. 20

V.  VARIETY'S CLAIMS FOR MONETARY RELIEF REQUIRE CONSIDERATION OF
    WHETHER THERE IS A CAUSAL LINK BETWEEN WALMART'S SALES AND
    ITS ALLEGED INFRINGEMENT ............................................................................... 21

A.  THE JURY MUST CONSIDER WHETHER WALMART'S SALES ARE ATTRIBUTABLE TO WALMART'S ALLEGED INFRINGEMENT BEFORE WALMART'S PROFITS CAN BE DISGORGED ............................................... 22

B.  THE JURY MUST CONSIDER WHETHER WALMART'S SALES ARE ATTRIBUTABLE TO WALMART'S ALLEGED INFRINGEMENT BEFORE A REASONABLE ROYALTY CAN BE AWARDED ...................................... 26

VI.  IN CALCULATING PROFITS (IF ANY), WALMART'S COSTS MUST BE DEDUCTED ......................................................................................................... 27

VII.  VARIETY CANNOT CLAIM ANY RELIEF UNDER THE UDTPA BECAUSE IT CANNOT SHOW THAT WALMART'S ALLEGED CONDUCT CAUSED IT TO SUFFER ANY ACTUAL DAMAGES .......................................................................... 29

VIII.  TREBLING OF WALMART'S PROFITS OR A REASONABLE ROYALTY IS NOT PERMITTED UNDER THE UDTPA OR THE LANHAM ACT ................................... 32

A.  TREBLING OF WALMART'S "DISGORGED PROFITS" OR A REASONABLE ROYALTY AWARD IS NOT PERMITTED UNDER THE UDTPA ....................................................................................................... 32

B.  NO DAMAGES MAY BE AWARDED UNDER N.C. GEN. STAT. § 75-16 FOR CONDUCT OCCURRING OUTSIDE OF NORTH CAROLINA ............. 34

C.  TREBLING OF WALMART'S "DISGORGED PROFITS" OR A REASONABLE ROYALTY AWARD IS NOT PERMITTED UNDER THE LANHAM ACT .................................................................................................. 35

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*A & M Records, Inc. v. Abdallah,*
  948 F. Supp. 1449 (C.D. Cal. 1996) ....................................................................28

*Aladdin Mfg. Co. v. Mantle Lamp Co. of Am.,*
  116 F.2d 708 (7th Cir. 1941) ............................................................................29

*Alexander Binzel Corp. v. Nu-Tecsys Corp.,*
  No. 91 C 2092, 2000 WL 310304 (N.D. Ill. Mar. 24, 2000) .................................25

*Allen v. Standard Crankshaft & Hydraulic Co.,*
  231 F. Supp. 301 (W.D.N.C. 1964) ...................................................................23

*ALPO Petfoods, Inc. v. Ralston Purina Co.,*
  286 913 F.2d 958 (1990)...................................................................................25

*Am. Rockwool, Inc. v. Owens-Corning Fiberglass Corp.,*
  640 F. Supp. 1411 (E.D.N.C. 1986).................................................................34

*Armand's Subway, Inc. v. Doctor's Assocs., Inc.,*
  604 F.2d 849 (4th Cir. 1979) .............................................................................6

*Ashe v. PNC Fin. Servs. Grp.,*
  652 F. App'x 155 (4th Cir. 2016) ......................................................................8

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.,*
  No. 08-Civ-04397, 2008 WL 6742224 (N.D. Cal. Dec. 18, 2008)..........................8

*Badger Meter, Inc. v. Grinnell Corp.,*
  13 F.3d 1145 (7th Cir. 1994) ...............................................................22, 23, 26

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,*
  750 F.2d 903 (Fed. Cir. 1984)...........................................................................26

*Belk, Inc. v. Meyer Corp.,*
  679 F.3d 148 (4th Cir. 2012) ............................................................................33

*Bigelow v. RKO Radio Pictures,*
  327 U.S. 251, 66 S. Ct. 574, 90 L. Ed. 652 (1946).................................................24

*Burndy Corp. v. Teledyne Indus., Inc.,*
  748 F.2d 767 (2d Cir. 1984)..............................................................................24

*Buzz Off Insect Shield, Ltd. Liab. Co. v. S.C. Johnson & Son, Inc.,*
  606 F. Supp. 2d 571 (M.D.N.C. 2009) ..............................................................16

**Cases**                                                                    **Page(s)**

*Chaudhry v. Gallerizzo*,
   174 F.3d 394 (4th Cir. 1999) ................................................................................1

*Choice Hotels Int'l, Inc. v. Zeal, LLC*,
   No. 4:13-CV-01961-BHH, 2016 WL 4055023 (D.S.C. July 29, 2016) ..............................29

*Clear Blue, Inc. v. Clear!Blue, Inc.*,
   No. 3:07-CV-00339-W, 2008 WL 5232897 (W.D.N.C. Dec. 12, 2008)................................31

*Design Res., Inc. v. John Wolf Decorative Fabrics*,
   No. 83-Civ-7606 (CBM), 1985 WL 2445 (S.D.N.Y. Sept. 5, 1985).......................................28

*Design v. K-Mart Apparel Corp.*,
   13 F.3d 559 (2d Cir. 1994)...............................................................................................29

*Doe v. Chao*,
   511 F.3d 461 (4th Cir. 2007) .........................................................................................18

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982)........................................................................................................35

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
   642 F. Supp. 2d 276 (S.D.N.Y. 2009)...........................................................................27

*First S. Bank v. Fifth Third Bank NA*,
   631 F. App'x 121 (4th Cir. 2015) ...................................................................................32

*Flavor Corp. of Am. v. Kemin Indus., Inc.*,
   358 F. Supp. 1114 (S.D. Iowa 1973), aff'd, 493 F.2d 275 (8th Cir. 1974) ...........................21

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ..........................................................................................28

*Ga.-Pac. Consumer Prods. LP v. Von Drehle Corp.*,
   781 F.3d 710 (4th Cir. 2015) .............................................................................16, 23, 35

*Gen. Elec. Capital Corp. v. Renew*,
   122 F. App'x 604 (4th Cir. 2004) ...................................................................................35

*Good Tech. Corp. v. MobileIron, Inc.*,
   No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87392 (N.D. Cal. July 6,
   2015) ...............................................................................................................................21

*Hoganas AB v. Dresser Indus., Inc.*,
   9 F.3d 948 (Fed. Cir. 1993) .............................................................................................8

**Cases**                                                                                                                                                   **Page(s)**

*Hospitality Int'l v. Mahtani*,
   No. 2:97-CV-87, 1998 WL 35296447 (M.D.N.C. Aug. 3, 1998)......................................29, 31

*Innovation Ventures, LLC v. NVE, Inc.*,
   No. 08-11867, 2016 U.S. Dist. LEXIS 6943 (E.D. Mich. Jan. 21, 2016) .............................21

*Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a
   Monaco*,
   329 F.3d 359 (4th Cir. 2003) ...........................................................................................15

*InterState Net Bank v. NetBank, Inc.*,
   221 F. Supp. 2d 513 (D.N.J. 2002) ...................................................................................13

*JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*,
   28 Fed. App'x 207 (4th Cir. 2002) ...................................................................................27

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
   2006 WL 1359955 (S.D.N.Y. May 18, 2006) .................................................................31, 34

*Kos Pharms., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004)................................................................................................8

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   778 F.2d 1352 (9th Cir. 1985) ...........................................................................................14

*Levin Bros. v. Davis Mfg. Co.*,
   72 F.2d 163 (8th Cir. 1934) ...............................................................................................28

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ...........................................................................................24

*In re Loew's Theatres, Inc.*,
   769 F.2d 764 (Fed. Cir. 1985)............................................................................................14

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
   43 F.3d 922 (4th Cir. 1995) ...............................................................................................12

*Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*,
   No. 3:08-CV-573, 2009 WL 5876245 (E.D. Va. July 23, 2009)...........................................31

*Maltina Corp. v. Cawy Bottling Co.*,
   613 F.2d 582 (5th Cir. 1980) .............................................................................................27

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
   885 F.2d 1 (2d Cir. 1989) ..............................................................................................27, 29

**Cases**                                                                                     **Page(s)**

*Miller Brewing Co. v. G. Heileman Brewing Co.*,
   561 F.2d 75 (7th Cir. 1977) ...............................................................................13

*Minn. Pet-Breeders, Inc. v. Schell & Kampeter, Inc.*,
   843 F. Supp. 506 (D. Minn. 1993)................................................................21, 24

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
   316 U.S. 203 (1942)......................................................................................5, 22

*Muhler Co. v. Window World of N. Charleston LLC*,
   No. 2:11-Civ-00851, 2014 WL 4269078 (D.S.C. Aug. 28, 2014) ...................27, 29

*N.C. ex rel. N.C. Dept. of Admin. v. Alcoa Power Generating, Inc.*,
   No. 13-Civ-633, 2015 WL 224740 (E.D.N.C. Jan. 15, 2015)...................................3

*New Line Cinema Corp. v. Russ Berrie & Co.*,
   161 F. Supp. 2d 293 (S.D.N.Y. 2001).............................................................28, 29

*Olivetti Corp. v. Ames Bus. Sys., Inc.*,
   356 S.E.2d 578 (N.C. 1987)...............................................................................30

*Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*,
   217 Fed. Appx. 899 (11th Cir. 2007)..................................................................23

*Paco Sport, Ltd. v. Paco Rabanne Parfums*,
   86 F. Supp. 2d 305 (S.D.N.Y. 2000)..................................................................13

*Parker v. Prudential Ins. Co.*,
   900 F.2d 772 (4th Cir. 1990) ...............................................................................2

*Polo Fashions, Inc. v. Craftex, Inc.*,
   816 F.2d 145 (4th Cir. 1987) .........................................................................28, 33

*Quick Techs., Inc. v. Sage Group PLC*,
   313 F.3d 338 (5th Cir. 2002) ...............................................................................23

*S. Pac. Co. v. Arizona ex rel. Sullivan*,
   325 U.S. 761 (1945)...........................................................................................35

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
   318 F.3d 592 (4th Cir. 2003) .................................................................................4

*Santos v. Hecht*,
   No. 06-Civ-783, 2006 WL 2166850 (E.D.N.Y. July 31, 2006)..................................8

<u>**Cases**</u>                                                                                      <u>**Page(s)**</u>

*S AS Institute, Inc. v. World Programming Ltd.,*
    No. 5:10-Cv-FL, 2015 WL 522780 (E.D.N.C. Sept. 8, 2015) ..........................30, 33

