IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-217-BO

VARIETY STORES, INC.,                )
                                     )
    Variety,                     )
                                     )
v.                                   )        O R D E R
                                     )
WAL-MART INC.,                       )
                                     )
    Walmart.                     )

This matter comes before the Court on plaintiff's motion for a jury trial on profits and
damages [DE 484], defendant's renewed motion for judgment as a matter of law [DE 492],
defendant's motion for a new trial [DE 495], and defendant's motion for a certificate of
appealability under 28 U.S.C. § 1292(b) [DE 498]. All have been fully briefed and are ripe for
disposition. For the reasons discussed below, plaintiff's motion for a jury trial on profits and
damages [DE 484] is GRANTED, defendant's renewed motion for judgment as a matter of law
[DE 492] is DENIED, defendant's motion for a new trial [DE 495] is DENIED, and defendant's
motion for a certificate of appealability [DE 498] is DENIED.

## BACKGROUND

Variety Stores, Inc. initiated this action in April 2014, alleging that Walmart Inc. had
infringed upon Variety's THE BACKYARD, BACKYARD, and BACKYARD BBQ trademarks
in Walmart's sale of products bearing the BACKYARD GRILL + Design mark. [DE 1 ¶ 33]. On
October 22–24, 2018, a jury trial on the question of liability was held in Elizabeth City, North
Carolina. [DE 476–78]. The jury returned a verdict for Variety, finding that Walmart's use of the
BACKYARD GRILL + Design mark was likely to cause confusion in connection with Variety's
marks and that Walmart had willfully infringed on Variety's marks. [DE 481].

In November, Variety moved for a jury trial on profits and damages. [DE 484]. Walmart then renewed its motion for judgment as a matter of law [DE 492], moved for a new trial on liability [DE 495], and moved for a certificate of appealability under 28 U.S.C. § 1292(b) [DE 498]. Each motion is opposed and has been fully briefed.

## DISCUSSION

### I. Walmart's renewed motion for judgment as a matter of law is denied.

Walmart moves under Federal Rule of Civil Procedure 50(b) for judgement as a matter of law. Walmart argues that Variety failed to carry its burden at trial and that, as a matter of law, each of Variety's claims fail. But Variety introduced legally sufficient evidence as to each issue that Walmart raises and, as such, judgment as a matter of law is not appropriate.

Rule 50(b) provides that, upon a party's renewed motion for judgment as a matter of law after the denial of such a motion during trial, a court may (1) allow judgment on the verdict, (2) order a new trial, or (3) direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). A court may grant a motion for judgment as a matter of law if it finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party. Fed. R. Civ. P. 50(a)(1). "[W]hen a jury has returned its verdict, a court may grant judgment as a matter of law only if, viewing the evidence in a light most favorable to the non-moving party and drawing every legitimate inference in that party's favor, the court determines that the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Saunders v. Branch Banking And Tr. Co. of VA*, 526 F.3d 142, 147 (4th Cir. 2008) (citing *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). A court is not permitted to weigh the evidence or evaluate the credibility of the witnesses when deciding a Rule 50(b) motion. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 196 (4th Cir. 2017).

Viewing the evidence developed at trial in the light most favorable to Variety, the Court is not persuaded that no reasonable juror could have found in Variety's favor. Walmart makes four principal arguments in support of its motion. First, Walmart argues that Variety failed to prove that it owned the BACKYARD and BACKYARD BBQ marks and further failed to prove that those marks were valid. Second, Walmart argues that Variety failed to prove that its registered mark, THE BACKYARD, is a valid and protectable mark when used in connection with grills and grilling accessories. Third, Walmart argues that Variety failed to prove a likelihood of confusion. Finally, Walmart argues that Variety failed to prove that any potential infringement was willful. Each of these arguments is unavailing. Sufficient evidence was introduced at trial to demonstrate that BACKYARD and BACKYARD BBQ are valid common-law trademarks and that Variety owns them. Variety also introduced sufficient evidence to establish a likelihood of confusion and to establish willful infringement. As a result, judgment as a matter of law is inappropriate.