*In re Save Venice N.Y., Inc.*,
    259 F.3d 1346 (Fed. Cir. 2001).........................................................................13

*Schnadig Corp. v. Gaines Mfg. Co., Inc.*,
    620 F.2d 1166 (6th Cir. 1980) ...........................................................................28

*Se. Coastal Dev. Fund, LLC v. Commercial Real Estate Inc.*,
    No. 5:08-CV-15-F, 2009 WL 928543 (E.D.N.C. April 3, 2009)...........................34

*Sensible Foods, LLC v. World Gourmet, Inc.*,
    No. 11-Civ-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012)..............................8

*Shafer v. Farmers' Grain Co. of Embden*,
    268 U.S. 189 (1925)...........................................................................................35

*Sharer v. Tandberg, Inc.*,
    No. 06-cv-626, 2007 WL 983849 (E.D. Va. Mar. 27, 2007).....................................1

*SMD Software, Inc. v. EMove, Inc.*,
    No. 5:08-CV-403-FL, 2011 WL 2491208 (E.D.N.C. June 22, 2011) ..............22, 23

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)...........................................................................................25

*Strates Shows, Inc. v. Amusements of Am., Inc.*,
    646 S.E.2d 418 (N.C. Ct. App. 2007).................................................................29

*Streamline Prod. Sys. v. Streamline Mfg.*,
    851 F.3d 440 (5th Cir. 2017) .......................................................................22, 26

*Synergistic Int'l, LLC v. Korman*,
    470 F.3d 162 (4th Cir. 2006) ............................................................................16

*Tamko Roofing Prod., Inc. v. Ideal Roofing Co.*,
    No. 99-Civ-388, 2000 WL 1745078 (D.N.H. Oct. 19, 2000).................................28

*Teaching Co. Ltd. P'shp. v. Unapix Entm't, Inc.*,
    87 F. Supp. 2d 567 (E.D. Va. 2000) ..................................................................23

*Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*,
    966 F.2d 956 (5th Cir. 1992) .............................................................................24

# TABLE OF AUTHORITIES (cont'd.)

**Cases**                                                                    **Page(s)**

*Tiffany & Co. v. Costco Wholesale Corp.*,
    274 F. Supp. 3d 216 (S.D.N.Y. 2017)............................................................20

*U.S. Search, LLC v. U.S. Search.com Inc.*,
    300 F.3d 517 (4th Cir. 2002) ..............................................................15

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
    888 F.3d 651 (4th Cir. 2018) ..............................................17, 18, 19, 20

*W.E. Bassett Co. v. Revlon, Inc.*,
    435 F.2d 656 (2d Cir.1970)..............................................................28, 29

*Estate of Ward v. Trans Union Corp.*,
    No. 4:04-CV-88-DAN, 2007 U.S. Dist. LEXIS 98169 (E.D.N.C. Aug. 30,
    2007) ..............................................................................................3

*Warner Bros., Inc. v. Gay Toys, Inc.*,
    598 F. Supp. 424 (S.D.N.Y. 1984)..............................................................28

*Westfield Ins. Co. v. Harris*,
    134 F.3d 608 (4th Cir. 1998) ..............................................................2

*Winant v. Bostic*,
    5 F.3d 767 (4th Cir. 1993) ..............................................................32

*Xoom, Inc. v. Imageline, Inc.*,
    323 F.3d 279 (4th Cir. 2003) ..............................................................25

*Zeneca Ltd. v. Novapharm Ltd.*,
    919 F. Supp. 193 (D. Md. 1996)..............................................................18

**Statutes**

15 United States Code
    § 1115(b) ..............................................................................................12, 13
    § 1117(a) ..............................................................................................23, 27, 36

**Statutes**                                                                 **Page(s)**

North Carolina General Statute
 § 75-16 ................................................................................................................ *passim*

## Other Authorities

3A Federal Jury Practice and Instruction § 159:92 (6th ed. 2015) .................................................25

4 CALLMAN ON UNFAIR COMPETITION, TRADEMARKS AND
 MONOLOPIES § 23:61 (4th ed. 2015) ...................................................................................21

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:65
 (5th ed.) .............................................................................................................................21

18B Charles Allen Wright et al., *Federal Practice and Procedure* § 4478 (2d ed.
 2002) ..................................................................................................................................19

Federal Rules of Civil Procedure
 Rule 26 ............................................................................................................................3, 4
 Rule 37 ................................................................................................................................3
 Rule 39 ..............................................................................................................................21

Federal Rules of Evidence
 Rule 401 ..............................................................................................................................6
 Rule 402 ..............................................................................................................................6
 Rule 403 ......................................................................................................................2, 3, 6
 Rule 404 ..............................................................................................................................2
 Rule 801 ..........................................................................................................................7, 8

James M. Koelemay, Jr., *A Practical Guide to Monetary Relief in Trademark
 Infringement Cases*, 85 TMR 263 (1995) ............................................................................25

Pursuant to Local Rule 39.1(a)(1), Defendant Walmart Inc. ("Walmart") submits this memorandum of authorities on anticipated evidentiary issues and contested issues of law.

## ANTICIPATED EVIDENTIARY ISSUES

Walmart anticipates the following evidentiary issues at trial; several are addressed more fully in Walmart's Motions *in Limine* (DE. Nos. 403–07, 413, and 422).

1. Variety improperly intends to present evidence and argument at trial concerning Walmart's discussions with its attorneys and Walmart's invocation of the attorney-client privilege. Variety has even included Walmart's privilege logs on its Exhibit List (Ex. Nos. 25–27). Walmart believes that Variety will impermissibly seek an adverse inference from Walmart's contacts with its attorneys or its invocation of the attorney-client privilege despite such evidence and argument being irrelevant and highly prejudicial. While Walmart witnesses responded to Variety's deposition questions regarding the fact that attorneys were consulted during the clearance process (because the fact of consultation is not considered privileged),[1] the witnesses provided no testimony regarding the nature of that advice. *See* DE 54-1 at 34:9–11, 64:2–4; 87:16–25. And most importantly, at trial, Walmart does not intend to offer testimony regarding the fact attorneys were consulted. As a result, Walmart will not put the question of attorney advice at issue.

Under these circumstances, where Walmart does not intend to rely on the fact of attorney consultation for any inference, as set forth in Walmart's Motion *in Limine* to Exclude Evidence

---

[1] *See, e.g.*, *Sharer v. Tandberg, Inc.*, No. 06-cv-626, 2007 WL 983849, at *1–2 (E.D. Va. Mar. 27, 2007) ("The mere fact of legal consultation also falls outside the protection of the privilege."); *see also Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) ("'[T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.'") (quoting *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).

and Arguments Concerning Issues Involving the Attorney-Client Privilege (DE 406), it is well-settled that an assertion of the attorney-client privilege and the withholding of the advice of counsel cannot be used, as Variety intends, to support an adverse inference. *See, e.g.*, *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir. 1990).

Accordingly, the Court should preclude Variety from: (i) indirectly or directly suggesting adverse inferences based on Walmart's contacts with its attorneys and its invocation of the attorney-client privilege, including referencing or presenting evidence regarding Walmart's privilege log or that Walmart was "twice advised" not to use the BACKYARD GRILL + Design trademark at issue in this case; or (ii) attempting to elicit testimony that Variety knows would require Walmart to assert the attorney-client privilege in front of the jury.

2.      Walmart anticipates that Variety will seek to impermissibly introduce evidence of other complaints, incidents, claims, and lawsuits against Walmart. Such evidence should be excluded. The Fourth Circuit has identified a four-part test to determine the admissibility of evidence of prior acts under Rules 403 and 404(b) of the Federal Rules of Evidence. *See Westfield Ins. Co. v. Harris*, 134 F.3d 608, 614 (4th Cir. 1998). As set forth in Walmart's Motion *in Limine* to Exclude Evidence and Arguments Concerning Other Complaints, Incidents, Claims, or Lawsuits (DE 404), Variety's anticipated evidence of other complaints, claims, and lawsuits fails that test because: (1) it is not relevant to any issue other than character; (2) it is not necessary in the sense that it is probative of an essential claim or an element of the offense; (3) it is not reliable; and (4) it does not carry probative value that is substantially outweighed by its prejudicial nature. *See id.*; Fed. R. Evid. 403, 404(b). Accordingly, the Court should exclude evidence and arguments concerning other complaints, incidents, claims, or lawsuits against Walmart.

3.     Walmart anticipates that Variety will attempt to present evidence and arguments relating to Walmart being a much larger company than Variety in terms of revenue, number of employees, and market size.  As set forth in Walmart's Motion *in Limine* to Exclude Evidence and Arguments Concerning Walmart Inc.'s Overall Revenue and Size (DE 405), the only objective of such an argument would be to suggest to the jury that a loss for Walmart would not be of concern to its bottom line, whereas a loss for Variety would be disastrous to its success as a company.  Such arguments are regularly excluded as irrelevant to any issues in the case, and the introduction of such evidence would be unfairly prejudicial to Walmart.  *See generally* Fed. R. Evid. 403; *see also Estate of Ward v. Trans Union Corp.*, No. 4:04-CV-88-DAN, 2007 U.S. Dist. LEXIS 98169, at *2–3 (E.D.N.C. Aug. 30, 2007) (granting Defendant's Motion *in Limine* in part, holding that "the potential prejudice of mentioning Defendant's financial status or wealth would outweigh any probative value").  Accordingly, the Court should preclude Variety from presenting evidence and argument concerning Walmart's overall revenue, number of employees, and market size.

4.     The Court should permit Walmart witnesses Marvin Deshommes, David Ortiz, and Robert Puglisi to testify at trial.  Variety previously took the position that these witnesses should be excluded because they were not timely disclosed and/or that their testimony was irrelevant.  *See* DE 396 at 85–86; *see also* DE 254.  Variety's arguments are unfounded.  ***First***, these witnesses were identified as part of a timely supplement of Walmart's Rule 26(a)(1) initial disclosures prior to the time for exchanging Rule 26(a)(3) pretrial witness lists.  *See N.C. ex rel. N.C. Dept. of Admin. v. Alcoa Power Generating, Inc.*, No. 13-Civ-633, 2015 WL 224740, at *1 (E.D.N.C. Jan. 15, 2015) (rejecting movant's assertion that a witness must be excluded pursuant to Rule 37

because the witness was not identified in its initial disclosures).[2]  **Second**, the Supplemental

Disclosures complied with instructions and an Order issued by the Court in response to Variety's

discovery motions, and comported with an agreement between the parties regarding trial witnesses.