To establish ownership and validity of a trademark, Variety must show that it uses that trademark in commerce and that the trademark is capable of protection. *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009). To be capable of protection, a trademark must be either inherently distinctive or it must have acquired some secondary meaning. *OBX-Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 339–40 (4th Cir. 2009). THE BACKYARD is registered with the U.S. Trademark Office and is, therefore, incontestable. An incontestable mark's registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. §§ 1065; 1115. "[I]ncontestability provides a strong presumption in favor of the mark's predictability and validity." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006) (internal quotation marks omitted).

Walmart challenges the validity of Variety's common law marks, BACKYARD and BACKYARD BBQ. In particular, Walmart argues that Variety did not establish at trial that it uses BACKYARD and BACKYARD BBQ in commerce because the offered testimony focused on examples of products marked THE BACKYARD. At the heart of this dispute is the word "the" appended to the front of the mark. But Walmart's effort to sever THE BACKYARD, the registered mark, from BACKYARD and BACKYARD BBQ, the common law marks, is misguided. Lack of registration is not fatal to Variety's case, as "[a]ctual use of most kinds of trademarks, without more, establishes protectable trademark rights under common law. The right to a trademark comes from its use." 1–3 Gilson on Trademarks § 3.02 (2015). Indeed, "all ownership rights in a mark flow from its prior use." *See Humanoids Grp. v. Rogan*, 375 F.3d 301, 305 n.3 (4th Cir. 2004); *see also Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 335 (1st Cir. 2004) ("Trademark rights may arise under either the Lanham Act or under common law, but in either circumstance, the right is conditioned upon use in commerce."). Viewing the evidence in the light most favorable to Variety, the Court cannot say that *no reasonable jury* would have determined that Variety had introduced sufficient evidence to establish at common law its ownership of valid trademark rights in BACKYARD and BACKYARD BBQ.

Further, the Fourth Circuit has previously found that a registered mark creates broad protection that, in this case, can and does extend to BACKYARD and BACKYARD BBQ and their use (as well as THE BACKYARD's use) in selling grills and grilling accessories. *See Synergistic*, 470 F.3d at 173. Walmart's argument that all three marks should be viewed narrowly as applying only to lawn and garden supplies is unavailing. In *Synergistic*, the Fourth Circuit found that a valid trademark protected its owner against "use of a similar trademark for similar services." *Id*. Variety's trademarks are entitled to similarly broad protection here. Accordingly, viewing the

evidence in the light most favorable to Variety, the testimony and exhibits Variety offered were sufficient to establish validity and Variety's ownership of the common law BACKYARD and BACKYARD BBQ marks, including in connection with grills and grilling accessories.

Walmart also argues that Variety failed to introduce sufficient evidence to establish that Walmart's use of the BACKYARD GRILL + Design mark was likely to cause confusion with Variety's use of its registered mark, THE BACKYARD, or its common law marks, BACKYARD and BACKYARD BBQ. There are nine factors to consider in making a likelihood-of-confusion determination: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018) (citing *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017)). Of those nine factors, the Fourth Circuit felt that five favored Variety, and the parties introduced limited evidence as to those five factors; ultimately, the jury was instructed to consider all nine factors. The remaining factors—the strength or distinctiveness of plaintiff's mark, the similarity of the two marks to consumers, the defendant's intent, and actual confusion—were disputed, but Variety introduced sufficient evidence for a reasonable jury to determine that Walmart's use of BACKYARD GRILL + Design was likely to cause confusion. Judgment as a matter of law is inappropriate.

Walmart argues that, in light of the Fourth Circuit's view that Variety's marks were "conceptually weak," *Variety Stores*, 888 F.3d at 661, Variety did not introduce legally adequate evidence to prevail on the first factor. Commercial strength depends upon "(1) advertising

5

expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Grayson O*, 856 F.3d at 316. As the Court instructed the jury, this case involves both forward confusion and reverse confusion. Forward confusion involves consumers mistakenly thinking that a BACKYARD GRILL + Design product is connected to Variety. Reverse confusion involves consumers mistakenly thinking that Walmart owns the BACKYARD marks.