*See* DE 161 at 81:5–14; 89:2–5; DE 181 at 5–6; DE 169 at 4.  **Third**, these witnesses will provide

relevant evidence relating to liability and damages issues.  Accordingly, the Court should allow

Mr. Deshommes, Mr. Ortiz, and Mr. Puglisi to testify at trial.

5.      Variety should be precluded from attempting to introduce evidence related to

monetary relief, other than reasonable royalties and disgorgement based on unjust enrichment.  As

set forth in Walmart's Motion *in Limine* to Exclude Any Evidence Concerning Monetary Remedies

Other Than a Reasonable Royalty or Disgorgement of Profits Based on Unjust Enrichment (DE

407), Variety affirmatively disclaimed any right to seek disgorgement based on a proxy for actual

damages, and represented that it was seeking Walmart's profits only under a theory of unjust

enrichment.  Furthermore, Variety has not timely disclosed any facts or evidence that would

support an award of damages other than reasonable royalties and disgorgement based on unjust

enrichment, and therefore any additional evidence should be excluded under Rules 26(a) and (e).

*See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)

(stating that in determining whether a failure to disclose is substantially justified or harmless, a

court should use the Fourth Circuit's five factor test).

6.      Variety intends to introduce evidence of prior irrelevant and unrelated license

agreements between Walmart and third parties to support its claim for a reasonable royalty.  *See,

e.g.*, Variety Ex. Nos. 30–51, 80.  As set forth in Walmart's Motion *in Limine* to Exclude Evidence

---

[2] Robert Puglisi was included on **Variety's** Initial Rule 26(a) Disclosures on August 18, 2014.  *See* DE 408-1 at 2.  Variety cannot credibly argue surprise or prejudice based on his inclusion as a witness when Variety itself originally identified Mr. Puglisi.

and Arguments Concerning Unrelated License Agreements (DE 422), license agreements between Walmart and third parties that are unrelated to the trademarks or products at issue are wholly irrelevant to the calculation of a reasonable royalty concerning Variety's claimed trademarks. Accordingly, the Court should exclude evidence and arguments concerning prior irrelevant and unrelated license agreements between Walmart and third parties.

7. To the extent that Variety seeks disgorgement of Walmart's profits, Walmart should be permitted to present evidence and demonstrate that its profits are not "attributable to" Walmart's use of the word "Backyard," as set forth in Walmart's Motion *in Limine* Concerning Apportionment and Disgorgement of Profits (DE 403). Variety's contrary position is inconsistent with long-established trademark law, and if accepted would improperly exclude a critical portion of Walmart's defense against Variety's claim that it is entitled to Walmart's profits. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942) (holding that "[i]f it can be shown that the infringement had no relation to profits made by the defendant . . . [t]he plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark"). Accordingly, the Court should permit Walmart to present evidence that its profits are not attributable to its use of the word "Backyard."[3]

8. Variety should not be entitled to a reasonable royalty and to disgorge all of Walmart's profits without consideration of the limited geographic market area in which the parties' operations overlap. As set forth in Walmart's Motion *in Limine* to Exclude Evidence of Revenue Outside of the Relevant Geographic Area (DE 413), Variety is not permitted to receive a reasonable royalty beyond the geographic market that Variety has penetrated because: (1) Variety is not entitled to a nationwide remedy where its goods are sold only regionally; (2) profits earned

---

[3] *See also* discussion *infra* Part V.A.

by Walmart in non-competing areas cannot be "attributable to" the use of Variety's claimed trademarks and such an award would contravene the Lanham Act's requirement that damages be compensatory and not punitive and the principles of equity; and (3) Variety cannot satisfy the factors set forth in *Synergistic* for monetary remedies based on revenues earned in non-competing areas. Indeed, this Court previously concluded that it would be unjust to disgorge Walmart's profits from states in which Walmart and Variety do not compete. DE 316 at 11–12. Evidence outside the area of overlapping sales is thus irrelevant to the proper calculation of Walmart's revenue, and its submission would be unfairly prejudicial and confusing to the jury. *See Armand's Subway, Inc. v. Doctor's Assocs., Inc.*, 604 F.2d 849, 849–50 (4th Cir. 1979) (explaining that even though the owner of a registered trademark has an exclusive right of use that enjoys nationwide protection, "the protection is only potential in areas where the registrant in fact does not do business" and that "[a] competing user could use the mark there until the registrant extended its business to the area"); *see also* Fed. R. Evid. 401, 402, 403. Accordingly, the Court should preclude Variety from presenting evidence related to Walmart's sales outside of the limited geographic area where both parties operate.

9. On its exhibit list identified in the parties' proposed joint pretrial order (DE 396), Variety listed three consumer surveys that were conducted at the direction of Variety between 2009 and 2014 (Ex. Nos. 87A–C).[4] The consumer surveys do not include any reference to the trademarks at issue and are limited in time and geographic scope. *See* Fed. R. Evid. 401, 402, 403.

---

[4] Variety originally identified four consumer surveys (Ex. Nos. 87A–D) which were incomplete, rendering it impossible for Walmart to assess the methodology and results of the survey and market research that they contain, as set forth in Walmart's Motion *in Limine* to Exclude Evidence and Arguments Concerning Variety's Exhibit Nos. 87A–D. (DE 425). After Walmart filed the Motion *in Limine,* Variety provided complete copies of Ex. Nos. 87A–C and withdrew Ex. No. 87D due to incompleteness. Walmart has since withdrawn its Motion. (DE 436).

Accordingly, the consumer surveys should be excluded because they are irrelevant to the issues in this case.

10.     On its exhibit list identified in the parties' proposed joint pretrial order (DE 396), Variety listed the expert reports of Mr. Robert Klein (Ex. Nos. 19 and 20), Mr. Kenneth Hollander (Ex. Nos. 21 and 29), and Mr. J.C. Poindexter (Ex. Nos. 16–18). DE 396 at 52–53. Expert reports of Variety's own experts are not admissible because they are hearsay; accordingly, they should be excluded. Fed. R. Evid. 801(c); 802.

11.     On its list of "Designation of Pleadings and Discovery Materials" in the parties' proposed joint pretrial order (DE 396), Variety listed its own interrogatory responses (DE 44-9). These statements were made by Variety, and the person(s) who could verify the statements included in the interrogatory responses are Variety's employees and within Variety's control. Interrogatory responses based on the knowledge of Variety's own witnesses are not admissible because they are hearsay; accordingly, they should be excluded. Fed. R. Evid. 801(c); 802.

12.     On its list of "Designation of Pleadings and Discovery Materials" in the parties' proposed joint pretrial order (DE 396), Variety included the declaration of Dean Floyd (DE 44-6). Mr. Floyd is a Variety employee and within Variety's control. A declaration of Variety's own witness is not admissible because it is hearsay; accordingly, it should be excluded. Fed. R. Evid. 801(c); 802.

13.     On its list of "Designation of Pleadings and Discovery Materials" in the parties' proposed joint pretrial order (DE 396), Variety listed excerpts of the transcript of deposition of Graham D. Rogers, and prior testimony of George Mantis and Hal Poret. DE 396 at 79–80. The prior statements of Walmart's experts are not admissible. They are hearsay and should be

excluded, as they are out of court statements offered for the truth of the matters asserted. Fed. R. Evid. 801(c); 802.

14.     The Court has authority to take judicial notice of at least the relevant facts and documents in the exhibits set forth below, namely records and correspondence from the USPTO and the TTAB, on the ground that they are capable of accurate and ready determination by visiting the USPTO's website or the TTAB's website, sources whose accuracy can be presumed. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004) (taking judicial notice of public records available on the USPTO website); *Ashe v. PNC Fin. Servs. Grp.*, 652 F. App'x 155, 157 (4th Cir. 2016) (proper to take judicial notice of a prior TTAB decision); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (proper to take judicial notice of USPTO correspondence which is part of the public record); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. 08-Civ-04397, 2008 WL 6742224, at *2 n.1 (N.D. Cal. Dec. 18, 2008) (taking judicial notice of printouts of registrations or applications from the USPTO's website); *Santos v. Hecht*, No. 06-Civ-783, 2006 WL 2166850, at *1 n.1 (E.D.N.Y. July 31, 2006) (taking judicial notice of the underlying records of TTAB proceedings); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-Civ-2819, 2012 WL 566304, at *4 (N.D. Cal. Feb. 21, 2012) (taking judicial notice of an Answer and Response filed in TTAB proceeding). Thus, the Court has authority to and properly should take judicial notice of the following:

   a.   ***Walmart's Trial Exhibit No. 3:*** A true and correct copy of the "Trademark Electronic Search System" report for Variety's registration for THE BACKYARD trademark.

   b.   ***Walmart's Trial Exhibit No. 4:*** A true and correct copy of the "Trademark Electronic Search System" report for Walmart's application to register the BACKYARD GRILL + Design trademark.

   c.   ***Walmart's Trial Exhibit No. 5:*** A true and correct copy of the Notice of Opposition filed by Variety against Walmart in the TTAB (Opp. No. 91206134), dated July 18, 2012.

d. **_Walmart's Trial Exhibit No. 194:_** A true and correct copy of Walmart's application to register the BACKYARD GRILL + Design trademark (Ser. No. 85400391, dated August 17, 2011).

e. **_Walmart's Trial Exhibit No. 195:_** A true and correct copy of the Examining Attorney's Search in connection with Walmart's application to register the BACKYARD GRILL + Design trademark (Ser. No. 85400391, dated August 17, 2011), dated November 15, 2011.

f. **_Walmart's Trial Exhibit No. 196:_** A true and correct copy of the Office Action issued in connection with Walmart's application to register the BACKYARD GRILL + Design trademark (Ser. No. 85400391, dated August 17, 2011), dated November 16, 2011.

g. **_Walmart's Trial Exhibit No. 250:_** A true and correct copy of the "10 Year Renewal/Corrected" registration certificate for THE BACKYARD trademark (Reg. No. 1,847,503).

h. **_Variety's Trial Exhibit No. 251:_** A true and correct copy of the registration certificate for THE BACKYARD trademark (Reg. No. 1,847,503).

i. **_Walmart's Trial Exhibit No. 252:_** A true and correct copy of the Notice of Publication issued in connection with Walmart's application to register the BACKYARD GRILL + Design trademark (Ser. No. 85400391).

j. **_Walmart's Trial Exhibit No. 253:_** A true and correct copy of Walmart's Answer to Variety's Notice of Opposition in the TTAB (Opp. No. 91206134), dated August 27, 2012.

k. **_Walmart's Trial Exhibit No. 254:_** A true and correct copy of Variety's Motion to Amend Pleading / Amended Pleading filed in the TTAB (Opp. No. 91206134), dated April 30, 2013.

l. **_Walmart's Trial Exhibit No. 255:_** A true and correct copy of Walmart's Opposition to Variety's Motion to Amend Pleading / Amended Pleading filed in the TTAB (Opp. No. 91206134), dated May 30, 2013.

m. **_Walmart's Trial Exhibit No. 256:_** A true and correct copy of the TTAB's Order on Variety's Motion to Amend Pleading / Amended Pleading filed in the TTAB (Opp. No. 91206134), dated August 15, 2013.