At trial, Variety introduced evidence of advertisements it produced to promote BACKYARD-branded products, including grills and grill accessories, and spent over \$40 million producing such advertisements. Variety presented evidence of at least two large retailers who had attempted to plagiarize the mark, but had stopped after being contacted by Variety. Variety also introduced evidence of over \$64 million in sales of BACKYARD-branded products, which it had been selling for decades. Further, for reverse confusion purposes, evidence of Walmart's sale of over one hundred million units of BACKYARD-branded goods, for a total of nearly \$1 billion in sales, is relevant. Taken together, and viewing this evidence in the light most favorable to Variety, it is clear that Variety introduced sufficient evidence for a reasonable jury to find that THE BACKYARD, BACKYARD, and BACKYARD BBQ were commercially strong trademarks.

As to the second factor, the similarity of the marks, Walmart argues that Variety failed to introduce sufficient evidence to establish that the disputed marks are similar. The Fourth Circuit said that "reasonable minds may differ on whether they find Walmart's and Variety's marks similar so as to conclude there exists a likelihood of confusion between the two marks." *Variety Stores*, 888 F.3d at 664. The evidence introduced at trial was the same evidence before the Fourth Circuit. Clearly, if reasonable minds could differ as to whether the marks were similar, judgment

as a matter of law is not appropriate; the Court cannot say that *no reasonable jury* would find the marks similar for likelihood-of-confusion purposes.

Walmart attempts to list differences in the way the BACKYARD marks are used on the parties' respective goods. But, despite the undisputed presence of some differences, there was ample evidence introduced at trial for a reasonable jury to conclude the marks were similar. Further, the Fourth Circuit "has reasoned that the marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks" when evaluating the similarity of two marks. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Here, the dominant portion of each mark—BACKYARD—is identical. Given this, the Court cannot conclude that, as a matter of law, Variety failed to carry its burden of establishing similarity. It must be further noted, though it perhaps goes without saying, that Variety need not prevail on each factor individually in order to survive Walmart's renewed motion for summary judgment; even if a reasonable jury could have found that Walmart prevailed on the second factor, or any other factors, the likelihood-of-confusion inquiry is holistic and the nine factors must be weighed collectively.

Walmart next argues that Variety did not introduce sufficient evidence to prevail on the sixth factor, the defendant's subjective intent. But the Fourth Circuit previously noted that the testimony of Ms. Dineen "could support an intent to infringe," as "[b]ad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark." *Variety Stores*, 888 F.3d at 665 (quoting *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 389 (2d Cir. 2005)). The jury was provided with portions of Ms. Dineen's deposition testimony. That testimony, coupled with Ms. Dineen's trial testimony and the rest of the evidence that Variety provided,

viewed in the light most favorable to Variety, is enough that a reasonable jury could have concluded that Walmart had intended to infringe.

Walmart's final argument as to the likelihood-of-confusion analysis is that Variety introduced no evidence of actual confusion. Walmart argues that this seventh factor is so essential as to be effectively dispositive, citing the Fourth Circuit's statement that actual confusion is "often paramount in the likelihood of confusion analysis." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006). But a finding of actual confusion is not necessary. *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 263 (4th Cir. 2007) ("[I]t is well established that no actual confusion is required"); *API v. Cooper*, 718 F.3d 347, 363 (4th Cir. 2013) ("[L]ack of evidence of actual existing consumer confusion is beside the point. As we observed above, proof of actual confusion is unnecessary") (internal quotation marks omitted); *Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308, 313 (4th Cir. 2010) ("[T]he absence of such proof [of actual confusion] does not preclude a party from proving a likelihood of confusion based on a compilation of other evidence"); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014) (noting that "actual confusion is generally considered to be the most important factor" but also finding that "the factors are weighed differently depending on the circumstances of the cases") (internal quotation marks omitted). While Walmart introduced evidence purporting to show no actual confusion—evidence that Variety attempted to rebut—the fact that Variety did not introduce evidence of actual confusion would not, without more, entitle Walmart to judgment as a matter of law on the likelihood-of-confusion issue.