# CONTESTED ISSUES OF LAW

The following legal issues must be addressed at the trial scheduled to begin on October 22, 2018. A summary list of the contested legal issues is provided immediately below, followed by a detailed analysis of each issue.

1. The Court must decide whether Variety must separately prove ownership and validity of its claimed unregistered trademarks. Walmart's position is that because the presumption of validity for Variety's registered trademark THE BACKYARD does not apply to Variety's claimed unregistered trademarks BACKYARD BBQ and BACKYARD, Variety must separately prove ownership and validity of those trademarks—i.e., that Variety has used the claimed unregistered trademarks in commerce and that the claimed unregistered trademarks are distinctive.

2. The Court must decide the legal standard for willful infringement. Walmart's position is that Variety must show that Walmart purposely selected or used its BACKYARD GRILL + Design trademark with the intent to deceive consumers and trade off any goodwill that Variety developed in its asserted trademarks.

3. The Court must determine the effect of the Fourth Circuit's ruling vacating this Court's order granting Variety's motion for summary judgment and each of the Court's subsequent orders. Walmart's position is that the express findings and conclusions made by the Fourth Circuit concerning the conceptual strength of Variety's asserted trademarks and the admissibility of Walmart's consumer survey evidence constitute the law of the case, but this Court's prior findings on summary judgment have no preclusive effect.

4. The Court must decide whether any verdict returned by the jury concerning disgorgement should be treated as an advisory verdict. Walmart's position is that because Variety

is seeking disgorgement not as a proxy for lost sales or actual damages, but as purely equitable relief, any jury verdict on this issue should be treated as advisory.

5.     The Court must decide whether the jury should consider what portion (if any) of Walmart's profits from the sale of its accused products is "attributable to" the use of the word BACKYARD or to other marketplace factors.  Walmart's position is that: (i) Variety has the burden to establish that Walmart's sales were caused by or "attributable to" Walmart's alleged infringement to be awarded a reasonable royalty; and (ii) Walmart has the burden to establish that its sales were not caused by or "attributable to" its alleged infringement before Variety can be awarded any of Walmart's profits.

6.     The Court must decide whether the jury should consider if Walmart should be allowed to deduct certain costs from its revenue to arrive at a "profit" figure that is potentially subject to disgorgement.  Walmart's position is that it is entitled to deduct its costs of goods sold, shipping expenses, variable SG&A costs, and taxes.

7.     The Court must decide whether Variety is entitled to any relief under N.C. Gen. Stat. § 75-16.  Variety appears to have waived this claim insofar as it did not include this claim in either its proposed jury instructions or its proposed verdict form.  DE 438, 439.  Walmart's position is that because Variety cannot prove causation and has no evidence of any actual harm, Variety is not entitled to any relief under the North Carolina Unfair Deceptive Trade Practice Act ("UDTPA").

8.     In the event that N.C. Gen. Stat. § 75-16 applies, the Court must decide whether trebling is permitted under the statute.  Walmart's position is that because Variety is seeking Walmart's profits not as a proxy for lost sales or actual damages, but as purely equitable relief, and the reasonable royalty that Variety is seeking is not a measure of its actual damages, trebling

11

is not allowed. If trebling is allowed under N.C. Gen. Stat. § 75-16, the Court must decide whether trebling of any monetary award based on Walmart's sales outside of North Carolina is permitted. Walmart's position is that any monetary award based on Walmart's sales outside of North Carolina is not permitted by the statute. The Court must also decide whether trebling of any monetary award received by Variety under the federal Lanham Act may be trebled. Walmart's position is that such trebling is not allowed under the Lanham Act.

The following is a more detailed analysis of the foregoing contested legal issues.

## I.   VARIETY MUST PROVE OWNERSHIP AND VALIDITY OF THE CLAIMED UNREGISTERED TRADEMARKS "BACKYARD BBQ" AND "BACKYARD" INDEPENDENT OF THE REGISTERED TRADEMARK "THE BACKYARD"

To prevail on its claims for trademark infringement and unfair competition, Variety must first show that its alleged trademarks are valid and protectable. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995) ("In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, [protectable] trademark . . . ."). Variety has asserted three separate trademarks in this action: (i) THE BACKYARD, which is federally registered for retail store services in the field of lawn and garden equipment and supplies; (ii) BACKYARD BBQ, which is unregistered and claimed to be used with barbeque grills and accessories; and (iii) BACKYARD, which is unregistered and claimed to be used with barbeque grills and accessories. Although Variety's registered trademark THE BACKYARD is incontestable and presumed valid (*see* 15 U.S.C. § 1115(b) (West 2002)), that presumption of validity does not apply to Variety's two claimed unregistered trademarks—BACKYARD BBQ and BACKYARD. Variety thus bears the burden of establishing that its two claimed unregistered trademarks are valid.

## A. THE PRESUMPTION OF VALIDITY FOR VARIETY'S REGISTERED TRADEMARK "THE BACKYARD" DOES NOT EXTEND TO VARIETY'S CLAIMED UNREGISTERED TRADEMARKS "BACKYARD BBQ" AND "BACKYARD"

Variety registered THE BACKYARD in class 41 for retail store services in the field of lawn and garden equipment and supplies, and its registration is incontestable. DE 396 at I.C.3. Although an incontestable registration enjoys a conclusive presumption of validity (i.e., that it is either inherently distinctive or has acquired secondary meaning (*see* 15 U.S.C. § 1115(b))), Variety cannot rely on its registration of THE BACKYARD to satisfy its burden of showing that it owns valid and protectable rights in its two claimed unregistered trademarks—BACKYARD BBQ and BACKYARD—for grills and grilling accessories.

The law is clear that "[a] registered mark is incontestable *only in the form registered and for the goods or services claimed*." *In re Save Venice N.Y., Inc.*, 259 F.3d 1346, 1353 (Fed. Cir. 2001) (emphasis added). The presumption of validity afforded to incontestable registrations does not extend to other forms of the registered trademark or other goods/services used with the trademark. *See, e.g.*, *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025 (1978) (registration for beer with no available carbohydrates is not *prima facie* evidence of rights when used by registrant on beer with available carbohydrates); *InterState Net Bank v. NetBank, Inc.*, 221 F. Supp. 2d 513, 519 (D.N.J. 2002), *later proceedings*, 348 F. Supp. 2d 340 (D.N.J. 2004) (registration of trademark for online bill payment services does not create a presumption of validity for use of trademark for online banking services).

Moreover, a registered trademark used on goods or services other than those previously registered carries no presumption of distinctiveness. *See Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 312 (S.D.N.Y. 2000), *aff'd without opinion*, 234 F.3d 1262 (2d Cir. 2000) (incontestable status applies only to the trademark as registered and to the goods listed in

the registration, and a registration for fragrances cannot create a presumption that the trademark is distinctive when used on clothing.); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985) (a registrant cannot rely on a registration for pants as *prima facie* evidence of secondary meaning in the shirt market); *In re Loew's Theatres, Inc.*, 769 F.2d 764 (Fed. Cir. 1985) (incontestable trademark DURANGO for cigars is insufficient to establish distinctiveness of DURANGO for chewing tobacco).

Here, Variety owns a single registration for the trademark THE BACKYARD in class 41 in connection with retail store services for lawn and garden equipment and supplies. The trademark is not registered in connection with any products. The presumption of validity afforded to Variety's incontestable registration of THE BACKYARD thus does not extend beyond the use of THE BACKYARD for retail store services identified in the registration, and it cannot be used to satisfy Variety's burden of establishing the validity of its claimed unregistered trademarks BACKYARD BBQ and BACKYARD for grills and grilling accessories.[5]

**B. VARIETY MUST SEPARATELY ESTABLISH THAT IT USED THE CLAIMED UNREGISTERED TRADEMARKS "BACKYARD BBQ" AND "BACKYARD" IN COMMERCE AND THAT THEY ARE DISTINCTIVE**

Because the presumption of validity for Variety's registered trademark THE BACKYARD does not apply to its claimed unregistered trademarks BACKYARD BBQ and BACKYARD, Variety must separately establish that it owns valid rights in both of those claimed unregistered trademarks. To meet its burden, Variety must show that it has used the claimed unregistered BACKYARD BBQ and BACKYARD trademarks "in commerce," and that the claimed unregistered trademarks are capable of protection—i.e., distinctive—either because they are

---

[5] Variety appears to concede this issue in its proposed jury instructions, in which it proffered separate instructions for considering the ownership and validity of its registered trademark and its claimed unregistered trademarks. *See* DE 438, Instruction Nos. 3–4.

inherently distinctive, or because the trademarks are descriptive and they have been used extensively enough and in such a way that consumers associate them exclusively with Variety. *See Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003) ("This circuit requires that an unregistered trademark satisfy two requirements if its owner is to have a [protectable] interest in the trademark: The mark must be used in commerce and it must be distinctive.") (internal citations omitted).

The distinctiveness of Variety's claimed unregistered trademarks BACKYARD BBQ and BACKYARD must be measured in connection with the particular goods or services that Variety claims to offer in connection with those trademarks, i.e., grills and grilling accessories. *See U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002) (explaining that it is a "fundamental tenet of trademark law . . . that the distinctiveness of a mark is measured ***in connection with the particular goods or services*** that are being offered") (emphasis in original).

Variety attempts to confuse the issues of ownership and validity in its proposed jury instructions by: (1) ignoring the use requirement altogether; and (2) seeking an inference that because the United States Patent and Trademark Office concluded that Variety's registered trademark THE BACKYARD is distinctive for "retail services in the field of lawn and garden equipment and supplies" that its claimed unregistered trademarks are distinctive for grills and grilling accessories. DE 438, Instruction No. 4. But the law is clear that Variety must separately prove both use ***and*** distinctiveness for its claimed unregistered trademarks. *See Int'l Bancorp*, 329 F.3d at 363. Moreover, as explained above, the presumption of distinctiveness afforded to Variety's registered trademark THE BACKYARD does not extend to its claimed unregistered trademarks, and any decisions the USPTO made regarding Variety's registered trademark have no bearing on the distinctiveness of its claimed unregistered trademarks. *See supra* Part I.A.