A plaintiff can show actual confusion in two ways: (1) by showing that there are actual consumers in the marketplace who reported their confusion or (2) by conducting consumer surveys using standard protocols that replicate market conditions and demonstrate that consumers

presented with the marks at issue are actually confused. *See Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 660–61 (4th Cir. 1996). Walmart introduced two consumer surveys that it claimed demonstrated no actual confusion; Variety introduced no surveys. But the Fourth Circuit left up to the jury how much weight to afford Walmart's consumer surveys. *Variety Stores*, 888 F.3d at 666. Variety called an expert witness who testified that the surveys were fundamentally flawed and that, moreover, they showed at least some level of confusion. On the basis of this evidence, a reasonable jury could conclude that there was some actual confusion. At a minimum, viewing the evidence in the light most favorable to Variety, the Court cannot say that *no reasonable jury* could have found actual confusion. As such, given the nine factors used in weighing likelihood of confusion, Variety presented legally adequate evidence for a reasonable jury to find such a likelihood.

Walmart's fourth and final argument in support of its renewed motion for judgment as a matter of law is that Variety did not present legally adequate evidence from which a reasonable jury could conclude there was willful infringement. In particular, Walmart argues that there is no willful infringement unless Walmart acted with the specific intent to infringe Variety's protected marks. For support, Walmart relies on *Georgia–Pacific Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710 (4th Cir. 2015), where the Fourth Circuit said that "'willful' does not mean that the defendant's actions were merely volitional, but rather that the defendant acted *with the intent to infringe* the plaintiff's protected mark." 781 F.3d at 719 (emphasis in original). But *Georgia–Pacific* was concerned with intent to infringe as opposed to lesser intentional conduct: intent to advertise, intent to sell products bearing a particular trademark, and so on. Here, it was enough for Variety to show that this was an "exceptional" case in which the infringer acted in bad faith. *See Georgia–Pacific*, 781 F.3d at 720 (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572

U.S. 545, 134 S. Ct. 1749, 1757 (2014)). The Fourth Circuit clearly stated that bad faith could be found on the basis of Ms. Dineen's testimony, which was presented to the jury. *Variety Stores*, 888 F.3d at 665. Thus, Variety has presented adequate evidence from which a reasonable jury could determine that Walmart acted intentionally and in bad faith and that this was an "exceptional" case in which a finding of willful infringement was appropriate.

Viewing the evidence in the light most favorable to Variety, and drawing every legitimate inference in Variety's favor, the Court concludes that Variety introduced legally sufficient evidence as to each of the challenged elements of its infringement claim such that judgment as a matter of law under Rule 50 is inappropriate. Walmart's renewed motion is, therefore, denied.

## II. Walmart's motion for a new trial is denied.

Walmart moves for a new trial under Federal Rule of Civil Procedure 59(a). Walmart identifies eight independent grounds for a new trial, arguing that it was unfairly prejudiced by erroneous rulings and jury instructions at trial and that the jury's verdict as to infringement and willfulness was against the weight of the evidence. Variety responds that there was no prejudicial error and the verdict was supported by the evidence.

A motion for new trial should be granted where "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir.1996); *see also Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). A court is permitted to weigh the evidence and consider the credibility of the witnesses when deciding a motion for new trial. *Cline*, 144 F.3d at 301. When a new trial is sought on the basis of error in the jury charge, "[i]nstructions will be considered adequate if construed as a whole, and in light of the

10

whole record, [they] adequately [informed] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 191 (4th Cir. 2003) (citation and quotation marks omitted).

Walmart alleges that a new trial is warranted for eight reasons: (1) because the Court incorrectly instructed the jury that Variety's common law marks, BACKYARD and BACKYARD BBQ, are valid as a matter of law; (2) because the Court incorrectly instructed the jury to determine the similarity of the parties' marks and Walmart's intent based solely on Walmart's use of "BACKYARD"; (3) because the Court failed to properly instruct the jury on the issue of willful infringement; (4) because the Court gave the jury instructions that were "markedly different" than the instructions discussed during the charge conference [DE 496, p. 10]; (5) because the Court improperly ruled at the start of the liability trial that five of the nine likelihood-of-confusion factors favored Variety; (6) because the Court improperly allowed Variety to seek an adverse inference based on Walmart's privileged communications with counsel; (7) because the Court improperly allowed Variety to introduce evidence of Walmart's revenue outside the relevant geographical area; and (8) because the jury's verdict on infringement and willfulness is against the clear weight of the evidence. Variety responds in opposition to each supposed ground, arguing either that the Court's rulings and instructions were correct or that Walmart was not prejudiced, and arguing that the jury's verdict was not against the clear weight of the evidence. Upon careful review of the record and the parties' arguments, the Court is not persuaded that a new trial is warranted.