Accordingly, Variety must separately be required to establish that it has used its claimed unregistered trademarks BACKYARD BBQ and BACKYARD in commerce and that they are distinctive.

## II. VARIETY MUST ESTABLISH THAT WALMART PURPOSELY SELECTED OR USED ITS "BACKYARD GRILL + DESIGN" TRADEMARK WITH THE INTENT TO TRADE OFF VARIETY'S GOODWILL

Variety has asserted that Walmart's alleged infringement of Variety's trademarks was willful. *See, e.g.*, DE 396 at II.A.1.e. A finding of willfulness is only appropriate, however, where the evidence establishes that the defendant selected and used its infringing trademark with the intent to deceive consumers and to trade off the plaintiff's goodwill. *Ga.-Pac. Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) ("'[W]illful' does not mean that the defendant's actions were merely volitional, but rather that the defendant acted with the intent to infringe the plaintiff's protected mark."); *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) (noting that whether the defendant had an intent to confuse addresses whether there has been a willful infringement). Importantly, a defendant's mere knowledge of the plaintiff's trademark is not sufficient to demonstrate intent. *Buzz Off Insect Shield, Ltd. Liab. Co. v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 588 (M.D.N.C. 2009) (finding no intent to confuse or deceive based on defendant's mere knowledge of the plaintiff's mark).

Accordingly, to establish willfulness, Variety must prove that Walmart purposely selected and used its BACKYARD GRILL + Design trademark with the intent to deceive consumers and trade off Variety's goodwill.

## III. THE FOURTH CIRCUIT'S DETERMINATIONS ON APPEAL CONSTITUTE THE LAW OF THE CASE, AND THIS COURT'S SUMMARY JUDGMENT ORDER HAS NO PRECLUSIVE EFFECT

On appeal, the Fourth Circuit vacated the Court's December 8, 2015, order granting Variety's motion for summary judgment, determining that there were genuine disputes of material

fact with respect to the likelihood of confusion that rendered summary judgment improper. The Fourth Circuit also affirmed the order denying Walmart's motion for summary judgment, and vacated every order issued by the Court after the summary judgment rulings. In reaching its decision, the Fourth Circuit made specific findings and conclusions with respect to the conceptual strength of Variety's asserted trademarks and the consumer survey evidence presented by Walmart on summary judgment. The Fourth Circuit's conclusions on those two issues constitute the law of the case and the Court must follow them. Conversely, as a result of the Fourth Circuit's vacatur of the summary judgment order, the other determinations made by this Court on summary judgment cannot be the law of the case and are not entitled to any preclusive effect whatsoever.

> ### A. THE FOURTH CIRCUIT CONCLUDED THAT VARIETY'S ASSERTED TRADEMARKS ARE CONCEPTUALLY WEAK AND THAT WALMART'S CONSUMER SURVEYS SHOULD BE ADMITTED INTO EVIDENCE

The Fourth Circuit previously analyzed several of the likelihood of confusion factors to determine whether there were genuine disputes of material fact with respect to the ultimate question of likelihood of confusion. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018). One of the factors that the Fourth Circuit considered was the strength of Variety's trademarks. *Id.* at 661–64. Although it found that that the overall strength factor was generally disputed, the Fourth Circuit concluded that Variety's trademarks were conceptually weak based on evidence that the word "backyard" is widely used. *Id.* at 661–63. The Fourth Circuit explained that "[i]f Variety's 'Backyard' marks were 'truly a distinctive term, it is unlikely that . . . many other businesses . . . would independently think of using the same mark or similar variants of it.'" *Id.* at 662–63 (quoting *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

The Fourth Circuit's unambiguous determination that Variety's trademarks are conceptually weak constitutes the law of the case. *See Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007). It is well settled that "[w]hen matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court." *Id.* (quotation marks and citation omitted). Accordingly, although the jury will ultimately be required to determine the overall strength of Variety's asserted trademarks, the Court should instruct the jury that the claimed trademarks are conceptually weak.

The Fourth Circuit also considered the consumer survey evidence presented by Walmart on summary judgment concerning actual confusion. *Variety Stores*, 888 F.3d. at 665–66. The Fourth Circuit concluded that the Court erred by discounting Walmart's consumer surveys and ruled that "[i]n subsequent proceedings, if Walmart's surveys carry any flaws identified by Variety, the jury—not the judge—must decide how much weight to place on them." *Id.* Given the Fourth Circuit's clear holding, Walmart's consumer survey evidence must be admitted and weighed by the jury. *See Chao*, 511 F.3d at 465.

### B. WALMART SHOULD NOT BE FORECLOSED FROM PRESENTING EVIDENCE ON ANY OF THE LIKELIHOOD OF CONFUSION FACTORS OR FROM CHALLENGING TRADEMARK OWNERSHIP OR VALIDITY

Variety has incorrectly concluded that many of the Court's summary judgment determinations survived the Fourth Circuit's vacatur of the summary judgment order, and that Walmart should be precluded from presenting evidence and argument in view of those determinations. *See* DE 400. But as set forth in Walmart's opposition to Variety's Motion *in Limine* to Exclude Evidence that Is Contrary to the Fourth Circuit Law of the Case or the Mandate Rule (DE 442), the findings made by this Court in deciding the issue of likelihood of confusion on summary judgment cannot be the law of the case because the Fourth Circuit vacated the summary judgment order. *See Zeneca Ltd. v. Novapharm Ltd.*, 919 F. Supp. 193, 196 (D. Md. 1996) ("As a

18

general rule, a vacated judgment and the factual findings underlying it have no preclusive effect; the judgment is a legal nullity."); 18B Charles Allen Wright et al., *Federal Practice and Procedure* § 4478 (2d ed. 2002) ("*Federal Practice and Procedure* § 4478") ("[A] finding that has been vacated ceases to be the law of the case; even implicit vacating has this effect."). Moreover, Walmart properly raised the issues of likelihood of confusion and trademark ownership and validity on appeal, and thus those issues were not waived. DE 442; *Variety Stores*, 888 F.3d. at 666.

Variety also argues that the Fourth Circuit found that five of the likelihood of confusion factors (Factors 3, 4, 5, 8, and 9) weighed in its favor (DE 400 at 4), but the Fourth Circuit made no factual or legal determinations with respect to at least four of those factors because they were not challenged on appeal.[6] *See* DE 442 at 3–5; *Variety Stores*, 888 F.3d. at 666. Instead, the Fourth Circuit concluded, for purposes of the appeal, that "***even if*** Factors 3, 4, 5, 8, and 9 favor Variety, because Factors 1, 2, 6, and 7 are genuinely disputed, . . . the ultimate question of likelihood of confusion is also genuinely disputed." *Variety Stores*, 888 F.3d. at 666 (emphasis added). Thus, in contrast to the clear conclusions the Fourth Circuit made with respect to the conceptual strength of Variety's asserted trademarks and the admissibility of Walmart's survey evidence, the Fourth Circuit did not make any binding determinations with respect to the unchallenged likelihood of confusion factors. *Id.* at 662–63, 665–66. Indeed, the Fourth Circuit vacated this Court's summary judgment order in its entirety, and it made clear that on remand, the issue of likelihood of confusion should be decided by the jury, stating "[w]hether Walmart's mark

---

[6] The Fourth Circuit concluded that Factor 4 (similarity of facilities) weighed in Variety's favor based on the evidence presented on summary judgment. *Variety Stores*, 888 F.3d at 664–65. Contrary to Variety's assertions, the Fourth Circuit did not find that Factors 3, 5, and 8 weigh in Variety's favor as a matter of law. *Id.* at 666.

created a likelihood of confusion is indeed a question that the jury, consisting of ordinary consumers and using the ***nine factors as a guide***, is well-suited to evaluate." *Id.* at 666–67 (emphasis added).

Here, because this Court's determinations on summary judgment should have no preclusive effect, and nothing in the Fourth Circuit's opinion prevents Walmart from addressing each of the likelihood of confusion factors before the jury, Walmart should not be foreclosed from presenting evidence on any of the likelihood of confusion factors or from challenging trademark ownership or validity.

## IV.    THE JURY'S VERDICT ON DISGORGEMENT SHOULD BE ADVISORY BECAUSE THE ISSUE MUST BE DECIDED BY THE COURT

Any verdict returned by the jury on the issue of disgorgement should be considered only as an advisory verdict. Variety affirmatively disclaimed Walmart's profits as a proxy for its actual damages in prior filings with this Court, and is seeking Walmart's profits as purely equitable relief. *See* DE 177 at 3–4 ("An accounting of profits in the context of a trademark infringement case may be based on three rationales: approximating a plaintiff's actual damages, unjust enrichment, and deterrence…. Here, Variety affirmatively seeks Walmart's profits under a theory of unjust enrichment…. The only issue left for the Court to decide is by what amount Walmart was unjustly enriched.").[7]

Where the Court submits the issue of disgorgement to the jury, any jury verdict on the issue should thus be considered only as an advisory verdict. *See* Fed. R. Civ. P. 39(c); *Tiffany & Co. v. Costco Wholesale Corp.*, 274 F. Supp. 3d 216, 220 (S.D.N.Y. 2017) (treating the jury's verdict as

---

[7] As set forth in Walmart's Motion *in Limine* to Exclude Any Evidence Concerning Monetary Remedies Other Than a Reasonable Royalty or Disgorgement of Profits Based on Unjust Enrichment, Variety may only seek disgorgement under a wholly equitable unjust enrichment theory. DE 407.

to accounting of profits as an advisory verdict); *Innovation Ventures, LLC v. NVE, Inc.*, No. 08-11867, 2016 U.S. Dist. LEXIS 6943, at \*22–27 (E.D. Mich. Jan. 21, 2016) (submitting the issue of disgorgement to the jury for an advisory verdict); *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87392, at \*16 (N.D. Cal. July 6, 2015) (stating that to the extent that the plaintiff's Lanham Act claims were equitable in nature, the issue would be submitted to the jury for an advisory verdict).