First, Walmart argues that a new trial is necessary because the Court incorrectly instructed the jury that Variety's common law marks, BACKYARD and BACKYARD BBQ, are valid as a matter of law. Variety contends that the Court's instruction was correct. As discussed above, in relation to Walmart's renewed motion for judgment as a matter of law, Variety introduced

sufficient evidence for the jury to conclude that BACKYARD and BACKYARD BBQ were valid alongside the incontestable mark, THE BACKYARD. Here, Walmart's argument fails because the Court's instruction that the marks were valid as a matter of law was not dispositive. THE BACKYARD is incontestable; the validity of that mark is not in dispute. The jury verdict specified that Walmart's use of BACKYARD GRILL + Design was likely to cause confusion in connection with THE BACKYARD, BACKYARD, *and* BACKYARD BBQ. In other words, the jury determined that Walmart's conduct was infringing as to each of Variety's marks, the incontestably valid mark as well as the two common law marks. The validity of BACKYARD and BACKYARD BBQ does not matter, provided THE BACKYARD was infringed, as the jury concluded. Accordingly, there was no prejudicial error, and a new trial is not warranted.

Second, Walmart argues that a new trial is necessary because the Court incorrectly instructed the jury to determine the similarity of the parties' marks based solely on Walmart's use of "BACKYARD." But, again, Walmart has not suffered prejudice. Although the Court made reference to the short-hand "BACKYARD" on a few occasions while instructing the jury—following repeated references to Walmart's full BACKYARD GRILL + Design mark throughout the trial—the verdict form included only Walmart's full mark. Walmart argues unconvincingly that the use of "BACKYARD" in lieu of BACKYARD GRILL + Design "conveyed the wrong standard" for determining likelihood of confusion. [DE 496, p. 3]. But the clear, accurate verdict form rendered any lack of clarity on the Court's part during the instructions immaterial; the jury was properly presented with the Fourth Circuit's nine factors for determining likelihood of confusion and Walmart did not suffer any prejudicial error. No new trial is warranted.

Third, Walmart argues that a new trial is necessary because the Court failed to properly instruct the jury on the issue of willful infringement. Here, Walmart makes an argument identical

to the argument included in its renewed motion for judgment as a matter of law. In particular, Walmart relies on the Fourth Circuit's decision in *Georgia–Pacific* to argue that there is no willful infringement unless Walmart acted with the specific intent to infringe Variety's protected marks. But Walmart misconstrues *Georgia–Pacific*, which was concerned with intent to infringe as opposed to lesser intentional conduct: intent to advertise, intent to sell products bearing a particular trademark, and so on. Here, it was enough for Variety to show that this was an "exceptional" case in which the infringer acted in bad faith. *See Georgia–Pacific*, 781 F.3d at 720 (citing *Octane Fitness, LLC*, 134 S. Ct. at 1757). Just as the Court concluded above, in light of the Fourth Circuit's prior decision in this case that Variety had presented adequate evidence from which a reasonable jury could determine that Walmart acted in bad faith, the Court is persuaded that the willful infringement instruction provided at trial was proper. As such, no new trial is required.

Fourth, Walmart argues that a new trial is necessary because the Court gave the jury instructions that were "markedly different" from the instructions discussed during the charge conference. [DE 496, p. 10]. Walmart cites the Fourth Circuit's decision in *United States v. Johnson*, 600 F. App'x 872 (4th Cir. 2015), where the district court issued instructions different from those that the court had informed counsel it would issue, *and those instructions contained prejudicial errors*. [DE 496, p. 10]. Here, Walmart has not identified any specific prejudicial error contained in the instructions that the Court issued. The fact that the Court's instructions varied slightly from the instructions that Walmart was expecting does not render them prejudicial. Walmart raises two potential examples of differences: first, that the jury was instructed as to the incontestability of Variety's THE BACKYARD mark—which Walmart had already stipulated to—and, second, that the Court used the shorthand "BACKYARD" in lieu of BACKYARD GRILL + Design. But, as discussed above, the use of "BACKYARD" did not constitute prejudicial

error. The situation here is strikingly different from the situation in *Johnson*, where the Fourth Circuit found prejudicial error in the instructions that the district court ultimately gave. Walmart has not identified any prejudicial error. No new trial is warranted.