## V. VARIETY'S CLAIMS FOR MONETARY RELIEF REQUIRE CONSIDERATION OF WHETHER THERE IS A CAUSAL LINK BETWEEN WALMART'S SALES AND ITS ALLEGED INFRINGEMENT

Without a causal link between a defendant's sales and the alleged infringement, the plaintiff is not entitled to disgorgement of any profits. *See, e.g.*, 4 CALLMAN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES, § 23:61 (4th ed. 2015) ("The defendant, however, is permitted to show, and has the burden of proving, that there was no causal connection between his profits and the unlawful conduct. To put it another way, he must rebut the presumption that his sales were [a]ffected by his unfair competition. ***If the defendant makes such a showing, the plaintiff will be denied a recovery of the defendant's profits.***") (emphasis added); *see also* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:65 (5th ed.) ("Under the federal Lanham Act, as well as the common law, it is the infringer's burden to prove any proportion of his total profits which may not have been due to the use of the infringing mark.").[8]

---

[8] The existence of a federal registration does not alter this analysis. "[A] plaintiff owning a registered mark is not entitled to relief without showing some likelihood of injury." *Minn. Pet-Breeders, Inc. v. Schell & Kampeter, Inc.*, 843 F. Supp. 506, 514 (D. Minn. 1993); *see also Flavor Corp. of Am. v. Kemin Indus., Inc.*, 358 F. Supp. 1114, 1125 (S.D. Iowa 1973), aff'd, 493 F.2d 275 (8th Cir. 1974) (plaintiff was not entitled to an injunction against defendant's use of plaintiff's registered trademark absent a likelihood of entry into defendant's market area and the subsequent acquisition of secondary meaning). "The requirement that plaintiff suffer a cognizable injury before recovering a monetary award is consistent with Section 1117(a)'s requirement that monetary relief be compensatory and not punitive." *Minn. Pet-Breeders*, 843 F. Supp. at 515.

Likewise, a plaintiff is not entitled to a reasonable royalty award that is not rationally related to the defendant's infringement. *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 461 (5th Cir. 2017) ("A royalty-based damages award must be rationally related to the scope of the defendant's infringement."); *see also Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) ("Items alleged as either unjust enrichment to the defendant or damages suffered by the plaintiff must, of course, have been caused by the infringement itself."). Accordingly, Variety is not entitled to Walmart's profits or an award of a reasonable royalty unless it establishes a causal link between Walmart's profits or sales and its alleged infringement. As such, Variety's claims for monetary relief require consideration of whether Walmart's sales are attributable to its alleged infringement of Variety's trademarks.

### A. THE JURY MUST CONSIDER WHETHER WALMART'S SALES ARE ATTRIBUTABLE TO WALMART'S ALLEGED INFRINGEMENT BEFORE WALMART'S PROFITS CAN BE DISGORGED

A plaintiff is entitled only to a defendant's profits that are "attributable" to the unlawful use of the plaintiff's trademark.[9] *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2011 WL 2491208, at \*5 (E.D.N.C. June 22, 2011). The Supreme Court has explained this rule as follows:

> If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher. The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark.

*Mishawaka Rubber*, 316 U.S. at 206 (internal citations omitted)

As an initial matter, under the express language of the Lanham Act, an award of

---

[9] This aspect of the disgorgement of profits assessment is frequently called "apportionment."

defendant's profits "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a) (West 2008). Thus, an award of an infringer's profits is limited by statute to the amount necessary to **compensate** the plaintiff, and must not be awarded to **punish** the infringer. *Ga.-Pac.*, 781 F.3d at 719 (recovery of defendant's profits limited to amount sufficient to compensate for the plaintiff's injury, and must not be punitive); *Teaching Co. Ltd. P'shp. v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 592 (E.D. Va. 2000) ("The purpose of the award of Defendant's profits here is to compensate Plaintiff for its loss and not to punish Defendant or to provide Plaintiff with a windfall.").

Given that the Lanham Act expressly provides that any award of profits must be compensatory, and not a "penalty," there can be no recovery of profits absent a causal link between the infringement and the profits earned by the defendant. *See, e.g.*, *Badger Meter, Inc.*, 13 F.3d at 1157–58 (affirming decision not to award the defendant's profits because, without proof of causation, such damages would constitute a statutorily impermissible penalty).

In practical terms, an accused infringer is entitled to demonstrate that "some of [its] sales were unrelated to and unaided by" the unlawful conduct. *See SMD Software*, 2011 WL 2491208, at *5; *see also Allen v. Standard Crankshaft & Hydraulic Co.*, 231 F. Supp. 301, 303 (W.D.N.C. 1964) ("But, if it can be shown that the infringement had no relation to profits made by the defendant and that purchasers bought goods bearing the infringing mark . . . for any reason other than a response to the diffused appeal of the plaintiff's symbol, the plaintiff, is, of course, not entitled to defendant's profits attributable to such factors.") (quoting *Mishawaka Rubber*, 316 U.S. at 206); *Optimum Techs., Inc. v. Home Depot U.S.A., Inc*., 217 Fed. Appx. 899, 903 (11th Cir. 2007) (affirming denial of award of infringer's profits where "[t]here is no evidence that any of [infringer's] sales of [the subject goods] are attributable to its alleged infringement of [plaintiff's mark]"); *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349–50 (5th Cir. 2002) (affirming

denial of award of infringer's profits because trademark owner "is only entitled to those profits attributable to the unlawful use of the trademark"); *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 966 F.2d 956, 957–58 (5th Cir. 1992) (granting judgment notwithstanding the verdict on unjust enrichment where infringer "would have sold just as many pig sandwiches by any other name and there is no basis for inferring that any of the profits received by [infringer] from the sale of pig sandwiches are attributable to infringement."); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (noting that a defendant's profits must be "attributable to" the infringing conduct to be recoverable under an unjust enrichment theory); *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772–73 (2d Cir. 1984) (asserting that "[u]njust enrichment warranting an accounting exists when the defendant's sales 'were attributable to its infringing use' of plaintiff's trademark" and absent such a showing disgorgement "is precluded"); 3A FED. JURY PRAC. & INSTR. § 159:92 (6th ed. 2015) (instructing that the jury must determine whether profits were "attributable to" the infringement).[10]

Consideration of whether there is a causal link between the defendant's sales and its alleged infringement is necessary even where the plaintiff is seeking profits under a deterrence theory to ensure that the profit award does not constitute a penalty. *See, e.g.*, *Minn. Pet-Breeders*, 843 F. Supp. at 517 (holding that because the defendant did not sell "its allegedly infringing products in [plaintiff]'s area of market penetration," there were no profits that could be disgorged under a

---

[10] Variety previously cited *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264, 66 S. Ct. 574, 579–80, 90 L. Ed. 652 (1946), an antitrust case that involved damages, rather than disgorgement of profits, to support its position that apportionment is not required here. But in *Bigelow*, the defendants themselves admitted that their illegal behavior had made it impossible for plaintiffs to determine with precision the amount of damage attributable to that illegal behavior. *Id.* at 263. As such, the Court sustained the jury's damages, even though it was an estimate based on the evidence rather than a precise accounting. Here, in contrast, the evidence shows that Walmart's profits are not attributable to its use of the trademark.

deterrence theory without giving the plaintiff "a tremendous windfall"); *see also  ALPO Petfoods, Inc. v. Ralston Purina Co.*, 286 913 F.2d 958, 969 (1990) (holding that the theory of deterring infringement by itself cannot justify an award of a defendant's profits); James M. Koelemay, Jr., *A Practical Guide to Monetary Relief in Trademark Infringement Cases*, 85 TMR 263, 278 (1995) ("Koelemay") ("Deterrence is certainly one purpose of the Lanham Act, but in light of the 'not a penalty' clause, only compensation and prevention of unjust enrichment are proper foundations for awards of damages or profits under Section 35").

Moreover, awarding Walmart's profits in the absence of some causal nexus would violate Walmart's fundamental due process rights. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417–22 (2003) ("For a more fundamental reason … the Utah courts erred … [t]he courts awarded punitive damages to punish and deter conduct that bore no relation to the Campbells' harm."); *Alexander Binzel Corp. v. Nu-Tecsys Corp.*, No. 91 C 2092, 2000 WL 310304, at *13 (N.D. Ill. Mar. 24, 2000) ("Under the Lanham Act, an award of the wrongdoer's profits must bear some relationship to the unlawful conduct—e.g., grounded in the benefit accruing to Binzel U.S. on account of its unlawful conduct.").[11]

---

[11] Notably, the Fourth Circuit has instructed generally that "[i]n determining damages under the Lanham Act, [15 U.S.C. § 1125,] the plaintiff bears the burden of proving a causal connection between its harms and the defendant's profits." *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285–86 (4th Cir. 2003), *abrogated on other grounds*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010). This causation requirement is the same as the requirement that Walmart's profits be "attributable to" the use of the alleged infringing trademark.  Thus, consideration of what amount (if any) of a defendant's profits are attributable to its alleged infringement is required in determining disgorgement of profits in the trademark infringement context.

**B.  THE JURY MUST CONSIDER WHETHER WALMART'S SALES ARE ATTRIBUTABLE TO WALMART'S ALLEGED INFRINGEMENT BEFORE A REASONABLE ROYALTY CAN BE AWARDED**

Any award of a reasonable royalty must be rationally related to the scope of the infringement. *See e.g.*, *Streamline Prod. Sys.*, 851 F.3d at 461 ("A royalty-based damages award must be rationally related to the scope of the defendant's infringement."); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 920 (Fed. Cir. 1984) ("[any royalty-based measure of damages must exhibit a strictly rational correlation between the rights appropriated and the measure of damages applied."); *see also Badger Meter*, 13 F.3d at 1157 ("Items alleged as either unjust enrichment to the defendant or damages suffered by the plaintiff must, of course, have been caused by the infringement itself.").  As such, Variety can be entitled to a reasonable royalty only if it can establish a causal link between Walmart's sales and its alleged infringement.  *See id.*

*Streamline Production Systems* is particularly instructive.  There, the Fifth Circuit overturned the jury's reasonable royalty award because of a dearth of evidence linking the jury's royalty award to the defendant's infringement.  851 F.3d at 461.  In particular, the court noted that the plaintiff's expert never addressed the portion of the defendant's profits that were attributable to its infringing use, that the jury had expressly found that the plaintiff had failed to prove that it was entitled to any of the defendant's profits that were "directly attributable to" the infringing use, and that the jury had further found that the total profit that the defendant earned through its infringing use was zero.  *Id.*  The court found that these findings were in tension with jury's royalty award "which must be rationally correlated to [the defendant's] infringement." *Id.*

Here, like in *Streamline Production Systems*, Variety should not be entitled to a reasonable royalty unless it first establishes a causal link between Walmart's sales and its alleged infringement.  Accordingly, the jury must determine whether Walmart's sales are attributable to its alleged infringement before a reasonable royalty can be awarded.