Fifth, Walmart argues that a new trial is necessary because the Court improperly ruled at the start of the liability trial that five of the nine likelihood-of-confusion factors favored Variety. The Court's view, then and now, is that the mandate rule suggests that the Court give effect to the Fourth Circuit's conclusion that five of the nine factors favor Variety. The Court expressed this view at the start of the liability trial. Despite this, the Court recognized that its prior summary judgment order was vacated and denied both parties' motions in limine. Accordingly, at no point during the trial did the Court exclude any evidence or prevent either Walmart or Variety from introducing evidence as to any of the nine factors. Further, the Court later instructed the jury to specifically consider all nine factors. After this instruction was given, Walmart's counsel specifically conceded that only four of the factors were in dispute. Nonetheless, Walmart argues that they were "*effectively* precluded from introducing evidence and challenging Variety on [the disputed] factors." [DE 508, p. 6] (emphasis added). The Court does not see how, given that no such rulings were made. Walmart did not suffer any prejudicial error and, as a result, no new trial is needed.

Sixth, Walmart argues that a new trial is necessary because the Court improperly allowed Variety to seek an adverse inference based on Walmart's privileged communications with counsel. In particular, Walmart takes issue with the Court allowing Variety to suggest that, because Walmart was claiming attorney-client privilege as to certain communications, the substance of those communications was damaging to Walmart. Indeed, Walmart filed a motion in limine to prevent Variety from suggesting such adverse inferences or eliciting testimony that it knew would

14

require Walmart to assert attorney-client privilege in front of the jury. The Court denied that motion. Critically, in a previous filing, Walmart itself argued as follows:

> The Fourth Circuit recognized that because no testimony was ever given regarding the substance or character of legal advice given to Walmart, the fact finder could draw an inference in Walmart's favor that it followed its counsel's advice and acted in good faith (as the Fourth Circuit concluded), or *the fact finder could draw an inference against Walmart that it ignored its counsel's advice and acted in bad faith* (as this Court concluded on summary judgment).

[DE 382, p. 8] (emphasis added). Walmart was correctly referencing the Fourth Circuit's explicit declaration that the jury could infer bad faith on the basis of Ms. Dineen's deposition testimony. The same portions of Ms. Dineen's testimony that were before the Fourth Circuit were then presented to the jury. The critical distinction here is from what basis the factfinder would be inferring bad faith; not from the mere fact that Walmart was invoking attorney-client privilege, as Walmart argues and as the cases it cites establish, but from the substance of what Ms. Dineen did say. Accordingly, all Variety's counsel asked in his closing argument was for the jury to draw the same adverse inferences from Ms. Dineen's deposition testimony that the Fourth Circuit had expressly recognized the jury could draw. Variety did not fall afoul of the long-standing restriction on adverse inferences drawn from the fact of a party asserting attorney-client privilege. Walmart was, therefore, not prejudiced and is not entitled to a new trial.

Seventh, Walmart argues that a new trial is necessary because the Court improperly allowed Variety to introduce evidence of Walmart's revenue outside the relevant geographical area. Walmart previously moved in limine to prevent Variety from introducing evidence of Walmart's revenues derived from geographic areas in which Variety does not sell goods. The Court denied that motion. Variety correctly argues that the Lanham Act, 15 U.S.C. § 1057(c), establishes that the trademark holder enjoys "a right of priority, nationwide in effect . . . against any other person." At the same time, the Fourth Circuit has previously held that "a court will enjoin

the junior user only if the registrant is likely to enter, or has entered, the junior user's trade territory." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 932 (4th Cir. 1995). However, at the liability phase of the proceedings, the Lanham Act's unambiguous extension of national trademark rights renders Walmart's national conduct in reference to Variety's marks relevant, whether or not Variety can eventually recover for infringement in geographic areas in which it does not compete. The Court properly permitted Variety to introduce evidence of Walmart's national conduct and, as such, Walmart was not improperly prejudiced by its own successful sales numbers. No new trial is warranted.