## VI.  IN CALCULATING PROFITS (IF ANY), WALMART'S COSTS MUST BE DEDUCTED

Under the Lanham Act, any profits awarded must be reduced by the defendant's costs.  *See*

*JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 28 Fed. App'x 207, 216 (4th Cir. 2002) ("The

plain language of the [Lanham] Act clearly indicates that a defendant's 'profits' are to be

calculated by reducing the amount of the defendant's 'sales' by appropriate 'elements of cost or

deduction'").   Once the plaintiff establishes the defendant's sales, the "defendant must prove all

elements of cost or deduction claimed."  15 U.S.C. § 1117(a).  In *JTH*, the Fourth Circuit held that

a district court abused its discretion by failing to consider evidence of the defendant's costs. 28

Fed. App'x at 216 ("The district court, while purporting to enter an award of [the defendant's]

'profits,' inexplicably neglected to address [the defendant's] evidence of costs, awarding [the

defendant's] gross revenues instead.").

At trial, Walmart will present evidence of the following costs, all of which should be

deducted from its revenues:

- **Cost of Goods Sold**.  *See Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 585 (5th Cir. 1980) (deduction allowed for costs of goods sold); *Muhler Co. v. Window World of N. Charleston LLC*, No. 2:11-Civ-00851, 2014 WL 4269078, at *7 (D.S.C. Aug. 28, 2014) (taking into account defendants' profit margin).  ***Variety does not dispute that Walmart is entitled to deduct its costs of goods sold***. DE 326 at 344:17–22 (Testimony of Variety expert  J.C. Poindexter that it is proper to deduct cost of goods from gross revenue to determine profits, and Variety did so in this case).  Variety agreed that these costs should be deducted to arrive at an incremental profit available for disgorgement. *Id.* at 369:3–4 (Testimony of Variety expert J.C. Poindexter stating his agreement that Walmart is entitled to deduct its cost of goods sold).

- **Shipping Costs**.  *See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 295 (S.D.N.Y. 2009) (finding shipping is appropriate for deduction because defendant "obviously must have borne the expense of shipping the [infringing] goods from a warehouse to stores"); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 7 (2d Cir. 1989) (allowing deduction of shipping costs).  Variety previously agreed that shipping costs are variable and subject to deduction to arrive at an incremental profit available for disgorgement. DE 326 at 369:22–370:1 (Testimony of Variety expert

27

J.C. Poindexter stating his agreement that, on a conceptual level, Walmart is entitled to deduct shipping charges to arrive at an incremental profit figure).

- **Allocable Overhead/ Selling, General, and Administrative Costs ("SG&A Costs")**. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) (finding that district court did not err in allowing deduction of allocable overhead); *see also New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 303–04 (S.D.N.Y. 2001) (deducting expenses including direct selling, sales support, shipping, administrative, taxes, and other general expenses); *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 665 (2d Cir.1970) (allowing deduction of overhead and operating expenses); *A & M Records, Inc. v. Abdallah*, 948 F. Supp. 1449, 1459 (C.D. Cal. 1996) (estimating defendant's operating costs and expenses to be 50% and deducting that amount); *Tamko Roofing Prod., Inc. v. Ideal Roofing Co.*, No. 99-Civ-388, 2000 WL 1745078, at *3 (D.N.H. Oct. 19, 2000), *aff'd*, 282 F.3d 23 (1st Cir. 2002) ("[Defendant] must have incurred some costs in selling the infringing product …. The court therefore estimates that [Defendant's] deductible costs amount to 60%...."). Variety previously agreed that portions of SG&A costs may be variable. DE 326 at 370:12–18 (Testimony of Variety expert J.C. Poindexter stating his agreement that portions of SG&A costs may be variable). But Variety has disputed the amount of Walmart's overhead consisting of SG&A that should be deducted.[12]

---

[12] Variety previously contended that only a proportionate portion of SG&A consisting of variable costs, i.e., those costs that vary depending on the number of units of a product that are sold, can be deducted. Variety also previously argued that fixed costs, which do not vary depending on the volume of product sold, cannot be deducted. DE 325 at 87:1–23; DE 326 at 354:6–361:3. Under the law, however, both variable and fixed costs can be deducted in determining the amount of net profits that are attributable to the use of the trademark. In *Polo Fashions*, 816 F.2d 145, the Fourth Circuit upheld the district court's decision to deduct the infringer's total costs, including allocable fixed overhead, in calculating net profits. *Id.* at 149. Allowing a deduction for overhead and fixed costs, known as the "full absorption rule," is also the rule applied by courts in the Second, Sixth, Eighth, and Ninth Circuit Courts of Appeal. *Warner Bros., Inc. v. Gay Toys, Inc.*, 598 F. Supp. 424, 428–29 (S.D.N.Y. 1984); *Design Res., Inc. v. John Wolf Decorative Fabrics*, No. 83-Civ-7606 (CBM), 1985 WL 2445, at *9–10 (S.D.N.Y. Sept. 5, 1985); *Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166, 1171–75 (6th Cir. 1980) (affirming deduction of two-thirds of fixed costs as reasonable for calculating infringer's profits); *Levin Bros. v. Davis Mfg. Co.*, 72 F.2d 163, 166 (8th Cir. 1934) (patent case; affirming decision to include fixed overhead); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514–16 (9th Cir. 1985) (copyright case; portion of infringer's fixed overhead may properly be deducted from gross revenues to arrive at profits) (citing *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331 (9th Cir. 1984)); *Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 566 (2d Cir. 1994), *overruled on other grounds by overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (upholding formula that resulted in deduction of 26.89 percent of revenue for expenses such as rent, advertising, payroll, shipping and store supplies as proper, noting that "absolute certainty . . . is not required.").

"[T]here is no hard and fast rule for determining which items of expense or loss are to be offset against sales or profits; in each case the trial court must determine which elements of cost or loss

o **Taxes**.  *See New Line Cinema Corp.* 161 F. Supp. 2d at 303–04 (S.D.N.Y. 2001) (allowing deduction of taxes); *Manhattan Indus.*, 885 F.2d at 7 (same); *W.E. Bassett*, 435 F.2d at 665 (same); *Aladdin Mfg. Co. v. Mantle Lamp Co. of Am.*, 116 F.2d 708, 714 (7th Cir. 1941) (same).  Variety previously agreed that taxes are variable and subject to deduction to arrive at an incremental profit available for disgorgement. DE 326 at 370:7–11 (Testimony of Variety expert J.C. Poindexter indicating his agreement that, on a conceptual level, Walmart is entitled to deduct taxes to arrive at an incremental profit figure).

## VII.  VARIETY CANNOT CLAIM ANY RELIEF UNDER THE UDTPA BECAUSE IT CANNOT SHOW THAT WALMART'S ALLEGED CONDUCT CAUSED IT TO SUFFER ANY ACTUAL DAMAGES

Variety has apparently waived any claim to relief under the UDTPA because it did not include it in either its proposed jury instructions or verdict form.  DE 438, 439.  But even if the claim is still live, Variety is not entitled to any relief under the UDTPA because it cannot prove causation or any "actual damages."

The UDTPA provides that a party injured by a violation of the statute "shall have a right of action ***on account of such injury done***."  N.C. Gen. Stat. § 75-16 (emphasis added).  A plaintiff must thus show that it suffered an actual injury, and that the defendant's conduct caused that injury. *Strates Shows, Inc. v. Amusements of Am., Inc.*, 646 S.E.2d 418, 425 (N.C. Ct. App. 2007) (noting that the UDTPA requires "a showing that the plaintiff suffered an actual injury, and that the defendant's improper, or illegal conduct was a cause in fact of the plaintiff's injuries").  The

---

it is fair to allow defendant to offset."  *Hospitality Int'l v. Mahtani*, No. 2:97-CV-87, 1998 WL 35296447, at *9–10 (M.D.N.C. Aug. 3, 1998) (quoting *Jones Apparel Grp., Inc. v. Steinman*, 466 F. Supp. 560, 563 n.4 (E.D. Pa. 1979) (exercising "wide scope of discretion" to hold 25% of gross sales as "reasonable determination" of defendant's net profits even though defendant produced no evidence of any deductible expenses because defendant "surely had expenses")).  Courts in the Fourth Circuit have reduced gross profits by as much as 75% to "make it more likely" that a plaintiff recovers the defendant's net profits, rather than gross revenue, because failing to do "would almost certainly penalize" a defendant instead of compensate the plaintiff.  *Choice Hotels Int'l, Inc. v. Zeal, LLC*, No. 4:13-CV-01961-BHH, 2016 WL 4055023, at *7 (D.S.C. July 29, 2016) (reducing amount awarded by 50%); *see also Muhler*, 2014 WL 4269078, at *7 (using a 50% profit margin to award plaintiff defendant's profits, rather than the gross revenue, finding such amount to be "just, according to the circumstances of the case" (quoting 15 U.S.C. § 1117(a))).

plaintiff bears the burden of proving causation and damages. *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 356 S.E.2d 578, 586 (N.C. 1987) (noting that the plaintiff bears the burden of establishing damages for UDTPA claims). As the court explained in *SAS Institute, Inc. v. World Programming Ltd.*, the "measure of damages [under the UDTPA] should further the statute's purpose, 'to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.'" No. 5:10-CV-25-FL, 2015 WL 5227801 at *2 (E.D.N.C. Sept. 8, 2015) (quoting *Phillips v. Chesson*, 231 N.C. 466, 571 (1950)).

As set forth in Walmart's Motion *in Limine* to Exclude Any Evidence Concerning Monetary Remedies Other Than a Reasonable Royalty or Disgorgement of Profits Based on Unjust Enrichment (DE 407), Variety has not disclosed ***any*** factual or legal bases to support a claim that it has suffered lost sales, loss of goodwill, or any other "actual damages" as a result of Walmart's alleged conduct.[13] Instead, Variety seeks disgorgement of Walmart's profits and a reasonable royalty. Neither of those monetary remedies is based on any actual damages suffered by Variety.

With respect to Walmart's profits, Variety affirmatively disclaimed that it was seeking Walmart's profits as a proxy for its actual damages and is seeking Walmart's profits as purely equitable relief. *See* DE 177 at 2–4, 7 ("Variety is disclaiming and expressly not seeking Walmart's profits as a proxy for Variety's actual damage."). Because Variety is not seeking Walmart's profits as a measure of its actual damages, it is not entitled to recover Walmart's profits under the UDTPA.

Likewise, the reasonable royalty that Variety is seeking is not a measure of its actual damages. Here, Variety has never licensed any trademarks to Walmart, nor is there any evidence

---

[13] As a result, any evidence concerning theories of monetary relief other than a reasonable royalty or disgorgement based on unjust enrichment should be excluded. *See id.*

that Variety ever licensed any of its alleged trademarks to any third parties. Moreover, there is no evidence that Variety would have considered licensing its alleged trademarks to Walmart or any third parties. There is thus no evidence that Variety has suffered any actual injury in the form of lost royalties as a result of Walmart's alleged conduct.