Eighth, Walmart argues that a new trial is necessary because the jury's verdict on infringement and willfulness is against the clear weight of the evidence. Here, Walmart effectively attempts to re-litigate each of the arguments it raised in its renewed motion for judgment as a matter of law. Walmart argues that the evidence presented at trial clearly establishes that (1) Variety's common law marks, BACKYARD and BACKYARD BBQ, are not valid or protectable, (2) Variety's registered trademark THE BACKYARD is not entitled to protection in connection with grills and grilling accessories, (3) there is no likelihood of confusion between the parties' marks, and (4) Walmart did not willfully infringe. In deciding Walmart's renewed motion for judgment as a matter of law, the Court concluded above that Variety had presented legally adequate evidence for a reasonable jury to conclude that Variety's common law marks were valid, including in relation to grills and grilling accessories, that there was a likelihood of confusion, and that Walmart willfully infringed. There is no need to repeat the analysis here. In light of each of the above conclusions, the Court is not persuaded that the clear weight of the evidence favored Walmart on any of those contested issues. Indeed, following the Fourth Circuit's opinion, there were disputed issues that the jury was well-positioned to resolve and did resolve. Considering the

evidence presented and the witness testimony, expert and otherwise, there was ample evidence to support the jury's findings as to both infringement and willfulness. The verdict was not against the clear weight of the evidence and, therefore, no new trial is needed.

Following careful consideration of the record and the parties' arguments, the Court is not persuaded that Walmart suffered any prejudicial error such that a new trial would be warranted. As to each of the alleged grounds that Walmart raises, the Court's conduct was either clearly proper or, if arguably improper, was not prejudicial. Further, the jury's verdict as to infringement and willfulness was supported by the evidence. Accordingly, there is no reason for the Court to grant a new trial and Walmart's motion must be denied.

## III. Walmart's motion for a certificate of appealability is denied.

Walmart moves for a certificate of appealability under 28 U.S.C. § 1292(b) so that it may appeal the liability judgment to the Fourth Circuit before proceeding to the remedies phase of the bifurcated proceedings. Variety argues that such an appeal would be premature and Walmart's appeal should wait until the conclusion of the remedies phase.

The Court's partial judgment on liability is an interlocutory order that is not subject to immediate appeal because it leaves undetermined the monetary remedy. *See Calderon v. GEICO Gen. Ins. Co.*, 754 F.3d 201, 207 (4th Cir. 2014). Courts may certify interlocutory orders for appeal when they "involve[] a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also In re Pisgah Contractors, Inc.*, 117 F.3d 133, 136–37 (4th Cir. 1997). Section 1292(b) certification is left to a court's discretion but, given the final judgment rule's aversion to piecemeal review, it is best reserved for

exceptional cases. *See James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993); *see also Manion v. Spectrum Healthcare Res.*, 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013).

Walmart argues that the liability judgment presents controlling questions of law as to which there are substantial grounds for difference in opinion and that interlocutory review would materially advance the ultimate termination of the litigation. Walmart identifies three particular disputed legal issues: (1) "the scope of protection afforded by [Variety's] incontestable registration for 'THE BACKYARD,'" (2) "the correct test for 'willful infringement,'" and (3) "the effect of the Fourth Circuit's vacatur of the Court's summary judgment order." [DE 499]. In response, Variety argues that Walmart has not demonstrated that this is an exceptional case in which piecemeal review would be justified and that, essentially, review of the liability judgment would not materially advance the final termination of the litigation. In its discretion, the Court finds that a Section 1292(b) certificate of appealability is not necessary.

At the outset, the Court notes that, contrary to the position that Walmart took in its response to Variety's motion for a jury trial on profits and damages [DE 486, p. 1–3], the Court's comments at trial should not be construed as having already granted a Section 1292(b) certificate of appealability. The Court has carefully considered whether to grant such a motion, but is not persuaded that an immediate appeal would materially advance the final termination of the litigation. It is true that there are difficult, disputed legal questions at issue in this case. But the Fourth Circuit has made clear its position that Section 1292(b) certificates "should be used sparingly." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). There are difficult legal issues in many cases, but, given the final judgment rule, only the exceptional cases should be appealed piecemeal.