In trademark cases, an award of a reasonable royalty as actual damages ". . . is generally limited to situations where the parties have had a trademark licensing relationship that facilitates computation of a reasonable royalty[,]" such as where there was a ". . . continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated," (i.e., where there was evidence to support the fact that previous licensing negotiations occurred between the parties with regard to the trademark in question and evidence to support the claimed royalty rate). *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 2006 WL 1359955, at * 4 (S.D.N.Y. May 18, 2006) (quoting *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208–09 (3d Cir. 1999)); *Hospitality Int'l*, 1998 WL 35296447 at * 12 (upholding an award of damages based on a reasonable royalty where the royalty rates were already established and contracted for in a franchise agreement between the parties); *Clear Blue, Inc. v. Clear!Blue, Inc.*, No. 3:07-CV-00339-W, 2008 WL 5232897, at *5 (W.D.N.C. Dec. 12, 2008) (consideration of a reasonable royalty was proper given evidence of prior license negotiations between parties); *Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*, No. 3:08-CV-573, 2009 WL 5876245, at *2–4 (E.D. Va. July 23, 2009) (royalty improper with no history of licensing). In those cases, the plaintiff's actual damages were measured by the amount of royalty payments that the defendant failed to make to the plaintiff because, but for the infringement, the plaintiff would have earned the royalty. *See id.* Here, there are no facts supporting a "lost" royalty, only a claim for a royalty

based on a hypothetical license that never existed and, the evidence shows, would never have existed.

Because Variety cannot prove causation or any "actual damages," it is not entitled to any recovery under the UDTPA.

## VIII.   TREBLING OF WALMART'S PROFITS OR A REASONABLE ROYALTY IS NOT PERMITTED UNDER THE UDTPA OR THE LANHAM ACT

Variety has previously taken and continues to take the position that it is entitled to treble any amount awarded as a reasonable royalty or ordered disgorged pursuant to the UDTPA and the Lanham Act. *See* DE 158 at 6; DE 341 at 17–19; DE 396 at II.A.1.k–l. But even if it is found that an award of a reasonable royalty or disgorgement of profits is appropriate, Variety is not entitled to trebling under either statute.

### A.   TREBLING OF WALMART'S "DISGORGED PROFITS" OR A REASONABLE ROYALTY AWARD IS NOT PERMITTED UNDER THE UDTPA

As explained above, Variety is not entitled to any monetary remedies under the UDTPA because it cannot show that it has suffered any injury. *See* discussion *supra* Part VII. But even if Variety could show an actual injury, trebling of Walmart's profits or a reasonable royalty award is not permitted under the facts of this case. Section 75-16 provides that a plaintiff injured by a violation of the statute has a right of action on account of that injury, "and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." N.C. Gen. Stat. § 75-16. The UDTPA thus provides for trebling of "damages," not of monetary remedies awarded under an equitable theory. *See First S. Bank v. Fifth Third Bank NA*, 631 F. App'x 121, 126 (4th Cir. 2015) ("[A] damage award is what is necessary to receive an award of treble damages under the UDTPA."); *Winant v. Bostic*, 5 F.3d 767, 776 (4th Cir. 1993) ("By the terms of § 75–16, only 'if damages are assessed' is the amount

trebled. Because damages were *not* assessed, but rescission elected, we conclude the amount should not have been trebled."); *SAS Inst.*, 2015 WL 5227801, at *2.

In *SAS Institute*, the court separately addressed whether lost profits could be awarded, and therefore trebled, under the UDTPA. The court explained that "[t]he measure of damages should further the statute's purpose, 'to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.'" *Id.* (quoting *Phillips*, 231 N.C. at 571). Thus, a UDTPA recovery based on a defendant's profits could only be appropriate if those profits were a rough measure of the plaintiff's damages, or a proxy for the plaintiff's damages. *Id.*

Here, the law is clear that Variety is not entitled to treble Walmart's profits under the UDTPA. Variety expressly disclaimed a "proxy" theory as a basis for disgorgement, and is seeking Walmart's profits as purely equitable relief. *See* DE 177 at 2 ("Variety is disclaiming and expressly not seeking Walmart's profits as a proxy for Variety's actual damage.").[14] Because Variety concedes that Walmart's profits are not a proxy for its damages, Variety is not entitled to treble Walmart's disgorged profits under the UDTPA.[15]

Similarly, Variety is not entitled to treble the reasonable royalty that it seeks because it cannot establish that it has suffered any harm in the form of lost royalty payments (or otherwise). As explained above (*supra* Part VII), an award of a reasonable royalty in trademark cases is

---

[14] As set forth in Walmart's Motion *in Limine* to exclude any evidence concerning monetary remedies other than a reasonable royalty or disgorgement of profits based on unjust enrichment, Variety may only seek disgorgement under a wholly equitable unjust enrichment theory. DE 407.

[15] Although Variety has previously argued that two decisions, *Polo Fashions*, 816 F.2d at 145, and *Belk, Inc. v. Meyer Corp.*, 679 F.3d 148 (4th Cir. 2012), have allowed for the trebling of a defendant's disgorged profits, the basis of the trebling in those cases was that the defendants' profits served as a proxy for the plaintiffs' actual damages. *See Polo Fashions*, 816 F.2d at 149; *Belk*, 679 F.3d at 164–65. That is not the case here.

generally limited to situations in which the parties had a previous trademark licensing relationship. *See, e.g.*, *Juicy Couture*, 2006 WL 1359955, at *4 (citing *A&H Sportswear*, 166 F.3d at 208–09. In those cases, the plaintiff's actual damages can be measured by the amount of royalty payments that the defendant failed to make because, but for the infringement, the plaintiff would have earned the royalty. Here, Variety has never licensed any trademarks to Walmart, nor is there any evidence that Variety ever even considered licensing any of its alleged trademarks to Walmart or any third parties. As such, Variety cannot show that it has suffered an actual injury in the form of lost royalties, and thus the reasonable royalty that is seeks is not a measure of its actual damages. Accordingly, trebling of a reasonable royalty award or Walmart's profits is not permitted under the UDTPA.

### B. NO DAMAGES MAY BE AWARDED UNDER N.C. GEN. STAT. § 75-16 FOR CONDUCT OCCURRING OUTSIDE OF NORTH CAROLINA

Even if Variety were awarded damages under the UDTPA, it would not be entitled to recover damages under the statute for conduct occurring outside North Carolina. As courts in this jurisdiction and elsewhere recognize, giving extraterritorial reach to the UDTPA and its treble damages penalty would violate the Due Process and Commerce Clauses of the United States Constitution. *See Am. Rockwool, Inc. v. Owens-Corning Fiberglass Corp.*, 640 F. Supp. 1411, 1436–37 (E.D.N.C. 1986) (applying North Carolina's treble damages penalty to conduct outside the state did "not comport with due process requirements" and "would also place a significant burden upon a company engaged in interstate commerce to determine the magnitude of its potential liability for multi-state conduct," thus imposing a "not incidental" burden on interstate commerce); *Se. Coastal Dev. Fund, LLC v. Commercial Real Estate Inc.*, No. 5:08-CV-15-F, 2009 WL 928543, *12 (E.D.N.C. April 3, 2009) (same).

The basis for this rule is that "no law has any effect, of its own force, beyond the territorial limits of the sovereignty from which its authority is derived." *Gen. Elec. Capital Corp. v. Renew*, 122 F. App'x 604, 607 (4th Cir. 2004) (quoting *Ex Parte First Pa. Banking and Trust Co.*, 148 S.E.2d 373, 374 (S.C. 1966)). "The Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Edgar v. MITE Corp.*, 457 U.S. 624, 642–43 (1982) (invalidating Illinois statute as a "direct restraint on interstate commerce" and having a "sweeping extraterritorial effect"); *see also S. Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 775–83 (1945) (striking down state law where the "practical effect of such regulation is to control [conduct] beyond the boundaries of the state"); *Shafer v. Farmers' Grain Co. of Embden*, 268 U.S. 189, 199 (1925) ("[A] state statute which by its necessary operation directly interferes with or burdens such commerce is a prohibited regulation and invalid, regardless of the purpose with which it was enacted.").

Thus, the Court should reject any argument by Variety that the UDTPA has effect beyond North Carolina.

### C. TREBLING OF WALMART'S "DISGORGED PROFITS" OR A REASONABLE ROYALTY AWARD IS NOT PERMITTED UNDER THE LANHAM ACT

It is well-settled that trebling under Section 1117(a) is available only in connection with actual damages. *See Ga.-Pac.*, 781 F.3d at 718. A recovery based on a defendant's profits under an unjust enrichment theory, as distinguished from a recovery based on actual damages, is thus not authorized by the Lanham Act. *See id.* at 718–19 ("[A]warding treble damages . . . are punitive and are not authorized by § 1117(a) for a recovery based on profits."). Likewise, a reasonable royalty award that is not a measure of the plaintiff's actual damages should not be subject to trebling. *C.f. id.* at 718 (noting that Section 1117(a) only permits trebling of actual damages).

35

Because Variety may only seek disgorgement based on a theory of unjust enrichment—not as a proxy for actual damages—and the reasonable royalty award that it seeks is not a measure of its actual damages, Variety is not entitled to a trebled recovery under the Lanham Act.

Respectfully submitted,

Dated:  October 15, 2018

/s/Mark S. Puzella
Mark S. Puzella (admitted pro hac vice)
R. David Hosp (admitted pro hac vice)
Sheryl K. Garko (admitted pro hac vice)
FISH & RICHARDSON, P.C.
One Marina Park Drive
Boston, Massachusetts 02210
Telephone: 617-521-7043
Facsimile: 617-542-8906
E-mail: puzella@fr.com
hosp@fr.com
garko@fr.com

Elizabeth E. Brenckman (admitted pro hac vice)
FISH & RICHARDSON, P.C.
601 Lexington Avenue, 52nd Flr.
New York, New York 10022
Telephone: 212-641-2305
Facsimile: 212-258-2291
E-mail: brenckman@fr.com

Kirsten E. Small (NC Bar No. 37057)
NEXSEN PRUET
55 E. Camperdown Way
Suite 400
Greenville, South Carolina 29601
Telephone: 864-370-2211
Facsimile: 864-282-1177
E-mail: ksmall@nexsenpruet.com

**Attorneys for Defendant Walmart Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 15th day of October, 2018.

/s/Mark S. Puzella

Mark S. Puzella