Walmart has not shown that its case is an exceptional one. In particular, Walmart has not shown that an immediate appeal would materially advance the ultimate termination of the litigation. As to the first question that Walmart seeks to certify concerning the scope of trademark protection for unregistered marks, a favorable decision in the Fourth Circuit would not disturb the jury's verdict that Walmart infringed Variety's registered mark, THE BACKYARD. As discussed above, the jury determined that Walmart had infringed all three marks. Thus, even if the Fourth Circuit finds the common law marks, BACKYARD and BACKYARD BBQ, to be unprotected, Walmart is still liable for infringing THE BACKYARD. As to the second question, the proper standard for willfulness, the parties agree that the jury's verdict on willful infringement is advisory and relates only to equitable remedies. Again, even if the Fourth Circuit determines that the Court incorrectly instructed the jury on the standard for willfulness, Walmart would still be liable for infringement and the remedies trial must still occur. The third issue that Walmart seeks to certify, the continuing effect of Fourth Circuit's underlying legal reasoning and conclusions in vacating this Court's prior summary judgment order, is the least material of the three. As discussed above, the Court denied both parties' motions in limine on the five likelihood-of-confusion factors that the Fourth Circuit apparently resolved in Variety's favor, did not prevent Walmart from introducing evidence on any of those five factors, and ultimately instructed the jury to consider all nine factors in reaching a verdict. Even if the Fourth Circuit were to resolve the dispute over those five factors in Walmart's favor, there would be no effect on the liability trial or the jury's verdict that Walmart willfully infringed Variety's marks.

Variety argues that the fact that the interlocutory appeal will not be dispositive is fatal to Walmart's motion. Walmart, however, correctly replies that the Section 1292(b) standard requires only that an appeal *materially advance*, not resolve, the litigation. Even so, in this case, a Fourth

Circuit decision favorable to Walmart on each of the three issues on which Walmart seeks certification would leave the litigation in the same place that it is now: awaiting a damages determination. That phase of the proceedings, too, is fraught with legal difficulty, and it is likely that the Fourth Circuit will again be asked to weigh in following the conclusion of the damages trial. At this time, an immediate appeal would not materially advance the litigation, and would instead waste time and judicial resources. The parties' rights will be well-protected by an appeal at the conclusion of the damages trial, should either party wish to pursue one. Walmart's motion is, therefore, denied.

## IV. Variety's motion for a jury trial on profits and damages is granted.

Variety has moved to proceed to the next phase of the bifurcated proceedings and requests a jury trial on profit disgorgement and royalties. In response, Walmart argued that an immediate appeal of the jury's verdict on liability should take place before a trial on damages. Walmart also argued that no damages trial should be held until its post-trial motions had been decided. As each of Walmart's motions has not been decided, and the Court has declined to grant a 28 U.S.C. § 1292(b) certificate of appealability, the litigation should proceed to the next phase.

Trademark infringement claims are legal, rather than equitable, in nature, so the trademark owner is entitled to a jury trial. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962). Thus, even though profits disgorgement issues are governed by 15 U.S.C. § 1117 and equitable in nature, Variety is entitled to a jury trial on damages. *See Synergistic*, 470 F.3d at 173; *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11 (1959) (holding that the right to a jury trial existed in a case containing both legal and equitable issues). Variety asks that both the royalties and disgorgement issues be presented to the jury, arguing that doing so would be consistent with the Fourth Circuit's decision vacating the Court's prior summary judgment order. The Court agrees

that both questions may be submitted to the jury, but disgorgement of profits remains an equitable matter and the Court will retain discretion to modify any jury verdict on disgorgement according to equitable principles.

In sum, the appropriate next step in this litigation is to present the remedies issues of disgorgement of profits and royalties to a jury. Thus, Variety's motion for a jury trial is granted.

CONCLUSION

For the above reasons, plaintiff's motion for a jury trial on profits and damages [DE 484] is GRANTED, defendant's renewed motion for judgment as a matter of law [DE 492] is DENIED, defendant's motion for a new trial [DE 495] is DENIED, and defendant's motion for a certificate of appealability [DE 498] is DENIED. A jury trial will be held on profits and damages on a date to be set in the future.

SO ORDERED, this _11_ day of January, 2019.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE